IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| NEPCO FUND II LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 12-CV-246-F |
| | ) | |
| MICHAEL V. DeFELICE, and | ) | |
| BABETTE DeFELICE | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF JOHN M. KEOUGH

I, John M. Keough, being of lawful age and first duly sworn upon my oath do solemnly state as follows:

1. I am the manager of NEPCO Fund II LLC ("NEPCO") and have personal knowledge of the information contained herein.

2. On November 8, 2011, Bank of America, N.A. (as successor by merger to UST Mortgage Company) endorsed a promissory note (the "Note) executed by Michael V. DeFelice and Babette Defelice on March 11, 2005. Bank of America then transferred the Note to NEPCO. A copy of the Note is attached as Exhibit A.

3. Also on November 8, 2011, Bank of America assigned to NEPCO a mortgage (the "Mortgage") against certain property in Jackson, Teton County, Wyoming which secured the Note. A copy of the Mortgage with all assignments is attached as Exhibit B.

4.  Defendants have failed to pay the amount due on the Note.  The Note is, therefore, in default and the entire balance is immediately due and payable.

5.  Pursuant to the power of sale contained in the mortgage and after proper notice, a foreclosure sale was held on October 16, 2012 in which the Jackson property was sold for $400,000.  A copy of the Certificate of Sale is attached as Exhibit C.

6.  At the time of the sale, October 16, 2012, the principal balance owing on the Note was $624,030.57 and accrued interest was $38,155.32.  After deducting the proceeds from the sheriff's sale, the total due as of October 16, 2012 was $262,185.89.

7.  Since October 16, 2012, interest has continued to accrue at the rate of $47.70 per day at the default rate of interest 6.55% per annum.

8.  The Note permits NEPCO to collect all costs and expenses, including attorney's fees, incurred in collecting upon the Note.

9.  NEPCO has incurred attorney's fees and costs and continues to incur attorney fees and costs in its efforts to collect on the Note.

FURTHER AFFIANT SAYETH NOT.

_____
JOHN M. KEOUGH

The foregoing Affidavit was subscribed and sworn to before me this 3rd day of

January , 2013, by John M. Keough.

Witness my hand and official seal.

_____
Notary Public

My Commission Expires:

March 14, 2014

MARLENE IM
Notary Public
COMMONWEALTH OF MASSACHUSETTS
My Commission Expires March 14, 2014

3

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $630,000.00 | 03-11-2005 | 04-01-2010 | 78000157060 | 11 | 00000002609 | *** | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Michael V. DeFelice
Babette DeFelice
505 W Saddle Butte Way
Jackson, WY 83001

**Lender:** United States Trust Company of New York
Mortgage Lending
114 West 47th Street
New York, NY 10036

---

**Principal Amount: $630,000.00**  **Initial Rate: 5.030%**  **Date of Note: March 11, 2005**

**PROMISE TO PAY.** To repay my loan, I ("Borrower") jointly and severally promise to pay to United States Trust Company of New York ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Hundred Thirty Thousand & 00/100 Dollars ($630,000.00), together with interest on the unpaid principal balance from March 11, 2005, until paid in full.

**PAYMENT.** I will pay this loan in one principal payment of $630,000.00 plus interest on April 1, 2010. This payment due on April 1, 2010, will be for all principal and all accrued interest not yet paid. In addition, I will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 1, 2005, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges; and then to any unpaid collection costs. Interest on this Note is computed on a 30/360 simple interest basis; that is, with the exception of odd days in the first payment period, monthly interest is calculated by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, by a month of 30 days. Interest for the odd days is calculated on the basis of the actual days to the next full month and a 360-day year. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the ONE YEAR LONDON INTERBANK OFFERED RATE (LIBOR) AS PUBLISHED TUESDAY IN THE MONEY RATES SECTION OF THE WALL STREET JOURNAL, EASTERN EDITION, TRUNCATED TO THE THOUSANDTH DECIMAL PLACE. (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to me. Lender will tell me the current Index rate upon my request. The interest rate change will not occur more often than each YEAR. THE INTEREST RATE MAY CHANGE ON THE FIRST DAY OF THE TWELFTH (12TH) OR THIRTEENTH (13TH) MONTH FOLLOWING THE FUNDING DATE OF THE LOAN,** AND ON THAT DAY EVERY TWELVE (12) MONTHS THEREAFTER, THE "CHANGE DATE". THE NEW INTEREST RATE, BASED ON THE INDEX WILL BECOME EFFECTIVE ON EACH CHANGE DATE. THE INDEX WILL BE DETERMINED FIVE (5) CALENDAR DAYS BEFORE EACH CHANGE DATE. (THE "INDEX DETERMINATION DATE"). IF SUCH DAY IS NOT A BUSINESS DAY, THE INDEX WILL BE THE MOST RECENT INDEX FIGURE AVAILABLE PRECEDING THE INDEX DETERMINATION DATE. **THE TWELFTH (12th) month if the loan funds on a day other than the first of the month, the THIRTEENTH (13th) month if the loan funds on the first. I understand that Lender may make loans based on other rates as well. The Index currently is 3.530% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.500 percentage points over the index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.030% per annum. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on this Note be less than 1.500% per annum or more than the maximum rate allowed by applicable law. Unless waived by Lender, any increase in the interest rate will increase the amounts of my interest payments.**

**PREPAYMENT.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be refunded to me upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: UST Mortgage Company, Jacksonville, 4601 Touchton Road East Bldg 300, Suite 3220 Jacksonville, FL 32246.

**LATE CHARGE.** If a payment is 16 days or more late, I will be charged 2.000% of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 5.500 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**Default in Favor of Third Parties.** I or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of my property or my ability to repay this Note or perform my obligations under this Note or any of the related documents.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**EXHIBIT A**

# PROMISSORY NOTE
## (Continued)

Loan No: 78000157060                                                                                          Page 2

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if I, after receiving written notice from Lender demanding cure of such default: (1) cure the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** I agree to pay all costs and expenses Lender incurs to collect this Note. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and I hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or me against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of New York.

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $10.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account and whether evidenced by a certificate of deposit). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** I acknowledge this Note is secured by the following collateral described in the security instrument listed herein: a Mortgage dated March 11, 2005, to Lender on real property located in Teton County, State of Wyoming. If there is any inconsistency between the terms and conditions of this Note and the terms and conditions of the collateral documents, the terms and conditions of this Note shall prevail.

**FINANCIAL STATEMENTS.** I shall furnish my true and complete financial statment on the Lender's standard form to the Lender within thirty (30) days after a request by the Lender. Also, I shall provide supplemental information immediately upon request by Lender.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

X _____
Michael V. DeFelice

X _____
Babette DeFelice

By _____
as attorney-in-fact

## ENDORSEMENT TO NOTE

Endorsement to that certain note annexed hereto, in the amount set forth on Exhibit A hereto, which is secured by that certain mortgage or security agreement, creating a single first or junior lien in the same amount.

Pay to the order of UST Mortgage Company, without recourse, warranty or representation.

Dated: As of ___March 11_____, 2005

UNITED STATES TRUST COMPANY OF NEW YORK

By: _____

Name:  Allison P. Mahoney
Title:   Vice President

{75240;2}

## ALLONGE

THIS ALLONGE IS AN ENDORSEMENT TO BE ATTACHED TO AND MADE A PART OF THAT CERTAIN PROMISSORY NOTE (together with any and all addenda, riders, exhibits, supplements, amendments, schedules and attachments) dated as of March 11, 2005, made by Michael V. DeFelice and Babette DeFelice payable to the order of United States Trust Company of New York (now Bank of America, N.A., successor by merger to United States Trust Company, National Association, successor by merger to UST Mortgage Company, endorsee of United States Trust Company of New York), in the original principal amount of Six Hundred Thirty Thousand and 00/100 Dollars ($630,000.00).

PAY TO THE ORDER OF NEPCO FUND II LLC, A MASSACHUSETTS LIMITED LIABILITY COMPANY, AS IS, WHERE IS, WITH ALL FAULTS AND WITHOUT RECOURSE AND WITHOUT ANY REPRESENTATIONS OR WARRANTIES OF ANY KIND, WHETHER EXPRESS OR IMPLIED, ORAL OR WRITTEN, EXCEPT AS PROVIDED IN ARTICLE VII OF THAT CERTAIN LOAN SALE AGREEMENT #BOA-03-112011.

Dated as of:  November 8, 2011

**BANK OF AMERICA, N.A.,**
a national banking association,
successor by merger to United States Trust Company, National Association,
successor by merger to UST Mortgage Company,
endorsee of United States Trust Company of New York

By: _____
    Name:  Tamara J. Laughinghouse
    Title:  Director

# 78000.57060

RECORDATION REQUESTED BY:
United States Trust Company of New York
Mortgage Lending
114 West 47th Street
New York, NY 10036

WHEN RECORDED MAIL TO:
UST Mortgage Company
4601 Touchton Road East, Suite 32°°
Jacksonville, FL 32246

SEND TAX NOTICES TO:
Michael V. DeFelice
505 W Saddle Butte Way
Jackson, WY 83001

| RELEASED |
| INDEXED |
| ABSTRACTED |
| SCANNED |

*First American Title*
*nce Company*

Grantor: DEFELICE, MICHAEL V
Grantee: UNITED STATES TRUST COMPANY*
Doc 0645251 bk 582 pg 7-13 Filed at 4:14 on 03/11/05
Sherry L Daigle, Teton County Clerk fees: 26.00
By ANN SCHROEDER   Deputy

_____LINE IS FOR RECORDER'S USE ONLY_____

## MORTGAGE

**MAXIMUM LIEN.** The lien of this Mortgage shall not exceed at any one time $630,000.00.

THIS MORTGAGE dated March 11, 2005, is made and executed between Michael V. DeFelice, a married man (referred to below as "Grantor") and United States Trust Company of New York, whose address is 114 West 47th Street, New York, NY 10036 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in Teton  County, State of Wyoming:**

**Lot 2 of the Saddle Butte Ranch Subdivision, Teton County, Wyoming, according to that plat recorded January 6, 1998 as Plat No. 920.** PIN # 22-41-16-28-1-03-001

The Real Property or its address is commonly known as 505 West Saddle Butte Way, Jackson, WY 83001.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**GRANTOR'S WAIVERS.** Grantor waives all rights or defenses arising by reason of any "one action" or "anti-deficiency" law, or any other law which may prevent Lender from bringing any action against Grantor, including a claim for deficiency to the extent Lender is otherwise entitled to a claim for deficiency, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:  (a) this Mortgage is executed at Borrower's request and not at the request of Lender;  (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property;  (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor;  (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and  (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Borrower shall pay to Lender all Indebtedness secured by this Mortgage as it becomes due, and Borrower and Grantor shall strictly perform all Borrower's and Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;  (2) use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that:  (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property;  (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing,  (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or  (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing,  (a)  neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties

**EXHIBIT B**

contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Wyoming law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $50,000.00. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $50,000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply

the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes, with the exception of insurance premiums paid by Lender with respect to motor vehicles, but including the payment of attorneys' fees and expenses, will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or, (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with

Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** At Lender's option, Grantor will be in default under this Mortgage if any of the following happen:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Break Other Promises.** Borrower or Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Mortgage or in any agreement related to this Mortgage.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any related document.

**False Statements.** Any representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Borrower's or Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Borrower's or Grantor's accounts with Lender. However, if Borrower or Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Borrower or Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity

of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within twenty (20) days; or (2) if the cure requires more than twenty (20) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty which Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code:

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property, including during the pendency of foreclosure, whether judicial or non-judicial, and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or uses fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Nonjudicial Sale.** Lender may foreclose Grantor's interest in all or in any part of the Property by non-judicial sale, and specifically by "power of sale" or "advertisement and sale" foreclosure as provided by statute.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

Loan No: 78000157060                                                                                          Page 6

It will be Grantor's responsibility to tell the others of the notice from Lender. .

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Wyoming. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New York without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of New York.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Wyoming as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means Michael V. DeFelice and Babette DeFelice and includes all co-signers and co-makers signing the Note.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the Indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means Michael V. DeFelice.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

## MORTGAGE
### (Continued)

Loan No: 78000157060                                                             Page 7

**Lender.** The word "Lender" means United States Trust Company of New York, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated March 11, 2005, in the original principal amount of $630,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of this Mortgage is April 1, 2010. NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _____
Michael V. DeFelice

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___New York___ )
                                          ) SS
COUNTY OF ___New York___ )

On this day before me, the undersigned Notary Public, personally appeared Michael V. DeFelice, to me known to be the individual described in and who executed the Mortgage, and acknowledged that he or she signed the Mortgage as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___8___ day of ___March___, 20 05.

By _____     Residing at ___303 East 83rd St, Apt 60, NY, NY___
                                                                                                                  10028
Notary Public in and for the State of _____     My commission expires _____

LASER PRO Lending, Ver. 5.25.20.003  Copr. Harland Financial Solutions, Inc. 1997, 2005.  All Rights Reserved.  - WY/NY  K:\CFI\WIN\CFI\LPL\G03.FC  TR-1670  PR-56

JENNIFER HOLLAND
Notary Public, State of New York
No. 02HO6113851
Qualified in New York County
Commission Expires August 9, 2008

**RECORD AND RETURN TO:**
UST Mortgage Company
4601 Touchton Road E.
Building 300, Suite 3220
Jacksonville, Florida 32246
Attn:   Donald Bressoud
        President

Section:
Block:
Lot:
County:
Volume:
Grantor: UNITED STATES TRUST COMPANY
Grantee: UST MORTGAGE COMPANY
Doc #645252 bk 582 pg 14-16 Filed at 4:15 on 03/11/05
Sherry L Daigle, Teton County Clerk fees: 14.00
By ANN SCHROEDER Deputy

## ASSIGNMENT OF MORTGAGE

   This Assignment of Mortgage is made and entered into as of the __11th__ day of __March__, __2005__, by UNITED STATES TRUST COMPANY OF NEW YORK, a New York state chartered Federal Reserve member bank, having its principal place of business at 114 West 47th Street, New York, New York 10036 (the "Assignor"), and UST Mortgage Company, a Florida state chartered corporation, having its principal place of business at 4601 Touchton Road E., Building 300, Suite 3220, Jacksonville, Florida 32246 ("Assignee").

### W I T N E S S E T H :

   That for good and valuable consideration, Assignor does hereby assign to Assignee all of Assignor's right, title, and interest in and to the mortgages as set forth on Schedule A, attached hereto and made a part hereof, and the Notes secured thereby, together with all of Assignor's right, title, and interest in and to the real property described in Schedule B attached hereto and made a part hereof.

   ~~[For assignments of New York mortgages only - delete if applicable] This~~ Assignment is not subject to the requirements of Section 275 of the Real Property Law because it ~~is an assignment within the secondary mortgage market.~~

   WITNESS the signature of the Assignor effective the date and year first above written.

     UNITED STATES TRUST COMPANY OF NEW YORK


    By: _Wendy M. Grace_
      Name:  Wendy M. Grace
      Title:   Senior Vice President

STATE OF NEW YORK )
       : ss.:
COUNTY OF NEW YORK )

| RELI A ED | |
|---|---|
| IND XED | |
| ABSTRACTED | |
| SCANNED | |

   On the __7__ day of __March__, in the year __2005__ before   me,   the undersigned personally appeared Wendy M. Grace personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.


_Jenn Holland_
Signature and Office of individual
taking acknowledgment

      JENNIFER HOLLAND
    Notary Public, State of New York
      No. 02HO6113851
     Qualified in New York County
    Commission Expires August 9, 2008

{74163;2}

Schedule A
(Mortgage)

Mortgage dated as March 11, 2005 in the amount of $630,000.00 made by Michael V. DeFelice
in favor of United States Trust Company of New York recorded in
Book __582__ of Photo, Page __7-13____.

Schedule B
(Description)

Lot 2 of the Saddle Butte Ranch Subdivision, Teton County, Wyoming, according to
that plat recorded January 6, 1998 as Plat No. 920.

{74163;3}

Return Recorded Copy To:

NEPCO
337 Freeport Street
Boston MA 02122

GRANTOR: BANK OF AMERICA NA
GRANTEE: NEPCO FUND II LLC
Doc 0806364 bk 796 pg 432-434 Filed At 13:45 ON 12/15/11
Sherry L. Daigle Teton County Clerk   fees: 14.00
By Tamara Horsley  Deputy

## ASSIGNMENT OF DEBT AND LIEN

| | | |
|---|---|---|
| STATE OF WYOMING | § | |
| | § | |
| COUNTY OF TETON | § | |

| | |
|---|---|
| RELEASED | |
| INDEXED | ✓ |
| ABSTRACTED | ✓ |
| SCANNED | ✓ |

Holder of Debt and Lien ("**Holder**"):   BANK OF AMERICA, N.A.,
        successor by merger to United States Trust Company,
        National Association,
        successor by merger to UST Mortgage Company,
        assignee to United States Trust Company of New York
        Asset Sales Management Group
        Attn: Tamara J. Laughinghouse
        101 N. Tryon Street
        NC1-001-08-25
        Charlotte, NC 28255

Assignee:         NEPCO FUND II LLC
        Attn: John M Keough
        337 Freeport Street
        Boston, MA 02122

Lien:    That certain Mortgage dated March 11, 2005, executed by Michael V. DeFelice
("**Borrower**"), as grantor, granted to United States Trust Company of New York
("**USTCNY**"), as lender, filed of record March 11, 2005 in the Official Records
of Teton County, State of Wyoming (the "**Records**") at Book 582, Page 7, as
assigned by that certain Assignment of Mortgage dated March 11, 2005, from
USTCNY, as assignor to UST Mortgage Company as assignee (now Bank of
America, N.A., successor by merger to United States Trust Company, National
Association, successor by merger to UST Mortgage Company), filed of record
March 11, 2005 in the Records at Book 582, Page 14, in respect of certain
indebtedness of Borrower and Babette DeFelice described therein (the "**Debt**")
and currently held by Holder.

The property subject to Lien (the "**Property**") is described in <u>Exhibit A</u> attached hereto and
incorporated herein for all purposes.

BOS111 12653918.1

As used herein, Lien shall include all liens relating to the Debt held by Holder against the Property, as renewed, extended and/or modified.

For good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, Holder hereby transfers and assigns the Debt and Lien to Assignee as of November 8, 2011; and, except as expressly provided in that certain Loan Sale Agreement between Holder and Assignee dated as of November 8, 2011, such assignment is made **WITHOUT RECOURSE, REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED.**

This document confirms the assignment that was made as of November 8, 2011. This document is dated November 29, 2011.

> BANK OF AMERICA, N.A.,
>   successor by merger to United States Trust Company, National Association,
>   successor by merger to UST Mortgage Company,
>   assignee to United States Trust Company of New York
>
> By: *Tamara J. Laughinghouse*
>   Tamara J. Laughinghouse
>   Director

**STATE OF NORTH CAROLINA** §
§
**COUNTY OF MECKLENBURG** §

This instrument was acknowledged before me on this 29th day of November, 2011, by Tamara J. Laughinghouse, the Director of Bank of America, N.A., a national banking association on behalf of said association.

*Kimberly H. Blackwelder*
Notary Public/State of North Carolina
Print Name: *Kimberly H. Blackwelder*
My Commission Expires: *5-26-13*
*[Notarial Seal]*

<u>Exhibit A</u>

Lot 2 of the Saddle Butte Rance Subdivision, Teton County, Wyoming, according to that plat
recorded January 6, 1998 as Plat No. 920.



**CERTIFICATE OF SALE**

*First American Title Insurance Company*

STATE OF WYOMING )
) SS.
COUNTY OF TETON )

      Jim Whalen, of lawful age, being first duly sworn upon his oath, states and certifies as follows:

      1.    That he is the duly elected and acting Sheriff in and for Teton County, State of Wyoming, and makes this Certificate of Sale in his capacity as such.

      2.    That a default has occurred under the terms of (a) that certain promissory note dated March 11, 2005, executed and delivered by Michael V. DeFelice and Babette DeFelice, to United States Trust Company of New York, and (b) that certain mortgage dated March 11, 2005, (the "Mortgage"), securing said note, which Mortgage was executed and delivered by Michael V. DeFelice, a married man, to said mortgagee, and was recorded on March 11, 2005, as Document No. 0645251, in Book 582, Page 7-13, in the records of the office of the County Clerk and ex-officio Register of Deeds in and for Teton County, State of Wyoming, and which Mortgage covers that certain real property described below, as follows, to-wit:

      LOT 2 OF THE SADDLE BUTTE RANCH SUBDIVISION, TETON COUNTY, WYOMING, ACCORDING TO THAT PLAT RECORDED JANUARY 6, 1998 AS PLAT NO. 920.

      with an address of:
      505 West Saddle Butte Way, Jackson, WY 83001

      Together with all improvements thereon situate and all fixtures and appurtenances thereto.

The mortgage was assigned for value as follows:

RELEASED
INDEXED
ABSTRACTED
SCANNED

Assignor: United States Trust Company of New York, a New York
      state chartered Federal Reserve member bank
Assignee: UST Mortgage Company, a Florida state chartered corporation
Assignment dated: March 11, 2005
Assignment recorded: March 11, 2005
Assignment recording information: Document No. 0645252 in Book 582,
                        Page 14-16

Assignor: Bank of America, N.A., successor by merger to United States
      Trust Company, National Association, successor by merger
      to UST Mortgage Company, assignee to United States
      Trust Company of New York
Assignee: NEPCO Fund II, LLC
Assignment dated: November 29, 2011
Assignment recorded: December 15, 2011
Assignment recording information: Document No. 0806364 in Book 796,
                        Page 432-434

GRANTOR: TETON COUNTY SHERIFF
GRANTEE: NEPCO FUND II LLC
Doc 0823705 bk 822 pg 554-561 Filed At 16:05 ON 10/16/12
Sherry L. Daigle Teton County Clerk  fees: 29.00
By Mary Smith  Deputy

Page 1 of 8
DeFelice
Certificate of Sale
69-553-001

**EXHIBIT C**

All in the records of the County Clerk and ex-officio Register of Deeds in and for Teton County, Wyoming.

     3.    That no suit or proceeding has been instituted at law to recover the debt secured by the Mortgage, or any part thereof.

     4.    That the power of sale contained in the Mortgage having been made operative by reason of such default, NEPCO Fund II, LLC, ("Mortgagee") elected to foreclose the same and at the request and direction of Mortgagee a written notice of the intention to foreclose the Mortgage was served upon the record owner and the party in possession of said real property at least ten (10) days prior to commencement of the first publication of the foreclosure sale notice, as shown by the affidavit attached hereto as **Exhibit A** and by this reference made a part thereof.

     5.    That Mortgagee has caused publication to be made of a notice of foreclosure sale in the Jackson Hole News and Guide, a newspaper published and having general circulation in Teton County, State of Wyoming, once a week for four (4) consecutive weeks, commencing with the September 19, 2012, issue of said newspaper and ending with the October 10, 2012, issue thereof; that said notice was mailed, certified mail, return receipt requested, to all parties as required by Wyoming statutes, as shown by the affidavit attached hereto as **Exhibit A** and by this reference made a part hereof, and that said notice as mailed and published, did comply in all respects with the requirements of the statutes relating to foreclosures of mortgages by advertisement and sale; and that a copy of said notice and the publisher's affidavit of publication thereof are attached hereto as **Exhibit B** and by this reference made a part hereof.

     6.    That on the date, and at the time and place specified in said notice of foreclosure sale, to-wit:  On October 16, 2012, at 10:00 o'clock in the forenoon, at the front door of the Teton County Courthouse, in the City of Jackson, Teton County, State of Wyoming, the undersigned proceeded to sell the above-described real property at public auction in accordance with the notice of foreclosure sale by then and there calling for bids on said real property; and that the highest and best sum bid for said real property was the sum of $400,000.00 ("Bid Sum"), which was bid and offered by NEPCO Fund II, LLC ("Successful Bidder") and that after soliciting and calling for other and higher bids therefor, and receiving none from those attending upon the sale, said real property was struck off and sold by the undersigned to the Successful Bidder for the Bid Sum; and that the Bid Sum was thereupon paid and the sale of said real property was then and there completed as by law provided.

     7.    That the sum of $4,132.50 is to be paid to Crowley Fleck, PLLP, the attorneys for Mortgagee as compensation for services actually rendered in the foreclosure proceeding, said attorneys having made an affidavit as required by the statutes of the State of Wyoming, a copy of said affidavit being attached hereto as **Exhibit C**, and by this reference made a part hereof.

     8.    That the sale of the above-described real property was made in full compliance with the provisions of the Mortgage thereby foreclosed and was in all respects conducted in conformity with the requirements of the Wyoming Statutes.

     9.    That said Successful Bidder shall be entitled to a deed to the above-described real property, together with all improvements thereon situate and all fixtures and appurtenances thereto, at and upon expiration of three (3) months and thirty (30) days from and after October 16, 2012, the date of the sale, unless the property shall have been redeemed as provided by law prior to that time.

DATED at Jackson, Teton County, State of Wyoming, this _16_
day of _October_____, 2012.

Jim Whalen, Sheriff in and for
Teton County, State of Wyoming

By: _Jim Whalen_____

Print Name: _Cheryl Chidester_

Title: _Spec. Dep. Sheriff_

ACKNOWLEDGMENT

STATE OF WYOMING    )
                    ) SS.
COUNTY OF TETON     )

The foregoing instrument was subscribed in my presence and
acknowledged before me by _CHERYL CHIDESTER - SPECIAL_
Deputy Sheriff of Teton County, State of Wyoming, this _16_ day of
_Oct_____, 2012.

Witness my hand and official seal.

SUZIE KIRVINSKEE - NOTARY PUBLIC
COUNTY OF          STATE OF
TETON              WYOMING
MY COMMISSION EXPIRES: AUGUST 12, 2015

_Suzie Kirvinskee_
Notary Public

My Commission Expires: _8/12/15_

EXHIBIT A

## AFFIDAVIT OF SERVICE OF WRITTEN NOTICE
## OF INTENT TO FORECLOSE MORTGAGE

STATE OF WYOMING    )
                       ) SS.
COUNTY OF NATRONA  )

       Timothy M. Stubson, of lawful age, being first duly sworn upon his oath, deposes and says:

       1.     That he is an attorney admitted generally to practice law in the State of Wyoming and is a member of the law firm of Crowley Fleck, PLLP, who are the attorneys representing the Mortgagee in a procedure to foreclose a certain real estate mortgage dated March 11, 2005, (the "Mortgage"), and recorded on March 11, 2005, as Document No. 0645251, in Book 582, Page 7-13 in the records of the office of the County Clerk and ex-officio Register of Deeds in and for Teton County, State of Wyoming, wherein Michael V. DeFelice, a married man, ("Mortgagor(s)"), the named mortgagor(s), and United States Trust Company of New York, is the named mortgagee which Mortgage was assigned for value as follows:

Assignor:  United States Trust Company of New York, a New York
                   state chartered Federal Reserve member bank
Assignee:  UST Mortgage Company, a Florida state chartered corporation
Assignment dated:  March 11, 2005
Assignment recorded:  March 11, 2005
Assignment recording information:  Document No. 0645252 in Book 582,
                                  Page 14-16

Assignor:  Bank of America, N.A., successor by merger to United States
                   Trust Company, National Association, successor by merger
                   to UST Mortgage Company, assignee to United States
                   Trust Company of New York
Assignee:  NEPCO Fund II, LLC
Assignment dated:  November 29, 2011
Assignment recorded: December 15, 2011
Assignment recording information:  Document No. 0806364 in Book 796,
                                    Page 432-434

All in the records of the County Clerk and ex-officio Register of Deeds in and for Teton County, Wyoming; by advertisement and sale as provided under the provisions of WYO. STAT. §§ 34-4-101, et seq. (2003). The Mortgage was foreclosed by reason of default having occurred under the terms of the note secured thereby.

       2.     That written notice of intent to foreclose the Mortgage by advertisement and sale has been served upon the record owner and the person in possession by certified mail, return receipt requested, mailed to the last known address of the record owner and the person in possession at least ten (10) days before commencement of the first publication of the notice of the foreclosure sale as follows, and that a copy of the published Foreclosure Sale Notice was mailed, certified mail, return receipt requested, to all parties as required by Wyoming statutes, before the notice was published, as follows:

CERTIFIED MAIL NO. NOI: 7190 1091 2813 0000 0062
CERTIFIED MAIL NO. FSN: 7190 1091 2813 0000 0314
Michael V. DeFelice
505 West Saddle Butte Way
Jackson, WY 83001

CERTIFIED MAIL NO. NOI: 7190 1091 2813 0000 0079
CERTIFIED MAIL NO. FSN: 7190 1091 2813 0000 0321
Babette DeFelice
505 West Saddle Butte Way
Jackson, WY 83001

CERTIFIED MAIL NO. NOI: 7190 1091 2813 0000 0109
CERTIFIED MAIL NO. FSN: 7190 1091 2813 0000 0352
Michael V. DeFelice
774 Mays Blvd. #10 – PMB 267
Incline Village, NV 89450-52

CERTIFIED MAIL NO. NOI: 7190 1091 2813 0000 0116
CERTIFIED MAIL NO. FSN: 7190 1091 2813 0000 0369
Babette DeFelice
774 Mays Blvd – PMB 267
Incline Village, NV 89450-52

CERTIFIED MAIL NO. NOI: 7190 1091 2813 0000 0123
CERTIFIED MAIL NO. FSN: 7190 1091 2813 0000 0376
Michael V. DeFelice
19 Father Peter's Lane
New Canaan, CT 06840

CERTIFIED MAIL NO. NOI: 7190 1091 2813 0000 0130
CERTIFIED MAIL NO. FSN: 7190 1091 2813 0000 0383
Babette DeFelice
19 Father Peter's Lane
New Canaan, CT 06840

CERTIFIED MAIL NO. NOI: 7190 1091 2813 0000 0147
CERTIFIED MAIL NO. FSN: 7190 1091 2813 0000 0390
Teton County Treasurer
Attn:. Oney
Teton County Courthouse
PO Box 1727
Jackson, WY 83007

CERTIFIED MAIL NO. NOI: 7190 1091 2813 0000 0093
CERTIFIED MAIL NO. FSN: 7190 1091 2813 0000 0345
Occupant
505 West Saddle Butte Way
Jackson, WY 83001

3.      That the date of mailing of the notice of intent to foreclose the Mortgage was August 27, 2012, and the date of the first publication of the notice of foreclosure sale was September 19, 2012.

FURTHER AFFIANT SAYETH NAUGHT.

By: _____
        Timothy M. Stubson
        CROWLEY FLECK, PLLP
        152 N. Durbin, Suite 220
        Casper, WY 82601
        (307) 265-2279

Subscribed in my presence and sworn to before me by Timothy M. Stubson this _12th_ day of _October_ , 2012.

Witness my hand and official seal.

_____
Notary Public

My Commission Expires:
8/31/15

SHERRY WILCOX - NOTARY PUBLIC
County of          State of
Natrona            Wyoming
My Commission Expires Aug. 31, 2015

PROOF OF PUBLICATION

THE STATE OF WYOMING
COUNTY OF TETON

MICHAEL SELLETT

Being duly sworn, deposes and says that _he is the PUBLISHER of the JACKSON HOLE NEWS & GUIDE, weekly newspaper published in Jackson in said county and state, and that the annexed Notice was published in _4_ consecutive issues of said newspaper and not in a supplement, the first publication thereof being on _____ A.D. 20 _12_

Subscribed in my presence and sworn to before me This _15_ Day of _____ A.D.20 _12_

KATHLEEN M. GODINES
STATE OF WYOMING
COUNTY OF TETON
MY COMMISSION EXPIRES _____

_____ NOTARY PUBLIC

Fee for Publication: _____ ci X ____ wks X $ ___ = $ ___

Charge to Account Name: _Crowley Fleck, PLLP_

Address: _152 N. Durbin, Ste. 220   Casper, WY 82601_

# FORECLOSURE SALE NOTICE

WHEREAS, default in the payment of principal and interest has occurred under the terms of a promissory note (the "Note") dated March 11, 2005, executed and delivered by Michael V. DeFelice and Babette DeFelice, to United States Trust Company of New York, and a real estate mortgage (the "Mortgage") of the same date securing the Note, which Mortgage was executed and delivered by said Michael V. DeFelice, a married man, to said Mortgagee, and which Mortgage was recorded on March 11, 2005, as Document No. 0645251, in Book 582, Page 7-13 in the records of the office of the County Clerk and ex-officio Register of Deeds in and for Teton County, State of Wyoming.
The mortgage was assigned for value as follows:

Assignor: United States Trust Company of New York, a New York state chartered Federal Reserve member bank,

Assignee: UST Mortgage Company a Florida state chartered corporation.
Assignment dated: March 11, 2005
Assignment recorded: March 11, 2005
Assignment recording information: Document No. 0645252 in Book 582,
Page 14-16

Assignor: Bank of America, N.A., successor by merger to United States

Trust Company, National Association, successor by merger to UST Mortgage Company, assignee to United States
Trust Company of New York

Assignee: NEPCO Fund II, LLC
Assignment dated: November 29, 2011
Assignment recorded: December 15, 2011
Assignment recording information: Document No. 0806364 in Book 795,
Page 432-434

All in the records of the County Clerk and ex-officio Register of Deeds in and for Teton County, Wyoming.

WHEREAS, the Mortgage contains a power of sale which by reason of said default, the Mortgagee declares to have become operative, and no suit or proceeding has been instituted at law to recover the debt secured by the Mortgage, or any part thereof, nor has any such suit or proceeding been instituted and the same discontinued; and

WHEREAS, written notice of intent to foreclose the Mortgage by advertisement and sale has been served upon the record owner and the party in possession of the mortgaged premises at least ten (10) days prior to the commencement of this publication, and the amount due upon the Mortgage on the date of first publication of this notice of sale being the total sum of $650,120.31, which sum consists of the unpaid principal balance of $624,030.57, plus interest accrued to the date of the first publication of this notice in the amount of $35,089.74, plus attorneys' fees, costs expended, and accruing interest and late charges after the date of first publication of this notice of sale;

subject to other liens and encumbrances that will not be extinguished at the sale. Any prospective purchaser should research the status of title before submitting a bid.

NOW, THEREFORE, NEPCO Fund II, LLC, as the Mortgagee, will have the Mortgage foreclosed as by law provided by causing the mortgaged property to be sold at public venue by the Sheriff or Deputy Sheriff in and for Teton County, Wyoming, to the highest bidder for cash at 10:00 o'clock in the forenoon on October 16, 2012, at the front door of the Teton County Courthouse, in Jackson, Teton County, Wyoming, for application on the above-described amounts secured by the Mortgage, said mortgaged property being described as follows, to-wit:
LOT 2 OF THE SADDLE BUTTE RANCH SUBDIVISION, TETON COUNTY, WYOMING, ACCORDING TO THAT PLAT RECORDED JANUARY 6, 1998 AS PLAT NO. 920.

with an address of:
505 West Saddle Butte Way, Jackson, WY 83001

Together with all improvements thereon situate and all fixtures and appurtenances thereto.

NEPCO FUND II, LLC

By:      Timothy M.
Shaheen
CROWLEY FLECK, PLLP        152 N. Durbin, Suite
220                        Casper, WY 82601
                           (307) 265-2279

Publish: 09/19, 09/26, 10/03, 10/10/12

*Page 7 of 8*

## EXHIBIT C

## AFFIDAVIT OF ATTORNEY

STATE OF WYOMING        )
                        ) SS.
COUNTY OF NATRONA       )

Timothy M. Stubson, of lawful age, being first duly sworn upon his oath, deposes and says:

1.     That he is a resident attorney admitted generally to practice law in the State of Wyoming and is a member of the law firm of Crowley Fleck, PLLP, who are the attorneys representing the Mortgagee in a procedure to foreclose a certain real estate mortgage.

2.     That Crowley Fleck, PLLP, as attorneys for the Mortgagee will charge the Mortgagee fees totaling $4,132.50 as compensation for services actually rendered in the foreclosure proceeding.

3.     That the above-mentioned fee for services rendered and incurred in connection with the foreclosure sale shall be retained entirely by the law firm of Crowley Fleck, PLLP.  There is no agreement, express or implied, between such attorneys and their client, nor between such attorneys and any other person not a practicing attorney of the State of Wyoming engaged with them as an attorney in this foreclosure proceeding, for any sharing or division of said fee to be added to the debt involved, and said fee when so added to the debt involved shall be only as compensation for services actually rendered in the foreclosure proceeding by an attorney admitted to practice in the State of Wyoming and residing therein.

FURTHER AFFIANT SAYETH NAUGHT.

By: _____
     Timothy M. Stubson
     CROWLEY FLECK, PLLP
     152 N. Durbin, Suite 220
     Casper, WY 82601
     (307) 265-2279

Subscribed in my presence and sworn to before me by Timothy M. Stubson this _12th_ day of _October_, 2012.

Witness my hand and official seal.

_____
Notary Public

My Commission Expires:
8/31/15

SHERRY WILCOX - NOTARY PUBLIC
County of          State of
Natrona            Wyoming
My Commission Expires Aug. 31, 2015