128    defects, and Buyer may elect to accept the then existing title insurance in lieu of such merchantable title, in which
129    case Buyer shall be deemed to have waived such defect. Seller shall pay the full premium for such Owner's title
130    insurance policy.

131  E.  The Property being transferred in this transaction may consist of the Mineral Estate (if all or any portion is owned by
132    the Seller) and the Surface Estate. The "Mineral Estate" means all oil, gas, and other minerals in or under the Property,
133    any royalty under any existing or future lease covering any part of the Property, surface rights (including rights of
134    ingress and egress), production and drilling rights, lease payments and all related benefits. Unless previously
135    separated through a recorded reservation of the mineral rights, the Property being conveyed consists of both estates.
136    If the Mineral Estate is owned by Seller, the Seller will convey the Mineral Estate as part of this transaction unless
137    specifically reserved, in whole or in portion, as part of this Agreement. If the Seller is reserving any portion of the
138    Mineral Estate, such reservation must be included in the Warranty Deed. If the Mineral Estate has been previously
139    separated from the Surface Estate, third parties may have rights to enter and use the surface of the property in the
140    testing, exploration and production of the underlying minerals. The title insurance policy does not provide
141    information on whether the mineral estate or any portion thereof has been reserved and severed from the surface
142    estate. Buyer is advised to timely consult legal counsel with respect to such matters.

143  F.  Buyer acknowledges and agrees that Buyer has been advised to carefully review the title commitment and any other
144    rights (water, mineral, air) and all exceptions, encroachments, covenants, easements, and related matters described
145    therein or otherwise identified.

146    Other than the defects submitted to the Seller in writing pursuant to VIII B. above, or in the event no title issues are
147    raised in writing by Buyer, Buyer accepts the condition of title as satisfactory.

148  IX.  **CLOSING AND POSSESSION.**

149  A.  Closing shall occur on **September 8, 2011**                              , or as otherwise mutually agreed in writing
150    between the parties, at a time and place which shall be designated by Listing Broker. Seller, at Seller's option, may
151    continue to offer subject property for sale until closing. Seller understands, however, that any additional offer
152    accepted may subject Seller to remedies provided by law for breach of this Contract.

153  B.  Possession shall be delivered to Buyer on **September 8, 2011**                              .
154    a.m./p.m. or as otherwise mutually agreed in writing between the parties. If Seller fails to deliver possession by the
155    date herein specified, Seller shall be subject to eviction by Buyer. This remedy is in addition to any other remedies
156    Buyer may have.

157  C.  Possession shall be subject to the following leases or tenancies:

**None**

158    1.  ~~Copies of all leases and/or tenants' written verifications of rental terms, security/damage deposits and status are~~
159    ~~attached hereto and accepted by Buyer. Seller agrees to notify Buyer of any change in tenant status immediately.~~

160  X.  **CONDITION OF PROPERTY.**

161  A.  Seller represents that upon execution of this Contract:

162    1.  There are no known violations of applicable city, county and/or state subdivision, zoning, building and/or public
163    health codes, ordinances, laws, rules and regulations and any recorded covenants in force and effect as of that
164    date except:

165    **none**

166    NOTE: Whether a property meets the above codes, ordinances, laws, rules and regulations is a technical
167    question which may require special expertise. If the Buyer has concerns about these issues, the Buyer should
168    contact the applicable departments of the city, county, and/or state or retain a firm with specialized expertise to
169    investigate the issue.

170    2.  The property, and all fixtures, appurtenances and improvements thereon, shall be conveyed in their present
171    condition, ordinary wear and tear excepted, unless otherwise agreed in this Contract.

172    3.  Property Disclosure. (Initial a or b).

173    _____    a. ~~The condition of the property is as stated in the Property Condition Statement(s)/ Supplement(s):~~
174    Initial  Initial    ~~WAR Form 900F  An accurate and complete copy of which is attached hereto and incorporated~~
175    ~~herein.  additional supplements (Check appropriate boxes):~~
176    [initials]  [initials]    b. A Property Disclosure is not available.
177    Initial  Initial

178    4.  Buyer may, at Buyer's option and expense, inspect the property as provided in Section XI INSPECTIONS below.

179  B.  Buyer acknowledges and agrees that, upon execution of this Contract:

180    1.  Buyer is not relying upon any representations of Seller or Seller's Agents or representatives as to any condition
181    which Buyer deems to be material to Buyer's decision to purchase this property; and

182    2.  Buyer has been advised by Broker working with the Buyer of the opportunity to seek legal, financial,
183    construction, air quality (such as mold) environmental (such as radon and lead-based paint) and/or professional
184    property inspection services regarding this purchase.

WAR Form 320-0411, Contract to Buy and Sell Real Estate (Farm & Ranch) (Vacant Land).
2011© Wyoming Association of REALTORS®
PREPARED BY: Ray Elser, Broker
Realfast, Inc.© ©2011 Realfast2Go version1.0. Software Registered to: Office Manager, Conlon Investment Properties
7/25/2011 4:12:35 PM

Page 4 of 7

185          5.   SQUARE FOOTAGE/ACREAGE VERIFICATION: Buyer is aware that any reference to square footage of acreage
186             of the real property or improvements is approximate. If square footage or acreage is material to the Buyer, it must
187             be verified during the inspection period.

188  **XI. INSPECTIONS.**

189     A.  Buyer may obtain, at no expense to Seller, electrical, mechanical, structural, air quality (such as mold), environmental
190       (such as lead-based paint, radon), and/or other inspections of the property by qualified professional inspectors
191       and/or engineers, and shall pay for any damage to Seller's property caused by such inspectors and/or engineers.
192       Buyer, or designee, shall have the right to make any inspections of the physical condition of the property at
193       reasonable times, upon at least 24 hours advance notice to Seller. Unless Seller receives written notice, signed by
194       Buyer on or before **August 30, 2011** , **2:00** a.m./p.m. (Objection
195       Deadline) of any defect(s) the property shall be deemed satisfactory to Buyer.

196     B.  If inspections disclose defects of the property before the objection deadline set out in XI.A, the cost of repairs shall
197       be paid by agreement of the parties. If the parties are unable to agree on payment of additional costs, this contract
198       shall be voidable at the option of Buyer, upon written notice to Seller no later than
199       **August 31, 2011** , **2:00** a.m./p.m. (Resolution Deadline).

200     C.  If Buyer elects to void the contract in accordance with Section XI (B) above, the earnest money deposit shall be
201       returned to Buyer pursuant to the requirements of Section II above.

202     D.  Waiver of Defects. Buyer acknowledges that he has had ample opportunity to inspect the property and has done so
203       to Buyer's satisfaction. Other than repairs or defects submitted to the Seller in writing pursuant to XI (A) or (B) above,
204       or in the event no repairs or inspections are required by Buyer, Buyer accepts the property in its entirety in "as is,
205       where is" condition without any implied or express warranty by Seller or by any Broker.

206  **XII. USDA GOVERNMENT PROGRAMS.**
207     (Check One)
208     ☑ Seller does NOT participate in USDA Government Programs
209     ☐ Seller DOES participate in USDA Government Programs

210     All beneficial interest that the Seller has in the crops will be transferred to the buyer on the day of closing. Buyer agrees to
211     maintain any existing contracts established with the Farm Service Agency, Naturally Resource Conservation Service and
212     or cooperating agency. Conservation Reserve Program contracts will be assumed and maintained by the Buyer with all
213     payments prorated to the day of closing by the Farm Service Agency. On the day of closing both Buyer and Seller will
214     contact the Farm Service Agency and Natural Resource Conservation Service to update ownership records.

215  **XIII. INSURANCE.**
216     Buyer hereby acknowledges that Buyer has been advised to investigate, research and obtain a written commitment for adequate
217     property and liability insurance prior to closing.

218  **XIV. RISK OF LOSS.**
219     Risk of loss shall remain with Seller until delivery of deed. In the event that the premises shall be damaged by fire or other
220     casualty prior to time of closing, in an amount of not more than 10% of the total purchase price, Seller shall be obligated to
221     repair the same before the date herein provided for delivery of deed. In the event such damage cannot be repaired within
222     said time or if such damage shall exceed such sum, this contract shall be voidable at the option of Buyer. Should Buyer
223     elect to carry out this Contract despite such damage, Buyer shall be entitled to all of the insurance proceeds resulting from
224     such damage.

225  **XV. DEFAULT, REMEDIES AND ATTORNEY'S FEES.**

226     A.  **TIME IS OF THE ESSENCE** hereof, and any party who fails to tender any payment, or perform any other condition
227       hereof as herein provided, shall be in default of this Contract. In the event of default, the non-defaulting party may
228       elect to treat this Contract as breached and recover such damages as may be proper, or may treat this Contract as
229       being in full force and effect and require specific performance of the terms hereof. In lieu of the remedy provided
230       above to Seller if Buyer is defaulting party, Seller may elect to terminate the Contract and recover such damages as
231       may be proper, or Seller may elect to retain all payments made hereunder as liquidated damages, such amount if
232       elected by Seller, being agreed by the parties hereto to constitute compensation for the loss of opportunity suffered
233       by Seller due to such breach.

234     B.  In the event that any party shall become in default or breach of any of the terms of this Contract, such defaulting or
235       breaching party shall pay all reasonable attorney's fees, costs and other expenses which the non-breaching or non-
236       defaulting party may incur in enforcing this Contract with or without formal proceedings. This provision shall not limit
237       any other remedies to which the parties may otherwise be entitled.

238     C.  Seller and Buyer agree that in the event of any controversy regarding earnest money or other things of value held by
239       Broker and/or Closing Agent, unless Broker and/or Closing Agent receives written instructions from both Buyer and
240       Seller regarding disposition of the earnest money or things of value, Broker and/or Closing Agent, in its sole
241       discretion, may hold the earnest money or things of value or may interplead all parties and deposit the earnest money
242       deposit or things of value into a court of competent jurisdiction. Broker and/or Closing Agent shall be entitled to
243       recover its attorney's fees and costs from the non-prevailing party in the action in which the funds are interplead, but
244       if no such award or payment is made, Broker and/or Closing Agent shall recover its same costs and reasonable

WAR Form 335-0411. Contract to Buy and Sell Real Estate (Farm & Ranch) (Vacant Land)
2011© Wyoming Association of REALTORS®
PREPARED BY: Ray Elser, Broker
Realist, Inc©, ©2011 Realist2Go version 1.0. Software Registered to: Other Manager, Century Investment Properties
7/28/2011 4:12:15 PM
Page 5 of 7

245   attorney's fees from the interpled funds or things of value.

246 **XVI.** **ADDITIONAL PROVISIONS.**

  **1. Referencing Paragraph VIII, Title, Sub-Paragraph D (regarding notice and cure of any title defects) 30 days shall be changed to 14 days.**

  **2. Should any performance date or deadline contained herein fall on a weekend, state or national holiday, said date will be automatically extended to the next business day. The time in which any act required under this agreement is to be performed shall by computed by excluding the date of execution and including the last day. The first day shall be the day after the date of execution.**

  **3. Seller shall instruct Title Insurance Company to provide Buyer with the most current Covenants, Conditions & Restrictions for subject property (if applicable) and any & all documents affecting peaceful enjoyment of subject property with delivery of the current commitment for an Owner's title insurance policy.**

  **4. Buyer shall have until the Objection Deadline in Paragraph XI (A) to physically visit the property and review restrictions upon the use of the property, including but not limited to the Teton County, Wyoming Land Development Regulations, the conservation easement, the subdivision's convenants, conditions and restrictions and homeowner's association by-laws, budgets & minutes to determine whether the property is suitable for Buyer's intended use. Should Buyer, at their sole discretion, determine that the property is not suitable for their intended use Buyer may terminate this contract with written notice to Seller no later than August 30, 2011, 2 PM. Seller to instruct in writing the Closing Agent to refund the earnest money to Buyer promptly. If written notice is not received by Seller or Seller's agent by August 31, 2011, 2 PM, the property will be deemed satisfactory to Buyer.**

247 **XVII.** **ADDENDA ATTACHED: (Check all that apply.)**

| | |
|---|---|
| 248 ☐ Lead-Based Paint Disclosure | ☐ Easements |
| 249 ☐ Addendum for Additional Provisions | ☐ Covenants |
| 250 ☑ Real Estate Brokerage Disclosure Form | ☐ 1031 Tax Deferred Exchange Notice |
| 251 ☐ Consent Amendment & In-Company Transaction Disclosure | ☐ Evidence of Authority |
| 252 ☐ Property Condition Disclosure | ☐ Other: _____ |
| 253 ☐ Covenants and Preliminary Title Commitment | ☐ Receipt Form - WAR Form 900-M |

254 **XVIII.** **CONSENTS AND ACKNOWLEDGEMENTS.**

255  A. All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral
256    agreements or representations between Buyer, Seller or Brokers to modify the terms and conditions of this Contract.

257  B. Brokers are authorized to disclose information regarding this sale, and terms thereof, for comparable sold data and
258    statistics to any Multiple Listing Service, Board of REALTORS®, certified appraisers, or potential clients or
259    customers, but only after the closing of this transaction.

260  C. This Contract is executed in multiple copies and by their signatures hereon each party acknowledges receipt of a
261    signed copy at the time of signing. Signature pages transmitted by telecopier or electronic transmittal via scanned pdf
262    copy shall be deemed to be original signature pages with the same legal effect as manual signatures, with original
263    signature pages to follow.

264  D. **Contour Investment Properties** _____ (Broker Working with the Buyer) hereby
265    discloses that it is working with the Buyer as ☐ (Seller's Agent) ☐ (Seller's Subagent) ☑ (Buyer's Agent)
266    ☐ (Intermediary) ☐ (Customer) *(select one)* and will be compensated by ☑ (Seller) ☐ (Buyer) ☑ (or
267    **Jackson Hole Real Estate Associates** _____ ) *(select all applicable).* Buyer and Seller
268    have consented to that arrangement. Buyer has received, read and acknowledged a Real Estate Brokerage Disclosure
269    and an executed copy of the Disclosure is attached hereto. Broker, working with Buyer hereby delivers to Broker
270    working with the Seller, a copy of the executed Real Estate Brokerage Disclosure.

271 **XIX.** **OFFER BY BUYER.** If this offer is accepted by Seller in writing on or before
272  **August 1, 2011** _____ , at **2:00**   a.m.-p.m., the parties hereto, their heirs,
273  successors, representatives and assigns shall become bound to the terms hereof.
274  **THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS,**

WAR Form 320-0411, Contract to Buy and Sell Real Estate (Farm & Ranch) (Vacant Land)
3011B Wyoming Association of REALTORS®
PREPARED BY: Ray Elser, Broker
Realfast, Inc.® ©2011 Realfast2Go version1.0. Software Registered to: Office Manager, Contour Investment Properties
7/28/2011 4:12:35 PM

Page 6 of 7

275 CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.
276

Buyer _____ Witness _____ Date 7/28/11
Paul Ronci

Buyer _____ Witness _____ Date 7/28/11
Caryn Ronci

277 _____
278 Witness                                              Date
279 **XX.  DISCLOSURE BY BROKER WORKING WITH SELLER.**
280 Broker _____ (Brokerage Firm), hereby discloses that it
281 is working with the Seller as a ☐ (Seller's Agent) ☐ (Intermediary) ☐ (Customer) or *(Select One)* and will be
282 compensated by ☐ (Seller) ☐ (or _____ ) *(Select*
283 *applicable)*. Seller has consented to this arrangement. Seller has received, read and acknowledged a Real Estate
284 Brokerage Disclosure and an executed copy of the Disclosure is attached hereto. Broker working with Seller, hereby
285 delivers to Broker working with the Buyer, a copy of the executed Real Estate Brokerage Disclosure.
286
287 Listing Broker hereby acknowledges receipt of this contract to Buy and Sell Real Estate on
288 _____, at _____ a.m./p.m.
289 Firm _____
290 Address _____
291 _____
292
293 Phone _____ By _____
294 THIS OFFER WAS RECEIVED by me as Seller on _____ at _____
295 A.M./P.M. _____ (Seller's Initials).
296 **XXI.  ACCEPTANCE OF SELLER.**
      **THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS,**
297 **CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.**
298 NOTICE TO SELLER: If you are making a counter-offer, do not sign this document.
299 **XXI.  THE UNDERSIGNED SELLER** (whether one or more) **ACCEPTS** the foregoing offer on
300 _____, at _____ a.m./p.m.
301

Seller _____ Witness _____ Date _____
Michael V. Defelice

302 **XXII.  REJECTION BY SELLER.**
303 THIS OFFER IS HEREBY REJECTED ON _____, at _____ a.m./p.m.
304
305

Seller _____ Date _____
Michael V. Defelice

306 **XXIII.  BUYER'S RECEIPT OF ACCEPTED OR REJECTED CONTRACT.**
307 BUYER ACKNOWLEDGES RECEIPT of accepted or rejected contract on _____,
308 at _____ a.m./p.m.
309

Buyer _____ Date _____
Paul Ronci

Buyer _____ Date _____
Caryn Ronci

WAR Form 320-0411, Contract to Buy and Sell Real Estate (Farm & Ranch) (Vacant Land).
2011© Wyoming Association of REALTORS®
PREPARED BY: Ray Eiser, Broker
RealFast, Inc.® ©2011 RealFast2Go version1.0. Software Registered to: Office Manager, Contour Investment Properties
7/28/2011 4:12:35 PM

Page 7 of 7

Contour Investment Properties
172 Center St. Suite 200
PO Box 1152
Jackson, WY 83001
Phone: 307-733-6400   Office Fax: 307-739-1152

IMPORTANT NOTICE

## Contour Investment Properties

(Name of Brokerage Company)
REAL ESTATE BROKERAGE DISCLOSURE

When you select a Real Estate Brokerage Firm, Broker or salesperson (all referred to as "Broker") to assist you in a real estate transaction, the Broker may do so in one of several capacities. In accordance with Wyoming's Brokerage Relationships Act, this notice discloses the types of working relationships that are available to you.

**Seller's Agent/** (Requires written agreement with Seller)

If a Seller signs a written listing agreement with a Broker and engages the Broker as a Seller's Agent, the broker represents the Seller. On properties listed with other brokerage companies, the Broker may work as an agent for the Seller if the Seller agrees to have the Broker work as a subagent. As an agent or subagent for the Seller, the Broker represents the Seller and owes the Seller a duty of utmost good faith, loyalty, and fidelity in addition to the obligations enumerated below for Intermediaries. Wyo. Stat. § 33-28-303(a). The Seller may be vicariously liable for the acts of the Seller's Agent or Seller's Subagent that are approved, directed or ratified by the Seller.

**Customer.** (No written agreement with Buyer or Seller)

A customer is a party to a real estate transaction who has established no intermediary or agency relationship with any Broker in that transaction. A Broker may work either as an agent for the Seller treating the Buyer as a customer or as an agent for the Buyer treating the Seller as a customer. Also when a Buyer or Seller is represented by another Broker, a Broker may work with the other Buyer or Seller as a customer, having no written agreement, agency or intermediary relationship with either party. A Broker working with a customer shall owe no duty of confidentiality to a customer. Any information shared with Broker may be shared with the other party to the transaction at customer's risk. The customer should not tell the Broker any information which the customer does not want shared with the other party to the transaction. The Broker must treat the customer honestly and with fairness disclosing all material matters actually known by the Broker. The Broker owes the Customer the obligations enumerated below for Intermediaries which are marked with an asterisks. W.S. 33-28-310(a).



**Buyer's Agent.** (Requires written agreement with Buyer)

If a Buyer signs a written Buyer Agency Agreement with a Broker, the Broker will act as an agent for the Buyer. If so, the Broker represents the Buyer and owes the Buyer a duty of utmost good faith, loyalty and fidelity in addition to the obligations enumerated below for Intermediaries. The Buyer may be vicariously liable for the acts of the Buyer's Agent that are approved, directed or ratified by the Buyer. As a Buyer's Agent, Wyoming law requires the Broker to disclose to potential Sellers all adverse material facts, which may include material facts regarding the Buyer's financial ability to perform the terms of the transaction. Wyo. Stat. § 33-28-304(c). As a Buyer's Agent, Broker has duties to disclose to the Buyer certain information; therefore, the Seller should not tell Broker any information which the Seller does not want shared with the Buyer.

**Intermediary.** (Requires written agreement with Seller and/or Buyer)

The Intermediary relationship is a non-agency relationship which may be established between a Broker and a Seller and/or a Broker and a Buyer. A Seller may choose to engage a Broker as an Intermediary when listing a property. A Buyer may also choose to engage a Broker as an Intermediary. An Intermediary shall not act as an agent or advocate for any party and shall be limited to providing those services set forth below. Wyo. Stat.§ 33-28-305.

As an Intermediary (Non-Agent), Broker will not represent you or act as your agent. The parties to a transaction are not legally responsible for the actions of an Intermediary and an Intermediary does not owe the parties the duties of an agent, including the fiduciary duties of loyalty and fidelity. Broker will have the following obligations to you:

- perform the terms of any written agreement made by the Intermediary with any party or parties to the transaction;
- exercise reasonable skill and care; *
- advise the parties to obtain expert advice as to material matters about which the Intermediary knows but the specifics of which are beyond the expertise of the Intermediary; *
- present all offers and counteroffers in a timely manner; *
- account promptly for all money and property Broker received; *
- keep you fully informed regarding the transaction; *
- obtain the written consent of the parties before assisting the Buyer and Seller in the same real estate transaction as an Intermediary to both parties to the transaction;

WAR Form 410-0709, Real Estate Brokerage Disclosure.
2009© Wyoming Association of REALTORS®
PREPARED BY: Ray Elsar, Broker
Realfast, Inc.©, ©2011 Realfast2Go version1.0. Software Registered to: Office Manager, Contour Investment Properties
6/14/2011 16:23:37



- assist in complying with the terms and conditions of any contract and with the closing of the transaction; *
- disclose to the parties any interests the Intermediary may have which are adverse to the interest of either party; *
- disclose to prospective Buyers, known adverse material facts about the property;
- disclose to prospective Sellers, any known adverse material facts, including adverse material facts pertaining to the Buyer's financial ability to perform the terms of the transaction; *
- disclose to the parties that an Intermediary owes no fiduciary duty either to Buyer or Seller, is not allowed to negotiate on behalf of the Buyer or Seller, and may be prohibited from disclosing information about the other party, which if known, could materially affect negotiations in the real estate transaction.
- disclose Buyer's intent to occupy property as primary residency.

As Intermediary, Broker will disclose all information to each party, but will not disclose the following information without your informed consent:

- that you may be willing to agree to a price different than the one offered;
- the motivating factors for buying or selling the property;
- that you will agree to financing terms other than those offered; or
- any material information about you, unless disclosure is required by law or if lack of disclosure would constitute dishonest dealing or fraud.

### Change From Agent to Intermediary -- In-House Transaction

If a Buyer who has signed a Buyer Agency Agreement with Broker wants to look at or submit an offer on property Broker has listed as an agent for the Seller, the Seller and the Buyer may consent in writing to allow Broker to change to an Intermediary (non-agency) relationship with both the Buyer and the Seller. Wyo. Stat. § 33-28-307.

An established relationship cannot be modified without the written consent of the Buyer or the Seller. The Buyer or Seller may, but are not required to, negotiate different commission fees as a condition to consenting to a change in relationship.

### Designated Agent. (requires written designation by the brokerage firm and acknowledgement by the Buyer or Seller)

A designated agent means a licensee who is designated by a responsible broker to serve as an agent or intermediary for a Seller or Buyer in a real estate transaction. Wyo. Stat. § 33-28-301 (a)(x).

In order to facilitate a real estate transaction a Brokerage Firm may designate a licensee as your agent or intermediary. The Designated Agent will have the same duties to the Buyer and Seller as a Buyer's or Seller's Agent or Intermediary. The Broker or an appointed "transaction manager" will supervise the transaction and will not disclose to either party confidential information about the Buyer or Seller. The designation of agency may occur at the time the Buyer or Seller enters into an agency agreement with the Brokerage Firm or the designation of agency may occur later if an "in house" real estate transaction occurs. At that time, the Broker or "transaction manager" will immediately disclose to the Buyer and Seller that designated agency will occur.

### Duties Owed By An Agent But Not Owed By An Intermediary.

WHEN ACTING AS THE AGENT FOR ONE PARTY (EITHER BUYER OR SELLER), BROKER HAS FIDUCIARY DUTIES OF UTMOST GOOD FAITH, LOYALTY, AND FIDELITY TO THAT ONE PARTY. A BROKER ENGAGED AS AN INTERMEDIARY DOES NOT REPRESENT THE BUYER OR THE SELLER AND WILL NOT OWE EITHER PARTY THOSE FIDUCIARY DUTIES. HOWEVER, THE INTERMEDIARY MUST EXERCISE REASONABLE SKILL AND CARE AND MUST COMPLY WITH WYOMING LAW. AN INTERMEDIARY IS NOT AN AGENT OR ADVOCATE FOR EITHER PARTY. SELLER AND BUYER SHALL NOT BE LIABLE FOR ACTS OF AN INTERMEDIARY, SO LONG AS THE INTERMEDIARY COMPLIES WITH THE REQUIREMENTS OF WYOMING'S BROKERAGE RELATIONSHIPS ACT. WYO. STAT. § 33-28-306(a)(iii).

THIS WRITTEN DISCLOSURE AND ACKNOWLEDGMENT, BY ITSELF, SHALL NOT CONSTITUTE A CONTRACT OR AGREEMENT WITH THE BROKER OR HIS/HER FIRM. UNTIL THE BUYER OR SELLER EXECUTES THIS DISCLOSURE AND ACKNOWLEDGMENT, NO REPRESENTATION AGREEMENT SHALL BE EXECUTED OR VALID. WYO. STAT. § 33-28-306(b).

NO MATTER WHICH RELATIONSHIP IS ESTABLISHED, A REAL ESTATE BROKER IS NOT ALLOWED TO GIVE LEGAL ADVICE. IF YOU HAVE QUESTIONS ABOUT THIS NOTICE OR ANY DOCUMENT IN A REAL ESTATE TRANSACTION, CONSULT LEGAL COUNSEL AND OTHER COUNSEL BEFORE SIGNING.

The amount or rate of a real estate commission for any brokerage relationship is not fixed by law. It is set by each Broker individually and may be negotiable between the Buyer or Seller and the Broker.

On __6-14-11_____ (date), I provided ⌐ (Seller) ☑ (Buyer) with a copy of this Real Estate Brokerage Disclosure and have kept a copy for our records.

WAR Form 410-0709, Real Estate Brokerage Disclosure.
2005© Wyoming Association of REALTORS®
PREPARED BY: Roy Elser, Broker
RealEast, Inc.®, ©2011 RealEast2Go version1.0. Software Registered to  Office Manager, Contour Investment Properties
6/14/2011 18:23:37

Brokerage Company **Contour Investment Properties**

By _Ray Elser_    _Ray Elser_

I/We have been given a copy and have read this Real Estate Brokerage Disclosure on (date) _____ (time) _____ and hereby acknowledge receipt and understanding of this Disclosure.

Buyer's Signature _____
**Paul Ronci**

Buyer's Signature _____
**Caryn Ronci**

WAR Form 410-0709, Real Estate Brokerage Disclosure.
2009© Wyoming Association of REALTORS®
PREPARED BY: Ray Elser, Broker
Realfast, Inc.®, ©2011 Realfast2Go version1.0. Software Registered to: Office Manager, Contour Investment Properties
6/14/2011 18:23:37

**Jackson Hole Real Estate Associates, LLC**
455 W. Broadway
PO Box 4897
Jackson, WY 83001
Phone: 307-733-6060,   Fax: 307-733-3485

COUNTER OFFER

COUNTER OFFER # 2 _____ (1,2,3, etc.)

THIS COUNTER OFFER SUPERSEDES ALL PRIOR COUNTER OFFERS.  THE CHANGES TO THE TERMS AND CONDITIONS LISTED BELOW ALONG WITH ANY ATTACHED CONTRACT TO BUY & SELL REAL ESTATE AND/OR ADDENDUMS ARE CONSIDERED A NEW OFFER AND ALL PREVIOUS OFFERS AND COUNTER OFFERS ARE NOT AVAILABLE FOR FUTURE ACCEPTANCE.

THIS COUNTER OFFER CREATES A NEW OFFER WHICH MAY INCORPORATE ANY OR ALL OF THE PROVISIONS FROM ALL PREVIOUS OFFERS AND COUNTER OFFERS

THIS IS A LEGALLY BINDING DOCUMENT. READ THE ENTIRE DOCUMENT INCLUDING ANY ATTACHMENTS. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL OR

OTHER COUNSEL BEFORE SIGNING.

To the extent the terms of this Counter Offer modifies or conflicts with any provisions of the Contract to Buy and Sell Real Estate and all prior Counter Offer(s), the terms in this Counter Offer shall control.  All other terms of the attached Contract to Buy and Sell Real Estate and all prior Counter Offer(s) not modified by this Counter Offer shall remain the same.

This is a Counter Offer to the Contract to Buy and Sell Real Estate, dated July 28, 2011 _____ pertaining to:
ADDRESS:
503 Saddle Butte Way

LEGAL DESCRIPTION:
Lot 82 of the Saddle Butte Ranch Subdivision, Teton County, Wyoming, according to that plat recorded January 6, 1999 as Plat No. 820.  PIN # 22-41'-16-28-1-03-001.

BUYER:

SELLER:
   Michael Dafalias

☒ This is a SELLER counter offer.  The Seller reserves the right to continue to offer the Property described in the attached Contract to Buy and Sell Real Estate for sale. Seller may accept any other offer until the original, a copy or facsimile of this Counter Offer, duly accepted and signed by Buyer, has been delivered in writing to the Seller or Seller's Agent within the time frame specified herein.

☐ This is a BUYER counter offer.  The undersigned BUYER reserves the right to withdraw this counter offer until the original, a copy or facsimile of this Counter Offer, duly accepted and signed by Seller, has been delivered in writing to the Buyer or Buyer's Agent within the time frame specified herein.

The parties accept all of the terms and conditions in the attached Contract to Buy and Sell Real Estate and all attached Counter Offers with the following changes:

Insert Expandable Here
The sale price shall be $650,000.

All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral agreements or

PREPARED BY: Justino Ray Tasha, Associate Broker
WAR Form 720-0208, Counter Offer 20208, Wyoming Association of REALTORS®
ResiFAIT® Software, ©2011, Version 6.17. Software Registered to: Office Manager, Jackson Hole Real Estate Associates, LLC

Buyer(s) _____                                           08/01/11 10:59:22

**Exhibit H**

44  representations between Buyer, Seller and/or any Brokers which modify the terms and conditions of this Counter Offer and the
45  attached Contract to Buy and Sell Real Estate. Buyer and Seller acknowledge the terms contained in Section II and Section III
46  of the Contract to Buy and Sell Real Estate may change if the purchase price is changed as part of this Counter Offer. Upon
47  its execution by both parties, this agreement is made an integral part of the aforementioned Contract to Buy and Sell Real Estate.
48

49  If a signed acceptance is not delivered in person, by mail, facsimile or electronic transmission on or before (date)
50  August 04, 2011 _____ at 4:00 pm _____ A.M. / P.M. this Counter Offer shall be deemed to have expired.
51
52  Buyer/Seller _____  Witness _____  Date 8/1/2011  Time 1:__ EDT
53
54  Buyer/Seller _____  Witness _____  Date _____  Time _____
55
56  This Counter Offer was received by me as Seller/Buyer on _____ at _____ a.m./p.m.
57
58                                                                      (Initials of Buyer/Seller)
59  Buyer or Seller Acceptance of Counter Offer
60
61  The undersigned Buyer/Seller accepts the foregoing Counter Offer on _____ at _____ a.m./p.m.
62
63  Buyer/Seller _____  Witness _____  Date _____  Time _____
64
65  Buyer/Seller _____  Witness _____  Date _____  Time _____
66
67  Buyer or Seller Rejects this Counter Offer
68
69  The Counter Offer is hereby rejected on 8/1/11 at 8:00 a.m./p.m.
70
71  Buyer/Seller _____  Witness _____  Date 8/1/4  Time 8:00 pm
72
73  Buyer/Seller _____  Witness _____  Date 8/1/11  Time 8:00 pm
74
75  Buyer or Seller's Receipt of Accepted Counter Offer
76
77  Buyer/Seller acknowledges receipt of accepted Counter Offer on _____ at _____ a.m./p.m.
78
79  Buyer/Seller _____  Witness _____  Date _____  Time _____
80
81  Buyer/Seller _____  Witness _____  Date _____  Time _____

PREPARED BY: Janice Bay Teske, Associate Broker
WAR Form 720-6208. Counter Offer 20090. Wyoming Association of REALTORS®
RealFAST® Software, ©2011, Version 6.17. Software Registered to: Office Manager, Jackson Hole Real Estate Associates, LLC
Buyer(s) _____                                    08/01/11 10:50:22



**From:** Ray Elser [mailto:relser@wyoming.com]
**Sent:** Wednesday, August 03, 2011 11:19 AM
**To:** janinebayteske@jhreassociates.com
**Subject:** Counter offer response

Janine, your efforts are appreciated. My client decided not to respond as he is unwillingly to offer above $525,000 and did not want to waste more of your time or your customer's time.

Best regards,

*Ray*

**Ray Elser, Broker**

**Contour Investment Properties**

**Jackson Hole, WY**

**O-307-733-6400 Mb-307-690-4313**

e-mail: ray@contourproperties.com or relser@wyoming.com

website: www.RayElser.com www.Contourproperties.com

**Exhibit I**

**Jackson Hole**
**Real Estate Associates, LLC**

COUNTER OFFER

1
2  COUNTER OFFER # __FOUR  (4)_____ (1, 2, 3, etc.)
3  THIS COUNTER OFFER SUPERSEDES ALL PRIOR COUNTER OFFERS. THE CHANGES TO THE TERMS AND
4  CONDITIONS LISTED BELOW ALONG WITH ANY ATTACHED CONTRACT TO BUY & SELL REAL ESTATE
5  AND/OR ADDENDUMS ARE CONSIDERED A NEW OFFER AND ALL PREVIOUS OFFERS AND COUNTER
6  OFFERS ARE NOT AVAILABLE FOR FUTURE ACCEPTANCE.
7
8  THIS IS A LEGALLY BINDING DOCUMENT. READ THE ENTIRE DOCUMENT INCLUDING ANY
9  ATTACHMENTS. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL OR
10  OTHER COUNSEL BEFORE SIGNING.
11
12  To the extent the terms of this Counter Offer modifies or conflicts with any provisions of the Contract to Buy and Sell Real
13  Estate and all prior Counter Offer (s), the terms in this Counter Offer shall control. All other terms of the attached Contract to
14  Buy and Sell Real Estate and all prior Counter Offer (s) not modified by this Counter Offer shall remain the same.
15
16  This is a Counter Offer to the Contract to Buy and Sell Real Estate, dated ___August 20, 2012___ pertaining to:
17  ADDRESS:
18  __505  West Saddle Butte Way , Jackson, WY  83001__
19  LEGAL DESCRIPTION:
20  __Lot 2 of Saddle Butte Ranch Subdivision, Teton Co.WY plat 920__
21  BUYER:
22  __Michael Weaver, Ellen Weaver__
23  SELLER:
24  __Defelice__
25
26  ☐ This is a SELLER counter offer. The Seller reserves the right to continue to offer the Property described in the attached
27  Contract to Buy and Sell Real Estate for sale. Seller may accept any other offer until the original, a copy or facsimile of this
28  Counter Offer, duly accepted and signed by Buyer, has been delivered in writing to the Seller or Seller's Agent within the time
29  frame specified herein.
30
31  ☒ This is a BUYER counter offer. The undersigned BUYER reserves the right to withdraw this counter offer until the
32  original, a copy or facsimile of this Counter Offer, duly accepted and signed by Seller, has been delivered in writing to the
33  Buyer or Buyer's Agent within the time frame specified herein.
34
35  The parties accept all of the terms and conditions in the attached Contract to Buy and Sell Real Estate and all attached Counter
36  Offers with the following changes:
37  __1. Purchase price shall be $400,000 (four hundred thousand dollars).__
38  __2. Paragraph 2 of of Seller's counter 3 is hereby eliminated in it's__
39  __entirity.__
40  __3. Buyers "due diligence" period of 20 days as referenced in Paragraph 12 in__
41  __Attachment "A" shall begin on sellers final agreement from lender, which__
42  __shall be on or before September 20, 2012 at 4:00 p.m.__
43  _____
44  _____
45  _____
46  _____
47  All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral agreements
48  or representations between Buyer, Seller and/or any Brokers which modify the terms and conditions of this Counter Offer and
49  the attached Contract to Buy and Sell Real Estate. Buyer and Seller acknowledge the terms contained in Section II and
50  Section III of the Contract to Buy and Sell Real Estate. Buyer and Seller acknowledge the terms contained in Section II and
51  Counter Offer. Upon its execution by both parties, this agreement is made an integral part of the aforementioned Contract to
52  Buy and Sell Real Estate.
53

WAR Form 700 (2010) Counter Offer
2010, Wyoming Association of REALTORS®

Jackson Hole Real Estate Assoc - Broadway Shops 80 W. Broadway | PO Box 4897 Jackson, WY 83001
Phone 307-413-1764          Fax: 307-734-9560
Budge Realty Group

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Mike and Ellen

**Exhibit J**

54  This Counteroffer shall expire on or before __September 11, 2012__ at __10:00__ ☒ A.M. ☐ P.M. Additionally,
55  the undersigned Buyer/Seller reserves the right to withdraw this Counteroffer until the original, a copy, electronic transmission
56  or facsimile of this Counteroffer, duly accepted and signed by Seller/Buyer, has been delivered in writing to the Buyer/Seller or
57  Broker working with Buyer/Seller prior to the expiration date and time above.
58
59  Buyer/Seller  *Michael Weaver*                                        9/10/2012         1 PM
60  Michael Weaver                                                        Date              Time
61
62  Buyer/Seller  *Ellen Weaver*                                         9/10/12            1 pm
63  Ellen Weaver                                                          Date              Time
64
65  This Counter Offer was received by me as Seller/Buyer on _____ at _____ ☐ a.m. ☐ p.m.
66
67                                                                                (Initials of Buyer/Seller)
68  **Buyer or Seller Acceptance of Counter Offer**
69
70  The undersigned Buyer/Seller accepts the foregoing Counter Offer on  9/11/12  at  8:40  ☒ a.m. ☐ p.m.
71
72  Buyer/Seller                                                          9/11/12           8:40 am
73  Michael Defelice                                                      Date              Time
74
75  Buyer/Seller _____
76
77                                                                        Date              Time
78  **Buyer or Seller Rejects this Counter Offer**
79
80  The Counter Offer is hereby rejected on _____ at _____ ☐ a.m. ☐ p.m.
81
82  Buyer/Seller _____
83
84                                                                        Date              Time
85  Buyer/Seller _____
86
87                                                                        Date              Time
88  If this Counteroffer is rejected and the rejection is not signed by the Buyer/Seller above, then this Counteroffer was rejected by
89  oral notification to Broker on _____ and Buyer/Seller (check one) ☐ authorized rejection or ☐ refused to
90  execute written rejection.

08/22/2012  11:39   4406026451          WEST PATHOLOGY                    PAGE  01/24

**Jackson Hole**
**Real Estate Associates, LLC**
650 W Broadway | PO Box 4897
Jackson, WY 83001
Phone: 307-733-9009

CONTRACT TO BUY AND SELL REAL ESTATE
(FARM & RANCH)
(VACANT LAND)

Prepared: **August 20, 2012**
**Jackson**, Wyoming

| | | |
|---|---|---|
| 1 | I. | **OFFER TO PURCHASE** dated ___**August 20, 2012**___, from |
| 2 | | **Michael Weaver, Ellen Weaver** |
| 3 | | ("Buyer"), to |
| 4 | | **Defelice** |
| 5 | | ("Seller"). Subject to the provisions of this offer, if accepted by Seller, Buyer agrees to buy and Seller agrees to sell the |
| 6 | | following described real estate situated in the town or city of ___**Jackson**___, in the County of |
| 7 | | ___**Teton**___, Wyoming, commonly known as **505   West Saddle** |
| 8 | | **Butte Way , Jackson, WY  83001** |
| 9 | | and more particularly described as: |
| 10 | | **Lot 2 of Saddle Butte Ranch Subdivision, Teton Co.WY plat 920** |
| 11 | | with all improvements thereon, easements and other appurtenances and all fixtures of a permanent nature currently on the |
| 12 | | premises except as hereinafter provided, in their present condition, ordinary wear and tear expected, and including all |
| 13 | | personal property described herein (hereinafter "Property"). |

14 II.  **EARNEST MONEY.** Buyer delivers $ **10,000.00** in the form of **wire**
15
16      to Broker working with the Buyer, **Jackson Hole Real Estate Associates LLC** (Selling Brokerage
17      Firm Name).
18      *(select one):*
19      ☐ herewith, which Broker working with the Buyer acknowledges having received, or
20      ☒ no later than ___**72**___ hours after mutual acceptance hereof (said funds to be delivered to Listing Brokerage Firm
21      or Closing Agent by the close of the next banking day from receipt of Buyer (if funds are sent directly to Closing Agent,
22      Broker working with Buyer shall send notice to Listing Brokerage Firm concurrent with such transfer)).
23      Listing Brokerage Firm, **Jackson Hole Real Estate Associates LLC** shall deposit such funds (in
24      its trust account) *or* (in an appropriate trust account with **Wyoming Title and Escrow** as Closing
25      Agent). The deposit by Listing Brokerage Firm shall be completed by the close of the next banking day following its
26      receipt from Broker working with the Buyer, or from Buyer, and shall retain such funds in such account. If the earnest
27      money deposit is not received as described in this section, this contract shall be void. Listing Brokerage Firm or Closing
28      Agent shall not disburse such deposit until funds have cleared the bank(s) and, if this offer has been accepted, until
29      closing or until the parties hereto have otherwise agreed in writing regarding disbursement of such funds.

30 III. **PURCHASE TERMS.** Buyer agrees to buy the above-described property upon the following terms and conditions and
31      for a purchase price of ($ **400,000.00** )
32      **Four Hundred Thousand**
33      Dollars payable as follows:
34      $ ___**10,000.00**___ earnest money deposit; and at least
35      $ _____ by obtaining a new loan (per Section IV A); and/or
36      $ _____ note and mortgage to Seller (see Section XV Additional Provisions for Terms); and/or
37      $ _____ *(other)* _____ ;
38      $ ___**390,000.00**___ (approximate) balance of purchase price to be paid in collected or immediately available
39      funds acceptable to the closing firm.

40 IV. **LOAN TERMS.**
41      A.  If a new loan is to be obtained, describe and add special terms, if any: Loan Type/Terms
42          **See Attachment "A" which by this reference becomes part of and is**
43          **attached hereto**
44          ~~Said loan to be amortized for a period of ___ years at an initial interest rate not to exceed ___ % per~~
45          ~~annum resulting in initial ☐ (monthly) ☐ (annual) (select one) payment of principal and interest of approximately~~
46          ~~$ _____ . If Buyer agrees to accept and can qualify for terms other than the above, the~~
47          ~~approval of the Seller shall not be required, provided the Seller incurs no additional expense as a result thereof.~~

WAR Form 320-0411, Contract to Buy and Sell Real Estate (Farm & Ranch) (Vacant Land).
2011© Wyoming Association of REALTORS®

Jackson Hole Real Estate Assoc - Broadway Shops 80 W. Broadway | PO Box 4897 Jackson, WY 83001                                    Page 1 of 7
Phone: 307-413-1364        Fax: 307-734-9960          Budge Realty Group

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                          Mike and Ellen

**Exhibit K**

48  V.  ~~LOAN APPLICATION. If a new loan is to be applied for by Buyer, Buyer agrees to:~~
49      ~~A.  Complete and tender the loan application to lender within _____ banking days following Seller's acceptance~~
50          ~~of this offer. If applicable, Buyer also agrees to cooperate with lender and complete any required steps in~~
51          ~~conjunction with a credit report and appraisal.~~
52      ~~B.  Buyer shall provide a loan approval letter by the close of business on _____ n.a. _____ (date).~~
53          ~~"Approval" means that a firm commitment has been made from a Wyoming licensed mortgage lender/broker or a~~
54          ~~person or agency listed in W.S. § 40-23-105 and if necessary accepted by Buyer, for an amount no less than that~~
55          ~~stated in Section III above. Furthermore, the letter must state that the loan has been reviewed and approved and is~~
56          ~~unconditional subject only to appraisal and acceptable title as stated in Section VIII Title, and that the Buyer's cash~~
57          ~~to close has been verified by lender.~~
58      ~~C.  Complete and promptly tender to Lender any and all documents and other information required to process the~~
59          ~~application;~~
60      ~~D.  Not withdraw the assumption or loan application or intentionally cause any change in circumstances which would~~
61          ~~prejudice such application; Accept the assumption or loan if approved by Lender at above stated terms and~~
62          ~~conditions.~~
63      ~~E.  In the event that Buyer, after having complied with the requirements set forth in Section V, A through D above, fails~~
64          ~~to qualify for such financing and provides Seller with a written letter of declination by Lender, this Contract shall be~~
65          ~~voidable at the option of Buyer or Seller, by sending written notice to Seller within 5 days of Buyer's notice of~~
66          ~~declination by Lender. If voided by Buyer or Seller pursuant to this clause, the earnest money deposit receipted for~~
67          ~~above shall be returned to Buyer subject to the requirements of Section II above and this Contract shall terminate.~~

68  VI. **CLOSING COSTS.**
69      A.  Buyer shall pay the following loan and closing costs in cash or certified funds at closing, or on the date specified by
70          lender:
71          1.  Loan origination fee, discount points, credit report, appraisal, inspections and/or certifications;
72          2.  Any other costs of securing financing;
73          3.  Any prepaid tax, leases/permits;
74          4.  Recording fees for warranty deed and mortgage;
75          5.  Fees for the title insurance policy as described in Section VIII B below.
76          6.  Other: **none known**
77
78      B.  Seller shall pay the following closing costs in cash or certified funds at closing:
79          1.  Recording fee for any mortgage releases, deed preparation, statement of consideration and Owner's title
80              insurance policy as stated in Section VIII B below;
81          2.  Other: **See Attachment "A"**
82
83      C.  Closing fee shall be paid by [X] (Buyer)   [X] (Seller) *(select applicable)*
84          **equally buyer and seller not to exceed $250 each**
85      D.  General taxes for the year of closing based on the most recent assessment shall be apportioned through date of
86          closing.
87      E.  Irrigation assessments will be paid as follows **n.a.**

88  VII. **ITEMS INCLUDED IN PURCHASE PRICE.**
89      A.  Price shall include ~~all fixtures currently on premises, including but not limited to, all lighting, heating and plumbing~~
90          ~~fixtures, all outdoor plants, air conditioning, ventilating fixtures and evaporative coolers, built-in appliances,~~
91          ~~permanently attached floor coverings, storm windows and doors, screens, garage door openers and controls,~~
92          ~~smoke/fire detection devices, curtain and drapery rods, attached TV antennas, TV satellite dish and controls (if~~
93          ~~owned by Seller), attached mirrors, awnings, water softeners (if owned by Seller), propane tanks (if owned by~~
94          ~~Seller), heating stove(s) and fireplace inserts, gates, auto-gates/cattle guards and irrigation/domestic water systems,~~
95          ~~stock tanks~~ *(delete items not included)*, and
96          **none**
97          PROVIDED, HOWEVER, that the following fixtures of a permanent nature are to be EXCLUDED from the sale:
98          **none**
99          Seller agrees to remove all such excluded fixtures in a workmanlike manner without causing damage to the
100         premises, on or before the date of possession or closing, whichever is sooner. Any such damages shall be repaired at
101         Seller's expense.

102  B.  The price shall also include the following personal property items currently on the premises: (Personal property
103      shall be transferred with a sufficient Bill of Sale): none _____
104      _____
105      _____ .
106      in the condition as stated in Section X below.
107  C.  To include the following mineral rights: **See Attachment "A"** _____
108      _____
109  D.  To include the following lease, licenses, easements, agreements and permits (surface damage, grazing, water
110      discharge, oil and gas, wind etc.): **See Attachments "A"** _____
111      _____
112  E.  To include the following water rights (ground, surface, reservoir, pipeline and stockwater): **See Attachment**
113      **"A"**. _____
114  F.  To include the following growing crops: **n.a.** _____
115      _____
116  G.  The price shall also include any propane or other heating liquid remaining in any tank on the premises on date of
117      closing.

118 **VIII. TITLE.**
119  A.  Title shall be conveyed to the following named Buyer(s):
120      **to be determined prior to closing** _____
121      as ☐ (Sole Owners), ☐ (Husband and Wife), ☐ (Joint Tenants with Rights of Survivorship), ☐ (Tenants in
122      Common), ☐ (LLC). ☐ (Partnership), ☐ (Corporation) ☐ (Trust) *(Buyer select one.)*
123  B.  Seller agrees to furnish, at Seller's expense, a current commitment for an Owner's title insurance policy in an amount
124      equal to the purchase price, showing merchantable title in Seller. Seller agrees to deliver the title insurance
125      commitment to Buyer no later than **five days of acceptance** , and deliver the policy to Buyer without
126      unreasonable delay after closing and pay the premium thereon at the time of closing. Buyer, within **five** days
127      of receipt of the title insurance commitment and exceptions, encroachments, covenants, and/or easements identified
128      therein shall identify and provide to the Seller, in writing, notice of any title defects which Buyer is requesting be
129      addressed before closing. Buyer shall pay for any Mortgagee's title policy and any endorsements required by Lender
130      or Buyer.
131  C.  Title shall be merchantable in Seller. Seller agrees to execute and deliver a general warranty deed, or
132      **n.a.** _____
133      deed, including the release and waiver of all homestead rights, if any, and a good and sufficient bill of sale to Buyer
134      conveying said real and personal properties. Title shall be subject to general taxes for the year of closing, local
135      improvement districts, irrigation ditch right of ways, guaranteed revenues to utility companies, building and zoning
136      regulations, city, county and state subdivision and zoning laws, easements, restrictive covenants, and reservations of
137      record and the following additional encumbrances to include unrecorded easements which shall NOT be released or
138      discharged at closing: **none** _____
139      _____
140      _____
141  D.  Except as stated in Section VIII C above, if title is not merchantable or otherwise recordable and written notice of
142      such defects in title is given by Buyer to Seller or Listing Broker within the time herein provided for delivery of
143      deed and shall not be rendered merchantable within 30 days after such written notice, then this contract, at Buyer's
144      option, may be specifically enforced or may be declared void and of no effect, and each party hereto shall be
145      released from all obligations hereunder and the payments made hereunder shall be thereupon returned forthwith to
146      Buyer; PROVIDED, HOWEVER, that in lieu of correcting such defects, Seller may, within said 30 days, obtain a
147      commitment for Owner's title insurance policy in the amount of the purchase price reflecting title insurance
148      protection in regard to such defects, and Buyer may elect to accept the then existing title insurance in lieu of such
149      merchantable title, in which case Buyer shall be deemed to have waived such defect. Seller shall pay the full
150      premium for such Owner's title insurance policy.
151  E.  The Property being transferred in this transaction may consist of the Mineral Estate (if all or any portion is owned by
152      the Seller) and the Surface Estate. The "Mineral Estate" means all oil, gas, and other minerals in or under the
153      Property, any royalty under any existing or future lease covering any part of the Property, surface rights (including
154      rights of ingress and egress), production and drilling rights, lease payments and all related benefits. Unless
155      previously separated through a recorded reservation of the mineral rights, the Property being conveyed consists of
156      both estates. If the Mineral Estate is owned by Seller, the Seller will convey the Mineral Estate as part of this
157      transaction unless specifically reserved, in whole or in portion, as part of this Agreement. If the Seller is reserving

158      any portion of the Mineral Estate, such reservation must be included in the Warranty Deed. If the Mineral Estate has
159      been previously separated from the Surface Estate, third parties may have rights to enter and use the surface of the
160      property in the testing, exploration and production of the underlying minerals. The title insurance policy does not
161      provide information on whether the mineral estate or any portion thereof has been reserved and severed from the
162      surface estate. Buyer is advised to timely consult legal counsel with respect to such matters.

163    F.    Buyer acknowledges and agrees that Buyer has been advised to carefully review the title commitment and any other
164      rights (water, mineral, air) and all exceptions, encroachments, covenants, easements, and related matters described
165      therein or otherwise identified.
166      Other than the defects submitted to the Seller in writing pursuant to VIII B. above, or in the event no title issues are
167      raised in writing by Buyer, Buyer accepts the condition of title as satisfactory.

168 **IX.   CLOSING AND POSSESSION.**
169    A.    Closing shall occur on ____ **30 days of lender** ____ , or as otherwise mutually agreed in writing between the
170      parties, at a time and place which shall be designated by Listing Broker. Seller, at Seller's option, may continue to
171      offer subject property for sale until closing. Seller understands, however, that any additional offer accepted may
172      subject Seller to remedies provided by law for breach of the original Contract.
173    B.    Possession shall be delivered to Buyer on **date & time of closing, n.a.** ☐ a.m. ☐ p.m.
174      or as otherwise mutually agreed in writing between the parties. If Seller fails to deliver possession by the date herein
175      specified, Seller shall be subject to eviction by Buyer. This remedy is in addition to any other remedies Buyer may
176      have.
177    C.    Possession shall be subject to the following leases or tenancies: **none** _____
178      _____
179      1.    Copies of all leases and/or tenants' written verifications of rental terms, security/damage deposits and status are
180      attached hereto and accepted by Buyer. Seller agrees to notify Buyer of any change in tenant status immediately.

181 **X.   CONDITION OF PROPERTY.**
182    A.    Seller represents that upon execution of this Contract:
183      1.    There are no known violations of applicable city, county and/or state subdivision, zoning, building and/or public
184      health codes, ordinances, laws, rules and regulations and any recorded covenants in force and effect as of that
185      date except: **none known** _____
186      _____
187      **NOTE:** Whether a property meets the above codes, ordinances, laws, rules and regulations is a technical
188      question which may require special expertise. If the Buyer has concerns about these issues, the Buyer should
189      contact the applicable departments of the city, county, and/or state or retain a firm with specialized expertise to
190      investigate the issue.
191      2.    The property, and all fixtures, appurtenances and improvements thereon, shall be conveyed in their present
192      condition, ordinary wear and tear excepted, unless otherwise agreed in this Contract.
193      3.    Property Disclosure. *(Initial a or b).*
194      a. The condition of the property is as stated in the Property Condition Statement(s)/ Supplement(s):
195 **Initial Initial**    ☐ WAR Form 900F An accurate and complete copy of which is attached hereto and incorporated herein.
196      ☐ additional supplements *(Check appropriate boxes):*
197 _____    b. A Property Disclosure is not available.
198 **Initial Initial**
199      4.    Buyer may, at Buyer's option and expense, inspect the property as provided in Section XI INSPECTIONS
200      below.
201    B.    Buyer acknowledges and agrees that, upon execution of this Contract:
202      1.    Buyer is not relying upon any representations of Seller or Seller's Agents or representatives as to any condition
203      which Buyer deems to be material to Buyer's decision to purchase this property; and
204      2.    Buyer has been advised by Broker working with the Buyer of the opportunity to seek legal, financial,
205      construction, air quality (such as mold) environmental (such as radon and lead-based paint) and/or professional
206      property inspection services regarding this purchase.
207      3.    SQUARE FOOTAGE/ACREAGE VERIFICATION: Buyer is aware that any reference to square footage or
208      acreage of the real property or improvements is approximate. If square footage or acreage is material to the
209      Buyer, it must be verified during the inspection period.

210 **XI.   INSPECTIONS.**
211    A.    Buyer may obtain, at no expense to Seller, electrical, mechanical, structural, air quality (such as mold), environmental
212      (such as lead-based paint, radon), and/or other inspections of the property by qualified professional inspectors and/or
213      engineers, and shall pay for any damage to Seller's property caused by such inspectors and/or engineers. Buyer, or

214 designee, shall have the right to make any inspections of the physical condition of the property at reasonable times,
215 upon at least 24 hours advance notice to Seller. Unless Seller receives written notice, signed by Buyer on or before
216 __20 days of accep.__, __5:00__ ☐ a.m. ☒ p.m. (Objection Deadline) of any defect(s) the
217 property shall be deemed satisfactory to Buyer.

218 B. ~~If inspections disclose defects of the property before the objection deadline set out in XI A, the cost of repairs shall~~
219 ~~be paid by agreement of the parties. If the parties are unable to agree on payment of additional costs, this contract~~
220 ~~shall be voidable at the option of Buyer, upon written notice to Seller no later than_____,~~
221 __n.a.__ ☐ a.m. ☐ p.m. ~~(Resolution Deadline).~~

222 C. If Buyer elects to void the contract in accordance with Section XI (B) above the earnest money deposit shall be
223 returned to Buyer pursuant to the requirements of Section II above.

224 D. Waiver of Defects. Buyer acknowledges that he has had ample opportunity to inspect the property and has done so
225 to Buyer's satisfaction. Other than repairs or defects submitted to the Seller in writing pursuant to XI (A) or (B)
226 above, or in the event no repairs or inspections are required by Buyer, Buyer accepts the property in its entirety in
227 "as is, where is" condition without any implied or express warranty by Seller or by any Broker.

228 **XII. USDA GOVERNMENT PROGRAMS.**
229 (Check One)
230 ☒ Seller does **NOT** participate in USDA Government Programs
231 ☐ Seller **DOES** participate in USDA Government Programs
232 All beneficial interest that the Seller has in the crops will be transferred to the buyer on the day of closing. Buyer agrees to
233 maintain any existing contracts established with the Farm Service Agency, Naturally Resource Conservation Service and
234 or cooperating agency. Conservation Reserve Program contracts will be assumed and maintained by the Buyer with all
235 payments prorated to the day of closing by the Farm Service Agency. On the day of closing both Buyer and Seller will
236 contact the Farm Service Agency and Natural Resource Conservation Service to update ownership records.

237 **XIII. INSURANCE.**
238 Buyer hereby acknowledges that Buyer has been advised to investigate, research and obtain a written commitment for
239 adequate property and liability insurance prior to closing.

240 **XIV. RISK OF LOSS.**
241 Risk of loss shall remain with Seller until delivery of deed. In the event that premises shall be damaged by fire or other
242 casualty prior to time of closing, in an amount of not more than 10% of the total purchase price, Seller shall be obligated
243 to repair the same before the date herein provided for delivery of deed. In the event such damage cannot be repaired
244 within said time or if such damage shall exceed such sum, this contract shall be voidable at the option of Buyer. Should
245 Buyer elect to carry out this Contract despite such damage, Buyer shall be entitled to all of the insurance proceeds
246 resulting from such damage.

247 **XV. DEFAULT, REMEDIES AND ATTORNEY'S FEES.**
248 A. ~~TIME IS OF THE ESSENCE hereof, and any party who fails to tender any payment, or perform any other~~
249 ~~condition hereof as herein provided, shall be in default of this Contract. In the event of default, the non-defaulting~~
250 ~~party may elect to treat this Contract as breached and recover such damages as may be proper, or may treat this~~
251 ~~Contract as being in full force and effect and require specific performance of the terms hereof. In lieu of the remedy~~
252 ~~provided above to Seller if Buyer is the defaulting party, Seller may elect to terminate the Contract and recover such~~
253 ~~damages as may be proper, or Seller may elect to retain all payments made hereunder as liquidated damages, such~~
254 ~~amount, if elected by Seller, being agreed by the parties hereto to constitute compensation for the loss of opportunity~~
255 ~~suffered by Seller due to such breach.~~

256 B. In the event that any party shall become in default or breach of any of the terms of this Contract, such defaulting or
257 breaching party shall pay all reasonable attorney's fees, costs and other expenses which the non-breaching or
258 non-defaulting party may incur in enforcing this Contract with or without formal proceedings. This provision shall
259 not limit any other remedies to which the parties may otherwise be entitled.

260 C. Seller and Buyer agree that in the event of any controversy regarding earnest money or other things of value held by
261 Broker and/or Closing Agent. unless Broker and/or Closing Agent receives written instructions from both Buyer and
262 Seller regarding disposition of the earnest money or things of value, Broker and/or Closing Agent, in its sole
263 discretion, may hold the earnest money or things of value or may interplead all parties and deposit the earnest money
264 deposit or things of value into a court of competent jurisdiction. Broker and/or Closing Agent shall be entitled to
265 recover its attorney's fees and costs from the non-prevailing party in the action in which the funds are interplead, but
266 if no such award or payment is made, Broker and/or Closing Agent shall recover its court costs and reasonable
267 attorney's fees from the interplead funds or things of value.

268 XVI.  **ADDITIONAL PROVISIONS.**
269      **See Attachment "A" which is attached hereto.**
270      _____
271      _____
272      _____
273      _____
274      _____
275      _____
276      _____
277      _____
278      _____
279      _____
280      _____
281      _____
282      _____
283      _____
284      _____
285      _____
286      _____
287      _____
288      _____
289      _____
290      _____
291      _____
292      _____
293      _____
294      _____
295      _____
296      _____
297      _____
298      _____
299      _____
300      _____

301 XVII. **ADDENDA ATTACHED: (Check all that apply.)**
302      ☐ Lead-Based Paint Disclosure
303      ☒ Addendum for Additional Provisions
304      ☒ Real Estate Brokerage Disclosure Form
305      ☒ Consent Amendment & In-Company Transaction Disclosure
306      ☐ Property Condition Disclosure
307      ☐ Covenants and Preliminary Title Commitment

         ☐ Easements
         ☐ Covenants
         ☐ 1031 Tax Deferred Exchange Notice
         ☐ Evidence of Authority
         ☐ Other: _____
         ☐ Receipt Form - WAR Form 900-M

308 XVIII. **CONSENTS AND ACKNOWLEDGEMENTS.**
309      A. All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral
310         agreements or representations between Buyer, Seller or Brokers to modify the terms and conditions of this Contract.
311      B. Brokers are authorized to disclose information regarding this sale, and terms thereof, for comparable sold data and
312         statistics to any Multiple Listing Service, Board of REALTORS®, certified appraisers, or potential clients or
313         customers, but only after the closing of this transaction.
314      C. This Contract is executed in multiple copies and by their signatures hereon each party acknowledges receipt of a
315         signed copy at the time of signing. Signature pages transmitted by telecopier or electronic transmittal via scanned
316         pdf copy shall be deemed to be original signature pages with the same legal effect as manual signatures, with
317         original signature pages to follow.
318      D. __Jackson Hole Real Estate Associates LLC__ (Broker Working with the Buyer) hereby
319         discloses that it is working with the Buyer as ☐ (Seller's Agent) ☐ (Seller's Subagent) ☐ (Buyer's Agent)
320         ☒ (Intermediary) ☐ (Customer) *(select one)* and will be compensated by ☒ (Seller) ☐ (Buyer) ☐ (or
321         _____n.a._____ ) *(select all applicable)* . Buyer and Seller have
322         consented to that arrangement. Buyer has received, read and acknowledged a Real Estate Brokerage Disclosure and
323         an executed copy of the Disclosure is attached hereto. Broker, working with Buyer hereby delivers to Broker
324         working with the Seller, a copy of the executed Real Estate Brokerage Disclosure.

325 **XIX. OFFER BY BUYER.** This offer shall expire on or before __September 24, 2012__ , at ___5:00___ ☐ a.m.
326   ☒ p.m. Additionally, the undersigned BUYER reserves the right to withdraw this Offer until the original, a copy,
327   electronic transmission or facsimile of this Offer, duly accepted and signed by Seller, has been delivered in writing to
328   the Buyer or Broker working with Buyer prior to the expiration date and time above.
329   __THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND__
330   ~~CONDITIONS, CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.~~
331 Buyer _Michael Weaver_ _____ Date _8/21/12_
332   Michael Weaver
333
334 Buyer _Ellen Weaver_ _____ Date _8/21/12_
335   Ellen Weaver
336
337 **XX. DISCLOSURE BY BROKER WORKING WITH SELLER.**
338   Broker __Jackson Hole Real Estate Associates LLC__ (Brokerage Firm), hereby discloses that it
339   is working with the Seller as a  ☐ (Seller's Agent)  ☐ (Intermediary)  ☐ (Customer) or *(Select One)* and will be
340   compensated by ☐ (Seller) ☐ (or_____ __n.a._____ ) *(Select applicable)*.
341   Seller has consented to this arrangement. Seller has received, read and acknowledged a Real Estate Brokerage Disclosure
342   and an executed copy of the Disclosure is attached hereto. Broker working with Seller, hereby delivers to Broker
343   working with the Buyer, a copy of the executed Real Estate Brokerage Disclosure.
344   Listing Broker hereby acknowledges receipt of this contract to Buy and Sell Real Estate on
345   _____ , at _____ ☐ a.m. ☐ p.m.
346
347   Firm __Jackson Hole Real Estate Associates LLC__
348   Address __90 West Broadway, Jackson, WY  83001__
349   Phone _____ By _____
350
351   THIS OFFER WAS RECEIVED by me as Seller on _____ at _____ ☐ a.m. ☐ p.m.
352   _____ _____ (Seller's Initials).
353
354 **XXI. ACCEPTANCE OF SELLER.**
355   THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND
356   CONDITIONS, CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.
357
358   **NOTICE TO SELLER:** If you are making a counter-offer, do not sign this document.
359
360   THE UNDERSIGNED SELLER (whether one or more) ACCEPTS the foregoing offer on_____
361   at _____ ☐ a.m. ☐ p.m.
362
363 Seller _____ Date _____
364
365
366 Seller _____ Date _____
367
368
369 **XXII. REJECTION BY SELLER.**
370   THIS OFFER IS HEREBY REJECTED ON _____ , at _____ ☐ a.m. ☐ p.m.
371
372
373 Seller _____ Date _____
374
375
376 Seller _____ Date _____
377
378
379 If this Offer is rejected and the rejection is not signed by the Seller above, then his Offer was rejected by oral notification to
380 Broker on _____ and Seller (check one) _____ authorized rejection or_____ refused to execute
381 written rejection.

Attachment "A" Additional Provisions
(Defelice / Weaver)
(505 Saddle Butte Way)
(8/20/12)
(Page 1 of 5)

IN THE EVENT OF ANY CONFLICT BETWEEN ANY PROVISION IN THIS ATTACHMENT AND
ANY PROVISION IN THE CONTRACT TO BUY AND SELL REAL ESTATE TO WHICH IT IS
ATTACHED. THE PROVISIONS OF THIS ATTACHMENT SHALL BE CONTROLLING.

THIS IS A LEGALLY BINDING CONTRACT.  IF YOU DO NOT UNDERSTAND THE TERMS AND
CONDITIONS. CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.

1. "N/A" is understood to mean "not applicable" wherever it is used in this Contract.  This "Contract" shall
refer to the Contract to Buy and Sell Real Estate attached hereto as the same is amended and supplemented
by these Additional Provisions.  "Acceptance." "acceptance date" or "acceptance of this Contract" shall
mean the date on which the last party signs this Contract or any Counter-Offer without further modification
and delivers the same to the other party.

2. This instrument may be executed in multiple counterparts, each of which shall be an original, and all of
which together shall constitute one and the same instrument.  A telecopy or email counterpart hereof
executed by a party, shall have the same force and effect as an original counterpart hereof executed by such
party. This Contract may not be modified except by written instrument signed by both Seller and Buyer.

3. All chronological times referred to in this Contract, and all other documents relating to this Contract,
shall be deemed to be Mountain Standard Time or Mountain Daylight Time, as applicable. Whenever a
provision of this Contract establishes a day by which an event must occur. It shall be deemed to establish
5:00 PM on such day as the deadline for such event, unless stated otherwise or unless such deadline date
falls on a Saturday, Sunday or National Holiday, in which case, such deadline shall be on the next banking
day thereafter.

4. The term "banking days", "business days", and "bus. days" shall be defined as weekdays including
Monday through Friday, excluding Saturday and National Holidays. Should any performance date
or deadline contained herein fall on a weekend. state or national holiday, said date will automatically be
extended to the next business day. Where ever days are used in this contract they shall be considered
calendar days.  The time in which any act required under this Contract is to be performed shall be
computed by excluding the trigger date (i.e. the acceptance date or the delivery of the title commitment) of
execution and including the last day.  The first day shall be the day after the trigger date of execution.

5. With regard to Paragraph VI all payments or closing costs shall be made in collected funds only.

6. Buyer hereby acknowledges that Buyer has been advised (a) to obtain a survey of the subject Property by
a licensed surveyor (a professional survey will define boundaries, locate easements, identify any
encroachments and will ensure setback compliance) or to at least "mark the corners" of a lot within a
subdivision, (b) to engage an independent professional to complete a square footage calculation / area
dimension for any buildings on the subject Property if square footage / are dimensions are significant to
Buyer, (c) to engage an independent professional to inspect any buildings and other improvements
(including but not limited to appliances, equipment, wells and septic systems); to test for radon gas, lead
paint and any other hazardous substances, (d) to contact the County Sheriff's department with any concerns
about a sex offender residing in a neighborhood the Buyer has interest in, (e) to review planning / zoning
matters; to review legal and title matters; and review matters specific to the subject Property such as water
rights, mineral rights, wetlands and possible underground contamination. Buyer hereby acknowledges and
warrants that, unless otherwise stated herein, Buyer is NOT relying upon the Seller or any Real Estate
Broker or Agent as to the aforementioned "due diligence" matters.

Buyer Initial   Buyer Initial        Seller Initial   Seller Initial                                    1

7. Buyer reserves the right to finance all or any portion of subject Property, but financing shall NOT be a contingency of the offer.

8. This Contract is contingent upon an appraisal. If the appraisal does not come in at or above the agreed upon sales price within 20 days of lender acceptance of short sale, the Buyer reserves the right to cancel or renegotiate this offer, and shall so notify seller in a written notice delivered to seller no later than such date. If the parties are unable to agree upon an adjustment in the price or terms within 3 days of written notice to Seller, this Contract shall be terminable at the option of the Buyer upon written notice to Seller or listing broker.  In the event of termination as provided herein, the earnest money deposit made by Buyer shall be refunded to Buyer immediately and neither party shall have any further rights or obligations hereunder.

9. MODIFICATION OF PARAGRAPH VIII D TO PROVIDE FOR PERIOD OF TITLE REVIEW AND REBUTTAL: Per paragraph VIII D – wherever 30 days is used in this paragraph it will be replaced with five (5) days.

10. Notwithstanding any other title reviews provided herein, Buyer may review and approve, approve with conditions or disapprove the Owner's title commitment, along with all exceptions to or requirements for title insurance coverage listed thereon, at their Buyer's sole discretion within five (5) after business days of receipt of the title commitment and legible copies of all exception documents listed thereon.  If Buyer gives written notice to Seller within such five (5) day period, Seller shall have five (5) days to respond in writing specifying how and when Seller intends to meet any requirements of Buyer or cure any conditions noted as unacceptable to Buyer.  Buyer shall then have two (2) business days to accept Seller's response.  If Buyer fails to give the initial notice of Buyer's approval, approval with conditions or disapproval of the Owner's title commitment or if Buyer fails to respond to Seller's title response within the time periods specified is not given to Seller on or before such the time set forth above, it shall be conclusively presumed by the parties that this contingency has been waived and released by Buyer.  In the event of termination as provided herein, the earnest money deposit made by Buyer shall be refunded to Buyer immediately and neither party shall have any further rights or obligations hereunder.

11. THIS PARAGRAPH REPLACES THE LAST TWO SENTENCES OF PARAGRAPH IX A Seller, at Seller's option, may continue to offer the Property for sale, on and subject to the following requirements. Seller's agent must notify the Teton County MLS that this Property is under Contract. Seller must notify any other prospective buyer that this Contract has been previously signed and it is in full force and effect. Any other Contract accepted by Seller must contain a provision that the offer is subject to and junior in right to this Contract. Furthermore, the Seller must notify the Buyer in the first position that the Seller has accepted a backup offer.

12. Notwithstanding any other provision in this Contract, the Buyer at its sole discretion may choose to terminate this Contract, for any reason or no reason at all, within twenty (20) days after short sale acceptance of lender by giving the Seller, or listing broker, written notice. If notice is not given to Seller on or before such time set forth above, it shall be conclusively presumed by the parties that this contingency has been waived and released by Buyer.  In the event of termination as provided herein, the earnest money deposit made by Buyer shall be refunded to Buyer immediately and neither party shall have any further rights or obligations hereunder.

The Buyer shall have twenty (20) days after lender short sale acceptance to complete "Due Diligence" period.  During the Due Diligence period, the Buyer shall have the right, in addition to any other inspection set forth herein, to fully inspect the Property, utility services; review the Title Insurance commitment, the ability to transfer or obtain new insurance, the Property survey, well information, any Environmental Report, the other subdivision plat, all zoning land use and other regulations, easements, rights-of-way, and any and all other matters of any kind whatsoever relating to any matter that Buyer deems material to Buyer's decision to purchase the Property.  In the event, as a result of such due diligence review, Buyer should determine that the Property of Seller is unacceptable to Buyer, in Buyer's absolute discretion, whether it is claimed that such item is capable of cure or not, Buyer may cancel this Contract, in writing on or before 5:00 PM MST the twentieth day (20) day after lender short sale acceptance, at 5:00 p.m. and the earnest money deposit shall be promptly returned to him.

| Buyer Initial | Buyer Initial | Seller Initial | Seller Initial |

2

13. Per paragraph XII notice is hereby given that Buyer will obtain an inspection(s) of subject the Property. The parties agree that Buyer or Buyer's contractors, inspectors or agents may inspect the Property at reasonable times upon at least 24 hours advance notice to Seller. Furthermore, Buyer shall not be liable to Seller for any damages due to the discovery of any pre-existing condition.

14. THIS PARAGRAPH REPLACES PARAGRAPH XI Following Seller's receipt of notice of any defects, the parties shall endeavor to reach agreement within three (3) days regarding the repairs to be made and the party or parties responsible for the payment of the cost of such repairs. If the parties are unable to agree upon the payment of costs for all noticed repairs or if Buyer, at their sole discretion, chooses to void this Contract within the time set forth above, this Contract may be terminated at the option of the Buyer upon written notice to Seller or the Listing Broker.

If notice is not given to Seller or the Listing Broker on or before such time set forth above, it shall be conclusively presumed by the parties that the contingency has been waived and released by Buyer. In the event of termination as provided herein, the earnest money deposit made by Buyer shall be refunded to Buyer immediately and neither party shall have any further rights or obligations hereunder.

15. As used in Paragraph XI (A) regarding inspection of the Property, the term "environmental inspection" shall mean inspections to determine whether toxic or hazardous substances are present on the Property, or whether other physical conditions exist on the Property which would prevent the Property from being used for residential purposes under applicable town and/or county zoning or building regulations, or whether other physical conditions exist on the Property which will require remediation in order to comply with town, county, state, or federal laws, rules or regulations.

16. Seller must convey all mineral rights owned by Seller, which are appurtenant to the Property, if any, without warranty regarding such mineral rights or any aspect thereof. Buyers shall have the right to obtain an ownership report or other information pertaining to the mineral ownership of the Property and to approve the same, as satisfactory to Buyer as Buyer's expense. Buyer shall obtain such report or other information within ten (10) days after the Seller has provided a title insurance commitment, and shall approve or disapprove at their sole discretion, the condition of mineral ownership regarding the Property within such time. The Buyer shall have the right to terminate this Contract upon written notice to Seller given in accordance with the provisions hereof prior to 5:00 PM on the date set forth above. If Buyer fails to obtain such information within such time, or fails to make an objection to mineral ownership within such time by conveying such objection to Seller or Seller's listing agent in writing, this condition shall be deemed to have been satisfied. In the event of termination as provided herein, the earnest money deposit made by Buyer shall be refunded to Buyer immediately and neither party shall have any further rights or obligations hereunder.

17. Seller must convey all water rights owned by Seller, which are appurtenant to the Property, if any, without warranty regarding such water rights or any aspect thereof. Buyer shall have the right to make inquiry with the Wyoming State Engineer's Office as to the existence and validity of any water rights within ten (10) days after Seller's acceptance of Buyer's offer and shall approve or disapprove at their sole discretion, the condition of water rights ownership regarding the Property within such time. The Buyer shall have the right to terminate this Contract upon written notice to Seller given in accordance with the provisions hereof prior to 5:00 PM on the date set forth above. If Buyer fails to obtain such information within such time, or fails to make an objection to water rights ownership within such time by conveying such objection to Seller or Seller's listing agent in writing, this condition shall be deemed to have been satisfied. In the event of termination as provided herein, the earnest money deposit made by Buyer shall be refunded to Buyer immediately and neither party shall have any further rights or obligations hereunder.

18. This Contract is contingent upon the Buyer approving the Covenants, Conditions, and Restrictions and/or Restrictive Covenants, the recorded plat map plus two (2) years of HOA minutes and financial statements. Seller will provide these to the Buyer within five (5) days after acceptance of this offer. Buyer shall have ten (10) days after receipt of the above to approve or disapprove at Buyer's sole discretion. If notice of disapproval is not given to Seller on or before such date and time, it shall be conclusively presumed by the parties that the contingency has been waived and released by Buyer. In the event of

Buyer Initial   Buyer Initial        Seller Initial   Seller Initial

3

termination as provided herein, the earnest money deposit made by Buyer shall be refunded to Buyer immediately and neither party shall have any further rights or obligations hereunder.

19. Within ten (10 ) days after lender short sale acceptance of this Contract, the Property shall be surveyed by a licensed surveyor at the expense of the Seller and all corners including building envelope shall be flagged The Buyer shall have ten (10) days after notification of survey completion to personally walk (or appoint a representative to walk) the Property, to approve or disapprove at Buyer's sole discretion. If the contingency is not satisfied by the dates set forth above, the Buyer shall have the right to terminate this Contract upon written notice to Seller given in accordance with the provisions hereof prior to 5:00 PM on the date set forth above. If notice is not given to Seller on or before such date and time, it shall be conclusively presumed by the parties that the contingency has been waived and released by Buyer. In the event Buyer disapproves and therefore terminates the Contract as provided herein, the earnest money deposit made by Buyer shall be refunded to Buyer immediately and neither party shall have any further rights or obligations hereunder.

20. THIS PARAGRAPH REPLACES PARAGRAPH XV (A) Time is of the essence of this Contract, and any party who fails to tender any payment, or perform any obligation hereof in the time periods herein provided, shall be in default under this Contract. In the event that Buyer defaults and fails to complete the purchase of the Property without default of the Seller, Seller's sole remedy shall be to receive 100% of Buyer's earnest money deposit as stipulated and liquidated damages. Seller shall not have the right to specifically enforce the terms and conditions of this Contract. In the event of default by the Seller, the Buyer shall have the right, at Buyer's option, to either terminate this Contract and recover Buyer's earnest money deposit, or to specifically enforce the terms and provisions of this Contract, or seek other damages available to Buyer, at law or equity.

21. In the event that the Seller or Buyer wishes to enter into a tax deferred exchange each of the parties agrees to cooperate with the other party in connection with such exchange, including the execution of such documents as may be reasonably necessary to effectuate the same. Provided that: (a) the other party shall not be obligated to delay the closing, (b) all additional costs in connection with the exchange should be borne by the party requesting the exchange, and (c) the other party shall not be obligated to execute any note, Contract, deed, or other document providing for any personal liability which would survive the exchange, nor shall the other party be obligated to take title to any Property other than the Property described in this Contract. The other party shall be indemnified and held harmless against any liability which arises or is claimed to have arisen on account of the acquisition of the exchange Property.

22. Teton County, Wyoming, has an Affordable Housing fee for any building permit submitted after August 5, 2008. If the subject Property has not already met this requirement, any construction may be subject to a fee to be paid to the Teton County Housing Authority. Jackson Hole Real Estate Associates LLC recommends you contact the Teton County Planning Department at 307-733-3959 for further explanation or to answer any questions.

23.Notice: All notices required or contemplated herein shall be in writing and shall be delivered to Seller's broker (in the case of delivery to Seller) or to Buyer's broker (in the case of delivery to Buyer), in the following manner:  (i) by personal delivery, (ii) by United States Mail (registered or certified, postage prepaid, return receipt requested), (iii) via over-night delivery by nationally recognized courier, (iv) by facsimile, or (v) by email. In each case, notice shall be addressed to Seller's broker or Buyer's broker, as applicable, at the address, facsimile number, or email address for such broker as listed in Multiple List (Flex) as of the date of attempted delivery. Any notice given in accordance herewith shall be deemed to have been given when delivered to the addressee in person or when transmitted by facsimile or email with the sender having received a confirmation of delivery, or one (1) business day after such notice has been delivered to a national recognized courier, or three (3) business days after such notice has been deposited in the United States Mail, as the case may be. Each party hereto specifically consents to delivery of notice as described herein to their broker as their agent for all purposes under this Contract.

24. To the extent necessary to give legal effect to any provision in this Contract, the terms and conditions of this Contract shall survive the Closing and the delivery of the deed hereunder.

_____  _____     _____  _____     4
Buyer Initial  Buyer Initial     Seller Initial  Seller Initial

25. The term "acceptance" and "accept" in this offer shall mean when receipt of written notice to Buyer, has been received by the Buyer, of the Lender's Short Sale Acceptance, provided that such Short Sale Acceptance does not require any change to any of the terms of this Contract. In the event the Lender's Short Sale Acceptance requires any variation to the terms of this Contract, "acceptance" and "accept" shall mean the date upon which Buyer and Seller mutually agree in writing to the terms of such amended Contract consistent with the Lender's Short Sale Acceptance. Therefore, none of the due diligence periods or contingencies provided herein shall commence until notice of receipt of the Short Sale Acceptance or amended Contract.

26. Within (2) business days after Seller acceptance, Seller shall provide Buyer a copy of the HUD (closing statement) and/or any revised versions of the HUD based on the agreed up on purchase price, prior to submitting short sale package to the bank. Buyer shall have two (2) days after receipt to review and approve the HUD (closing statement).

If the Contingency is not satisfied by (date here), the Buyer shall have the right to terminate this Contract upon written notice to Seller prior to 5:00 PM on the date set forth above. If Seller, or listing agent, does not receive written notice within the agreed upon time, this Contract shall be voidable at the option of the Seller. In the event of termination as provided herein, the Buyer's earnest money deposit shall be refunded to Buyer immediately and neither party shall have any further rights or obligations hereunder.

27. Offer is subject to short sale acceptance. Short sale acceptance shall be on or before September 10, 2012 at 5:00 .pm. (See Short Sale Addendum attached hereto and made apart hereof).

Buyer Initial     Buyer Initial        Seller Initial     Seller Initial

5

**Jackson Hole**
**Real Estate Associates, LLC**
455 W. Broadway | PO Box 4897
Jackson WY 83001
Phone 307.733.8000

### CONSENT AMENDMENT AND
### IN-COMPANY TRANSACTION DISCLOSURE
**This Amendment describes significant changes in the obligations of your Broker.**

1. 1. AMENDMENT TO AGENCY CONTRACT. This In-Company Transaction Amendment is part of an
2.    ☒ Exclusive Right-to-Buy Contract dated   **August 20, 2012**   , or a
3.    ☐ Exclusive Right to Sell Listing Contract dated _____, between the Broker named below
4.    and its salespersons ("Broker") and the undersigned Buyer or Seller.
5.    The parties hereby acknowledge and agree that the consideration described in this Amendment will control in the
6.    event of any conflict with the contract to which it is attached. This amendment serves as good and valuable
7.    consideration for this consent amendment and hereby acknowledge the receipt and sufficiency of the same.
8.
9. 2. DUTIES OWED BY AN AGENT BUT NOT OWED BY AN INTERMEDIARY. WHEN ACTING AS THE
10.   AGENT FOR ONE PARTY (EITHER BUYER OR SELLER), BROKER HAS FIDUCIARY DUTIES OF
11.   UTMOST GOOD FAITH, LOYALTY, AND FIDELITY TO THAT ONE PARTY. A BROKER ENGAGED AS AN
12.   INTERMEDIARY DOES NOT REPRESENT THE BUYER OR THE SELLER AND WILL NOT OWE EITHER
13.   PARTY THOSE FIDUCIARY DUTIES. HOWEVER, THE INTERMEDIARY MUST EXERCISE REASONABLE
14.   SKILL AND CARE AS AN INTERMEDIARY AND MUST COMPLY WITH WYOMING LAW. AS DESCRIBED
15.   IN THE "REAL ESTATE BROKERAGE DISCLOSURE" FORM, AN INTERMEDIARY IS NOT AN AGENT
16.   OR ADVOCATE FOR EITHER PARTY. SELLER AND BUYER SHALL NOT BE LIABLE FOR ACTS OF AN
17.   INTERMEDIARY SO LONG AS THE INTERMEDIARY COMPLIES WITH THE REQUIREMENTS OF
18.   WYOMING'S BROKERAGE RELATIONSHIP ACT. WYO. STAT. § 33-28-307(a)(ii).
19.
20.   (a) If this Amendment is signed by the Seller, Broker will act only as the exclusive agent for the Seller when the property
21.       is shown to a prospective buyer who has a working relationship with another licensed real estate company or is a
22.       customer of Broker, but will act only as an Intermediary in an In-Company Transaction.
23.
24.   (b) If this Amendment is signed by the Buyer, Broker will act only as the exclusive agent for Buyer when showing
25.       properties that are not listed with Broker or properties from Seller that is only working with Broker as a customer, but
26.       will act only as an Intermediary in an In-Company Transaction. Wyo. Stat. § 33-28-306(a)(iv).
27.
28. 3. MATTERS THAT CAN BE DISCLOSED BY AN INTERMEDIARY. Except as set forth in Paragraph 4 below, the
29.   Broker, when acting as an Intermediary, may disclose any information to one party that the Broker gains from the other
30.   party if the information is material to the transaction or party.
31.
32. 4. MATTERS THAT CANNOT BE DISCLOSED BY AN INTERMEDIARY. Broker, when acting as an Intermediary,
33.   shall not disclose the following information without the prior consent of Seller and Buyer:
34.
35.   (a) That the Buyer is willing to pay more than the purchase price offered for the property;
36.   (b) That the Seller is willing to accept less than the asking price for the property;
37.   (c) What the motivating factors are for any party buying or selling the property;
38.   (d) That the Seller or Buyer will agree to financing terms other than those offered;
39.   (e) Any material information about you, unless disclosure is required by law or if lack of disclosure would constitute
40.       dishonest dealing or fraud.
41.
42. 5. NO DUTY FOR INTERMEDIARY TO INVESTIGATE. Broker, when acting as an Intermediary, has no duty to
43.   conduct an independent inspection of the property for the benefit of the Buyer and has no duty to independently verify the
44.   accuracy or completeness of statements made by the Seller or independent inspectors. Broker, when acting as an
45.   Intermediary, has no duty to conduct an independent investigation of the Buyer's financial condition or to verify the
46.   accuracy or completeness of any statement made by Buyer.
47.
48. By signing this form you are consenting to the Intermediary relationship in the circumstances described in Paragraph
49. 2(a) and (b) above. Pursuant to Wyo. Stat. §33-28-308(h), by consenting to the Intermediary relationship, you shall not
50. be liable for any commission greater than you would have been liable to pay under your initial agreement (Exclusive

WAR Form 450-0203, Consent Amendment and In-Company Transaction Disclosure.
2008 Wyoming Association of REALTORS©                                                          Page 1 of 2

Jackson Hole Real Estate Assoc - Broadway Shops 30 W Broadway | PO Box 4897 Jackson, WY 83001          Phone 307-413-1164          Fax 307-734-9940          Mike and Ellen
Fowler Realm Group                                     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

51  Right-to-Buy Contract or Exclusive Right to Sell Listing Contract) with the Broker. No matter which relationship is
52  established, a real estate broker is not allowed to give legal advice. If you have questions about this Consent Amendment
53  or any document in a real estate transaction, consult legal counsel and/or other counsel before signing.
54
55      We have read the Consent Amendment and hereby consent to the above terms.
56
57
58  Buyer  *Michael Weaver*                                          Date  8/21/12
59         Michael Weaver
60
61  Buyer  *Ellen Weaver*                                            Date  8/21/12
62         Ellen Weaver
63
64  Seller _____          Date _____
65
66
67  Seller _____          Date _____
68
69
70  Broker:
71  Jackson Hole Real Estate Associates LLC
72  _____
73  _____
74
75  By: _____            Date 08/20/2012
76  Signature  Chad R Budge
77

WAR Form 450-0202, Consent Amendment and In-Company Transaction Disclosure
2009© Wyoming Association of REALTORS®

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road  Fraser, Michigan 48026  www.zipLogix.com          Mike and Ellen

Jackson Hole
Real Estate Associates, LLC
420 W. Broadway | PO Box 4897
Jackson WY 83001
Phone 008-733-6060

IMPORTANT NOTICE

Jackson Hole Real Estate Associates LLC
(Name of Brokerage Company)
REAL ESTATE BROKERAGE DISCLOSURE

When you select a Real Estate Brokerage Firm, Broker or salesperson (all referred to as "Broker") to assist you in a real estate transaction, the Broker may do so in one of several capacities. In accordance with Wyoming's Brokerage Relationships Act, this notice discloses the types of working relationships that are available to you.

**Seller's Agent** (Requires written agreement with Seller)
If a Seller signs a written listing agreement with a Broker and engages the Broker as a Seller's Agent, the broker represents the Seller. On properties listed with other brokerage companies, the Broker may work as an agent for the Seller if the Seller agrees to have the Broker work as a subagent. As an agent or subagent for the Seller, the Broker represents the Seller and owes the Seller a duty of utmost good faith, loyalty, and fidelity in addition to the obligations enumerated below for Intermediaries. Wyo. Stat. §33-28-303(a). The Seller may be vicariously liable for the acts of the Seller's Agent or Seller's Subagent that are approved, directed or ratified by the Seller.

**Customer.** (No written agreement with Buyer or Seller)
A customer is a party to a real estate transaction who has established no intermediary or agency relationship with any Broker in that transaction. A Broker may work either as an agent for the Seller treating the Buyer as a customer or as an agent for the Buyer treating the Seller as a customer. Also when a Buyer or Seller is represented by another Broker, a Broker may work with the other Buyer or Seller as a customer, having no written agreement, agency or intermediary relationship with either party. A Broker working with a customer shall owe no duty of confidentiality to a customer. Any information shared with Broker may be shared with the other party to the transaction at customer's risk. The customer should not tell the broker any information which the customer does not want shared with the other party to the transaction. The Broker must treat the customer honestly and with fairness disclosing all material matters actually known by the Broker. The Broker owes the Customer the obligations enumerated below for Intermediaries which are marked with an asterisks. Wyo. Stat. 33-28-310(a).

**Buyer's Agent.** (Requires written agreement with Buyer)
If a Buyer signs a written Buyer Agency Agreement with a Broker, the Broker will act as an agent for the Buyer. If so, the Broker represents the Buyer and owes the Buyer a duty of utmost good faith, loyalty and fidelity in addition to the obligations enumerated below for Intermediaries. The Buyer may be vicariously liable for the acts of the Buyer's Agent that are approved, directed or ratified by the Buyer. As a Buyer's Agent, Wyoming law requires the Broker to disclose to potential Sellers all adverse material facts, which may include material facts regarding the Buyer's financial ability to perform the terms of the transaction. Wyo. Stat. § 33-28-304(c). As a Buyer's Agent, Broker has duties to disclose to the Buyer certain information; therefore, the Seller should not tell Broker any information which the Seller does not want shared with the Buyer.

**Intermediary.** (Requires written agreement with Seller and/or Buyer)
The Intermediary relationship is a non-agency relationship which may be established between a Broker and a Seller and/or a Broker and a Buyer. A Seller may choose to engage a Broker as an Intermediary when listing a property. A Buyer may also choose to engage a Broker as an Intermediary. An Intermediary shall not act as an agent or advocate for any party and shall be limited to providing those services set forth below. Wyo. Stat.§ 33-28-305.

As an Intermediary (Non-Agent), Broker will not represent you or act as your agent. The parties to a transaction are not legally responsible for the actions of an Intermediary and an Intermediary does not owe the parties the duties of an agent, including the fiduciary duties of loyalty and fidelity. Broker will have the following obligations to you:
- perform the terms of any written agreement made by the Intermediary with any party or parties to the transaction; *
- exercise reasonable skill and care; *
- advise the parties to obtain expert advice as to material matters about which the Intermediary knows but the specifics of which are beyond the expertise of the Intermediary; *
- present all offers and counteroffers in a timely manner; *
- account promptly for all money and property Broker received; *
- keep you fully informed regarding the transaction; *
- obtain the written consent of the parties before assisting the Buyer and Seller in the same real estate transaction as an Intermediary to both parties to the transaction;
- assist in complying with the terms and conditions of any contract and with the closing of the transaction; *
- disclose to the parties any interests the Intermediary may have which are adverse to the interest of either party; *

WAR Form 410-0709. Real Estate Brokerage Disclosure.
2009© Wyoming Association of REALTORS®