- disclose to prospective Buyers, known adverse material facts about the property;
- disclose to prospective Sellers, any known adverse material facts, including adverse material facts pertaining to the Buyer's financial ability to perform the terms of the transaction; *
- disclose to the parties that an Intermediary owes no fiduciary duty either to Buyer or Seller, is not allowed to negotiate on behalf of the Buyer or Seller, and may be prohibited from disclosing information about the other party, which if known, could materially affect negotiations in the real estate transaction.
- disclose Buyer's intent to occupy property as primary residency.

As Intermediary, Broker will disclose all information to each party, but will not disclose the following information without your informed consent:

- that you may be willing to agree to a price different than the one offered;
- the motivating factors for buying or selling the property;
- that you will agree to financing terms other than those offered; or
- any material information about you, unless disclosure is required by law or if lack of disclosure would constitute dishonest dealing or fraud.

### Change From Agent to Intermediary — In-House Transaction

If a Buyer who has signed a Buyer Agency Agreement with Broker wants to look at or submit an offer on property Broker has listed as an agent for the Seller, the Seller and the Buyer may consent in writing to allow Broker to change to an Intermediary (non-agency) relationship with both the Buyer and the Seller. Wyo. Stat. § 33-28-307.

An established relationship cannot be modified without the written consent of the Buyer or the Seller. The Buyer or Seller may, but are not required to, negotiate different commission fees as a condition to consenting to a change in relationship.

### Designated Agent. (requires written designation by the brokerage firm and acknowledgement by the Buyer or Seller)

A designated agent means a licensee who is designated by a responsible broker to serve as an agent or intermediary for a Seller or Buyer in a real estate transaction. Wyo. Stat. § 33-28-301 (a)(x).

In order to facilitate a real estate transaction a Brokerage Firm may designate a licensee as your agent or intermediary. The Designated Agent will have the same duties to the Buyer and Seller as a Buyer's or Seller's Agent or Intermediary. The Broker or an appointed "transaction manager" will supervise the transaction and will not disclose to either party confidential information about the Buyer or Seller. The designation of agency may occur at the time the Buyer or Seller enters into an agency agreement with the Brokerage Firm or the designation of agency may occur later if an "in house" real estate transaction occurs. At that time, the Broker or "transaction manager" will immediately disclose to the Buyer and Seller that designated agency will occur.

### Duties Owed by An Agent But Not Owed By An Intermediary.

WHEN ACTING AS THE AGENT FOR ONE PARTY (EITHER BUYER OR SELLER), BROKER HAS FIDUCIARY DUTIES OF UTMOST GOOD FAITH, LOYALTY, AND FIDELITY TO THAT ONE PARTY. A BROKER ENGAGED AS AN INTERMEDIARY DOES NOT REPRESENT THE BUYER OR THE SELLER AND WILL NOT OWE EITHER PARTY THOSE FIDUCIARY DUTIES. HOWEVER, THE INTERMEDIARY MUST EXERCISE REASONABLE SKILL AND CARE AND MUST COMPLY WITH WYOMING LAW. AN INTERMEDIARY IS NOT AN AGENT OR ADVOCATE FOR EITHER PARTY. SELLER AND BUYER SHALL NOT BE LIABLE FOR ACTS OF AN INTERMEDIARY, SO LONG AS THE INTERMEDIARY COMPLIES WITH THE REQUIREMENTS OF WYOMING'S BROKERAGE RELATIONSHIPS ACT. WYO. STAT. § 33-28-306(a)(iii).

THIS WRITTEN DISCLOSURE AND ACKNOWLEDGMENT, BY ITSELF, SHALL NOT CONSTITUTE A CONTRACT OR AGREEMENT WITH THE BROKER OR HIS/HER FIRM. UNTIL THE BUYER OR SELLER EXECUTES THIS DISCLOSURE AND ACKNOWLEDGMENT, NO REPRESENTATION AGREEMENT SHALL BE EXECUTED OR VALID. WYO. STAT. § 33-28-306(b).

NO MATTER WHICH RELATIONSHIP IS ESTABLISHED, A REAL ESTATE BROKER IS NOT ALLOWED TO GIVE LEGAL ADVICE. IF YOU HAVE QUESTIONS ABOUT THIS NOTICE OR ANY DOCUMENT IN A REAL ESTATE TRANSACTION, CONSULT LEGAL COUNSEL AND OTHER COUNSEL BEFORE SIGNING.

The amount or rate of a real estate commission for any brokerage relationship is not fixed by law. It is set by each Broker individually and may be negotiable between the Buyer or Seller and the Broker.

On _____**August 20, 2012**_____ (date), I provided ☐ (Seller)  ☒ (Buyer)  with a copy of this Real Estate Brokerage Disclosure and have kept a copy for our records.

Brokerage Company  **Jackson Hole Real Estate Associates LLC**

By _____
   **Chad R Budge**

I/We have been given a copy and have read this Real Estate Brokerage Disclosure on (date) _____ 8/21/12

(time) _____ 7 PM ____ and hereby acknowledge receipt and understanding of this Disclosure.

Buyer's Signature  _____
   **Michael Weaver**

Buyer's Signature  _____
   **Ellen Weaver**

WAR Form 410-0709, Real Estate Brokerage Disclosure.
2009© Wyoming Association of REALTORS®

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Page 3 of 3
Mike and Ellen

**Jackson Hole**
**Real Estate Associates, LLC**
45311 Broadway | PO Box 4897
Jackson WY 83001
Phone 303-733-0300

### SHORT SALE ADDENDUM TO CONTRACT TO BUY AND SELL REAL ESTATE

## THIS FORM HAS IMPORTANT LEGAL AND TAX CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL COUNSEL AND/OR TAX PROFESSIONALS BEFORE SIGNING.

In reference to that Contract to Buy and Sell Real Estate ("Contract") dated _____**August 20, 2012**_____ between

**Michael Weaver, Ellen Weaver** _____

as (Buyer), and

**Defelice** _____

as Seller(s) pertaining to the property ("Property") described as

**505 West Saddle Butte Way , Jackson, WY  83001**

**Lot 2 of Saddle Butte Ranch Subdivision, Teton Co.WY plat 920**

This Addendum shall control in the event of any conflict with the Contract. Except as modified, all other terms and provisions of the Contract shall remain the same.

The undersigned Buyer and Seller hereby agree to the following:

Buyer and Seller acknowledge that there is more debt owing against the Property than the purchase price. Therefore, the Contract to Buy and Sell Real Estate is contingent upon an agreement between the Seller and Creditor(s), acceptable to both, to sell the Property for less than the loan amount(s) ("SHORT SALE"). Before a Short Sale can occur, Buyer, Seller and Creditor(s) must consent to the terms of the sale. Buyer and Seller acknowledge that it may take weeks or months to obtain Creditor(s) approval of a short sale.

Short Sale Acceptance is when Seller receives one or more written statements, signed by each Creditor, that specify the terms and conditions of the Short Sale and the Creditor(s) agreement of such Short Sale. Seller shall submit to creditor(s) a copy of the Contract to Buy and Sell Real Estate, including this and other Addenda, and any other documentation required by the creditor(s) for Short Sale Acceptance within five (5) days after the Contract acceptance. Seller agrees to diligently work to obtain Short Sale Acceptance and will promptly provide the Creditor(s) with all additional documentation required, including an appraisal, at Seller's expense, if required.

Seller may terminate the Contract: (a) if Creditor(s) does not approve the Contract, or (b) if the terms and conditions from Creditor to obtain a release of lien are not acceptable to Seller, in Seller's sole discretion, and written notice is delivered to Buyer on or before three (3) calendar days after the Short Sale Acceptance Deadline set forth below. Buyer may terminate this Contract by written notice to Seller at any time before receipt of Short Sale Acceptance Notice from Seller. If terminated by Buyer or Seller pursuant to this clause, the earnest money deposit receipted in the Contract shall be returned to Buyer subject to the requirements of Section II of the Contract to Buy and Sell Real Estate then the Contract and all associated Addendums shall become null and void.

Buyer acknowledges that the rejection of a Short Sale by creditors or Seller may lead to termination of the Contract. Buyer also acknowledges that this Short Sale may result in delays in the Closing.

Buyer and Seller acknowledge and agree that any Short Sale Acceptance by Creditor is made on the condition that none of the terms of the sale shall differ in any material respect from the terms submitted to the Creditor on which the Short Sale Acceptance was based. Any material change will require that the Short Sale Proposal be re-submitted to the Creditor for approval, which could result in delays for approval or even denial of the Short Sale.

Notwithstanding anything to the contrary in this Addendum, the Contract is conditional upon the Seller receiving from each Creditor a Short Sale Acceptance that is acceptable to Seller.

Buyer and Seller acknowledge:

There are no promises or representations regarding: (a) whether Creditor will agree to a Short Sale, (b) the terms of any Short Sale Acceptance, or (c) when the Creditor will advise of its decision to agree to a Short Sale or provide the written terms and conditions of the Short Sale Acceptance.

Until Closing of the Short Sale, Short Sale Acceptance by the Creditor will not prevent, hinder or delay the Creditor from initiating or proceeding with any enforcement action, including but not limited to a foreclosure. In the event Seller loses ownership of the Property through foreclosure and redemption, the Contract to Buy and Sell Real Estate shall terminate.

A significant period of time may be required to determine if a Short Sale Acceptance will be granted. Therefore, Buyer should inform Buyer's lender of this fact for structuring Buyer's loan, including duration of "loan lock" and other loan terms. Additionally, Closing is normally required to be held shortly following the Short Sale Acceptance.

After a Short Sale Acceptance is given, Creditor will normally not agree to any additional changes to the terms of the Contract that differ from the Short Sale Acceptance, to have repairs performed or to reduce the amount it is willing to accept due to the condition of the Property or results of an inspection. Buyer may want to conduct an inspection of the Property before Seller submits its request for a Short Sale to Creditor. The Purchase Price should reflect the condition of the Property and results of such inspection.

WAR Form 900J-0209, Short Sale Addendum to Buy and Sell Real Estate.
2009© Wyoming Association of REALTORS®

Jackson Hole Real Estate Assoc - Broadway Shops 80 W. Broadway | PO Box 4897 Jackson, WY 83001
Phone: 307-413-1364     Fax: 307-734-9960     Budge Realty Group
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Page 1 of 2

Mike and Ellen

Buyer and Seller must receive written notice of the Short Sale Acceptance on or before _____ **September 10, 2012** _____ or the Contract shall terminate

In the event that the short sale Agreement between Seller and Seller's creditors is cancelled, void, terminated or breached, Seller shall promptly notify Buyer of same and the Contract shall be deemed void due to the unfulfilled short sale contingency and Buyer shall be entitled to an immediate return of any Earnest Money subject to Paragraph 11 of the Contract to Buy and Sell Real Estate.

OTHER TERMS AND CONDITIONS

A. This Addendum, upon its execution by both parties, is herewith made an integral part of the aforementioned Contract.

B. This Addendum is executed in multiple copies and by their signature hereon the parties acknowledges receipt of a signed copy at the time of signing.

C. The parties agree that the consideration set forth in the Contract referenced above and the mutual promises contained herein constitute good and sufficient consideration for the provisions of this Addendum and the transaction between parties.

D. All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral agreements or representations between Buyer, Seller of their agents to modify the terms and conditions of this Contract.

THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL COUNSEL AND/OR A TAX PROFESSIONAL BEFORE SIGNING.

SELLING BROKER

By: _____ Date 8/21/12
Signature Chad R Budge JHREA

Buyer _Michael Weaver_____ Date 8/21/12
Michael Weaver

Buyer _____ Date 8/21/12
Ellen Weaver

LISTING BROKER

By: _____ Date _____
Signature

Seller _____ Date _____
Defelice

Seller _____ Date _____

WAR Form 900J-0209, Short Sale Addendum to Buy and Sell Real Estate.
2009© Wyoming Association of REALTORS®

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com



CONTRACT TO BUY AND SELL REAL ESTATE
(FARM & RANCH)
(VACANT LAND)

Prepared: <u>September 28, 2012</u>
<u>Jackson</u>, Wyoming

1  I.  **OFFER TO PURCHASE** dated <u>September 28, 2012</u> . from
2  <u>Shannon Sue Eisenhardt, James Ellis Eisenhardt</u>
3  ("Buyer"), to
4  <u>Michael V. DeFelice</u>
5  ("Seller"). Subject to the provisions of this offer, if accepted by Seller, Buyer agrees to buy and Seller agrees to sell the
6  following described real estate situated in the town or city of <u>Jackson</u>, in the County of
7  <u>Teton</u>, Wyoming, commonly known as <u>505 W. Saddle Butte</u>
8  <u>Way, Jackson, WY 83001</u>
9  and more particularly described as:
10 <u>Lot 2 Saddle Butte Ranch Subdivision. See Add Prov for complete Legal</u>
11 with all improvements thereon, easements and other appurtenances and all fixtures of a permanent nature currently on the
12 premises except as hereinafter provided, in their present condition, ordinary wear and tear expected, and including all
13 personal property described herein (hereinafter "Property").

14 II. **EARNEST MONEY.** Buyer delivers $ <u>5,000.00</u> in the form of <u>personal check or wire</u>
15 <u>transfer</u>
16 to Broker working with the Buyer, <u>Black Diamond Real Estate</u> (Selling Brokerage
17 Firm Name),
18 *(select one):*
19 ☐ herewith, which Broker working with the Buyer acknowledges having received, or
20 ☒ no later than <u>5 day</u> hours after mutual acceptance hereof (said funds to be delivered to Listing Brokerage Firm
21 or Closing Agent by the close of the next banking day from receipt of Buyer (if funds are sent directly to Closing Agent.
22 Broker working with Buyer shall send notice to Listing Brokerage Firm concurrent with such transfer)).
23 Listing Brokerage Firm, <u>Jackson Hole Real Estate Associates LLC</u> shall deposit such funds (in
24 its trust account) or (in an appropriate trust account with <u>Wyoming Title and Escrow</u> as Closing
25 Agent). The deposit by Listing Brokerage Firm shall be completed by the close of the next banking day following its
26 receipt from Broker working with the Buyer, or from Buyer, and shall retain such funds in such account. If the earnest
27 money deposit is not received as described in this section, this contract shall be void. Listing Brokerage Firm or Closing
28 Agent shall not disburse such deposit until funds have cleared the bank(s) and, if this offer has been accepted, until
29 closing or until the parties hereto have otherwise agreed in writing regarding disbursement of such funds.

30 III. **PURCHASE TERMS.** Buyer agrees to buy the above-described property upon the following terms and conditions and
31 for a purchase price of ($ <u>530,000.00</u> )
32 <u>Five Hundred Thirty Thousand</u>
33 Dollars payable as follows:
34 $ <u>5,000.00</u> earnest money deposit; and at least
35 $ <u>344,500.00</u> by obtaining a new loan (per Section IV A); and/or
36 $ <u>///////////</u> note and mortgage to Seller (see Section XV Additional Provisions for Terms); and/or
37 $ <u>///////////</u> (other) :
38 $ <u>180,500.00</u> (approximate) balance of purchase price to be paid in collected or immediately available
39 funds acceptable to the closing firm.

40 IV. **LOAN TERMS.**
41 A. If a new loan is to be obtained, describe and add special terms, if any: Loan Type/Terms
42 <u>balloon in 5 years</u>
43
44 Said loan to be amortized for a period of <u>30</u> years at an initial interest rate not to exceed <u>5.500</u> % per
45 annum resulting in initial ☒ (monthly) ☐ (annual) *(select one)* payment of principal and interest of approximately
46 $ <u>1,956.00</u> . If Buyer agrees to accept and can qualify for terms other than the above, the
47 approval of the Seller shall not be required, provided the Seller incurs no additional expense as a result thereof.

WAR Form 320-0411, Contract to Buy and Sell Real Estate (Farm & Ranch) (Vacant Land).
2011© Wyoming Association of REALTORS®                                                   Page 1 of 7
Black Diamond Real Estate PO Box 2297 Jackson, WY 83001
Phone: 307-690-6170       Fax: 307-733-4576       Linda Walker                          James & Shannon
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

48 **V.** **LOAN APPLICATION.** If a new loan is to be applied for by Buyer, Buyer agrees to:

49     **A.** Complete and tender the loan application to lender within   **5**   banking days following Seller's acceptance
50         of this offer. If applicable, Buyer also agrees to cooperate with lender and complete any required steps in
51         conjunction with a credit report and appraisal.

52     **B.** Buyer shall provide a loan approval letter by the close of business on **10 days from accept.** (date).
53         "Approval" means that a firm commitment has been made from a Wyoming licensed mortgage lender/broker or a
54         person or agency listed in W.S. § 40-23-105 and if necessary accepted by Buyer, for an amount no less than that
55         stated in Section III above. Furthermore, the letter must state that the loan has been reviewed and approved and is
56         unconditional subject only to appraisal and acceptable title as stated in Section VIII Title, and that the Buyer's cash
57         to close has been verified by lender.

58     **C.** Complete and promptly tender to Lender any and all documents and other information required to process the
59         application;

60     **D.** Not withdraw the assumption or loan application or intentionally cause any change in circumstances which would
61         prejudice such application; Accept the assumption or loan if approved by Lender at above-stated terms and
62         conditions.

63     **E.** In the event that Buyer, after having complied with the requirements set forth in Section V, A through D above, fails
64         to qualify for such financing and provides Seller with a written letter of declination by Lender, this Contract shall be
65         voidable at the option of Buyer or Seller, by sending written notice to Seller within 5 days of Buyer's notice of
66         declination by Lender. If voided by Buyer or Seller pursuant to this clause, the earnest money deposit receipted for
67         above shall be returned to Buyer subject to the requirements of Section II above and this Contract shall terminate.

68 **VI.** **CLOSING COSTS.**

69     **A.** Buyer shall pay the following loan and closing costs in cash or certified funds at closing, or on the date specified by
70         lender:
71         1. Loan origination fee, discount points, credit report, appraisal, inspections and/or certifications;
72         2. Any other costs of securing financing;
73         3. Any prepaid tax, leases/permits;
74         4. Recording fees for warranty deed and mortgage;
75         5. Fees for the title insurance policy as described in Section VIII B below.
76         6. Other: **None**
77

78     **B.** Seller shall pay the following closing costs in cash or certified funds at closing:
79         1. Recording fee for any mortgage releases, deed preparation, statement of consideration and Owner's title
80         insurance policy as stated in Section VIII B below;
81         2. Other: **Real Estate Sales commission**
82

83     **C.** Closing fee shall be paid by ☒ (Buyer) ☒ (Seller) *(select applicable)*
84         **Split equally between Buyer and Seller** .

85     **D.** General taxes for the year of closing based on the most recent assessment shall be apportioned through date of
86         closing.

87     **E.** Irrigation assessments will be paid as follows **Not applicable** .

88 **VII.** **ITEMS INCLUDED IN PURCHASE PRICE.**

89     **A.** Price shall include all fixtures currently on premises, including but not limited to, all lighting, heating and plumbing
90         fixtures, all outdoor plants, air conditioning, ventilating fixtures and evaporative coolers, built-in appliances,
91         permanently attached floor coverings, storm windows and doors, screens, garage door openers and controls,
92         smoke/fire detection devices, curtain and drapery rods, attached TV antennas, TV satellite dish and controls (if
93         owned by Seller), attached mirrors, awnings, water softeners (if owned by Seller), propane tanks (if owned by
94         Seller), heating stove(s) and fireplace inserts, gates, auto gates/cattle guards and irrigation/domestic water systems,
95         stock tanks *(delete items not included). and*
96         **Vacant land- none of the above is included in the sale**
97         PROVIDED, HOWEVER, that the following fixtures of a permanent nature are to be EXCLUDED from the sale:
98         **Not applicable**
99         Seller agrees to remove all such excluded fixtures in a workmanlike manner without causing damage to the
100        premises, on or before the date of possession or closing, whichever is sooner. Any such damages shall be repaired at
101        Seller's expense.

102  B.  The price shall also include the following personal property items currently on the premises: (Personal property
103      shall be transferred with a sufficient Bill of Sale): **Not applicable**
104      _____
105      _____ .
106      in the condition as stated in Section X below.
107  C.  To include the following mineral rights: **None known**
108      _____
109  D.  To include the following lease, licenses, easements, agreements and permits (surface damage, grazing, water
110      discharge, oil and gas, wind etc.): **Conservation easement**
111      _____
112  E.  To include the following water rights (ground, surface, reservoir, pipeline and stockwater): **None known**
113      _____
114  F.  To include the following growing crops: **None**
115      _____
116  G.  The price shall also include any propane or other heating liquid remaining in any tank on the premises on date of
117      closing.

118 **VIII. TITLE.**
119  A.  Title shall be conveyed to the following named Buyer(s):
120      **Shannon Sue Eisenhardt and James Ellis Eisenhardt**
121      as ☐ (Sole Owners), ☒ (Husband and Wife), ☐ (Joint Tenants with Rights of Survivorship), ☐ (Tenants in
122      Common), ☐ (LLC), ☐ (Partnership), ☐ (Corporation) ☐ (Trust) *(Buyer select one.)*
123  B.  Seller agrees to furnish, at Seller's expense, a current commitment for an Owner's title insurance policy in an amount
124      equal to the purchase price, showing merchantable title in Seller. Seller agrees to deliver the title insurance
125      commitment to Buyer no later than ___**5 days after accept.**___ , and deliver the policy to Buyer without
126      unreasonable delay after closing and pay the premium thereon at the time of closing. Buyer, within ___**5**___ days
127      of receipt of the title insurance commitment and exceptions, encroachments, covenants, and/or easements identified
128      therein shall identify and provide to the Seller, in writing, notice of any title defects which Buyer is requesting be
129      addressed before closing. Buyer shall pay for any Mortgagee's title policy and any endorsements required by Lender
130      or Buyer.
131  C.  Title shall be merchantable in Seller. Seller agrees to execute and deliver a general warranty deed, or
132      /////////////////////////////////////////////////////////////////
133      deed, including the release and waiver of all homestead rights, if any, and a good and sufficient bill of sale to Buyer
134      conveying said real and personal properties. Title shall be subject to general taxes for the year of closing, local
135      improvement districts, irrigation ditch right of ways, guaranteed revenues to utility companies, building and zoning
136      regulations, city, county and state subdivision and zoning laws, easements, restrictive covenants, and reservations of
137      record and the following additional encumbrances to include unrecorded easements which shall NOT be released or
138      discharged at closing: ___**None**___
139      _____
140      _____
141  D.  Except as stated in Section VIII C above, if title is not merchantable or otherwise recordable and written notice of
142      such defects in title is given by Buyer to Seller or Listing Broker within the time herein provided for delivery of
143      deed and shall not be rendered merchantable within 30 days after such written notice, then this contract, at Buyer's
144      option, may be specifically enforced or may be declared void and of no effect, and each party hereto shall be
145      released from all obligations hereunder and the payments made hereunder shall be thereupon returned forthwith to
146      Buyer; PROVIDED, HOWEVER, that in lieu of correcting such defects, Seller may, within said 30 days, obtain a
147      commitment for Owner's title insurance policy in the amount of the purchase price reflecting title insurance
148      protection in regard to such defects, and Buyer may elect to accept the then existing title insurance in lieu of such
149      merchantable title, in which case Buyer shall be deemed to have waived such defect. Seller shall pay the full
150      premium for such Owner's title insurance policy.
151  E.  The Property being transferred in this transaction may consist of the Mineral Estate (if all or any portion is owned by
152      the Seller) and the Surface Estate. The "Mineral Estate" means all oil, gas, and other minerals in or under the
153      Property, any royalty under any existing or future lease covering any part of the Property, surface rights (including
154      rights of ingress and egress), production and drilling rights, lease payments and all related benefits. Unless
155      previously separated through a recorded reservation of the mineral rights, the Property being conveyed consists of
156      both estates. If the Mineral Estate is owned by Seller, the Seller will convey the Mineral Estate as part of this
157      transaction unless specifically reserved, in whole or in portion, as part of this Agreement. If the Seller is reserving

158        any portion of the Mineral Estate, such reservation must be included in the Warranty Deed. If the Mineral Estate has
159        been previously separated from the Surface Estate, third parties may have rights to enter and use the surface of the
160        property in the testing, exploration and production of the underlying minerals. The title insurance policy does not
161        provide information on whether the mineral estate or any portion thereof has been reserved and severed from the
162        surface estate. Buyer is advised to timely consult legal counsel with respect to such matters.

163    F.    Buyer acknowledges and agrees that Buyer has been advised to carefully review the title commitment and any other
164        rights (water, mineral, air) and all exceptions, encroachments, covenants, easements, and related matters described
165        therein or otherwise identified.

166        Other than the defects submitted to the Seller in writing pursuant to VIII B. above, or in the event no title issues are
167        raised in writing by Buyer, Buyer accepts the condition of title as satisfactory.

168 **IX.**    **CLOSING AND POSSESSION.**

169    A.    Closing shall occur on __on or bef Nov 14 2012__ , or as otherwise mutually agreed in writing between the
170        parties, at a time and place which shall be designated by Listing Broker. Seller, at Seller's option, may continue to
171        offer subject property for sale until closing. Seller understands, however, that any additional offer accepted may
172        subject Seller to remedies provided by law for breach of the original Contract.

173    B.    Possession shall be delivered to Buyer on _____closing_____, __10:00__ ☒ a.m. ☐ p.m.
174        or as otherwise mutually agreed in writing between the parties. If Seller fails to deliver possession by the date herein
175        specified, Seller shall be subject to eviction by Buyer. This remedy is in addition to any other remedies Buyer may
176        have.

177    C.    Possession shall be subject to the following leases or tenancies: __None__
178

179      1.    Copies of all leases and/or tenants' written verifications of rental terms, security/damage deposits and status are
180        attached hereto and accepted by Buyer. Seller agrees to notify Buyer of any change in tenant status immediately.

181 **X.**    **CONDITION OF PROPERTY.**

182    A.    Seller represents that upon execution of this Contract:

183      1.    There are no known violations of applicable city, county and/or state subdivision, zoning, building and/or public
184        health codes, ordinances, laws, rules and regulations and any recorded covenants in force and effect as of that
185        date except: __None known__
186

187        **NOTE:** Whether a property meets the above codes, ordinances, laws, rules and regulations is a technical
188        question which may require special expertise. If the Buyer has concerns about these issues, the Buyer should
189        contact the applicable departments of the city, county, and/or state or retain a firm with specialized expertise to
190        investigate the issue.

191      2.    The property, and all fixtures, appurtenances and improvements thereon, shall be conveyed in their present
192        condition. ordinary wear and tear excepted, unless otherwise agreed in this Contract.

193      3.    Property Disclosure. *(Initial a or b).*
194          a. The condition of the property is as stated in the Property Condition Statement(s)/ Supplement(s):

195 Initial Initial           ☐ WAR Form 900F An accurate and complete copy of which is attached hereto and incorporated herein.
196           ☐ additional supplements *(Check appropriate boxes):*
197          b. A Property Disclosure is not available.

198 Initial Initial

199      4.    Buyer may, at Buyer's option and expense, inspect the property as provided in Section XI INSPECTIONS
200        below.

201    B.    Buyer acknowledges and agrees that, upon execution of this Contract:

202      1.    Buyer is not relying upon any representations of Seller or Seller's Agents or representatives as to any condition
203        which Buyer deems to be material to Buyer's decision to purchase this property; and

204      2.    Buyer has been advised by Broker working with the Buyer of the opportunity to seek legal, financial,
205        construction, air quality (such as mold) environmental (such as radon and lead-based paint) and/or professional
206        property inspection services regarding this purchase.

207      3.    SQUARE FOOTAGE/ACREAGE VERIFICATION: Buyer is aware that any reference to square footage or
208        acreage of the real property or improvements is approximate. If square footage or acreage is material to the
209        Buyer, it must be verified during the inspection period.

210 **XI.**    **INSPECTIONS.**

211    A.    Buyer may obtain, at no expense to Seller, electrical, mechanical, structural, air quality (such as mold), environmental
212        (such as lead-based paint, radon), and/or other inspections of the property by qualified professional inspectors and/or
213        engineers, and shall pay for any damage to Seller's property caused by such inspectors and/or engineers. Buyer, or

214      designee, shall have the right to make any inspections of the physical condition of the property at reasonable times,
215      upon at least 24 hours advance notice to Seller. Unless Seller receives written notice, signed by Buyer on or before
216      __10 days after accept.__ __5:00__ ☐ a.m. ☒ p.m. (Objection Deadline) of any defect(s) the
217      property shall be deemed satisfactory to Buyer.

218    B.   If inspections disclose defects of the property before the objection deadline set out in XI A, the cost of repairs shall
219      be paid by agreement of the parties. If the parties are unable to agree on payment of additional costs, this contract
220      shall be voidable at the option of Buyer, upon written notice to Seller no later than __3 days after obj__ ,
221      __5:00__ ☐ a.m. ☒ p.m. (Resolution Deadline).

222    C.   If Buyer elects to void the contract in accordance with Section XI (B) above the earnest money deposit shall be
223      returned to Buyer pursuant to the requirements of Section II above.

224    D.   Waiver of Defects. Buyer acknowledges that he has had ample opportunity to inspect the property and has done so
225      to Buyer's satisfaction. Other than repairs or defects submitted to the Seller in writing pursuant to XI (A) or (B)
226      above, or in the event no repairs or inspections are required by Buyer, Buyer accepts the property in its entirety in
227      "as is, where is" condition without any implied or express warranty by Seller or by any Broker.

228 **XII. USDA GOVERNMENT PROGRAMS.**
229      (Check One)
230      ☒ Seller does NOT participate in USDA Government Programs
231      ☐ Seller DOES participate in USDA Government Programs
232      All beneficial interest that the Seller has in the crops will be transferred to the buyer on the day of closing. Buyer agrees to
233      maintain any existing contracts established with the Farm Service Agency, Naturally Resource Conservation Service and
234      or cooperating agency. Conservation Reserve Program contracts will be assumed and maintained by the Buyer with all
235      payments prorated to the day of closing by the Farm Service Agency. On the day of closing both Buyer and Seller will
236      contact the Farm Service Agency and Natural Resource Conservation Service to update ownership records.

237 **XIII. INSURANCE.**
238      Buyer hereby acknowledges that Buyer has been advised to investigate, research and obtain a written commitment for
239      adequate property and liability insurance prior to closing.

240 **XIV. RISK OF LOSS.**
241      Risk of loss shall remain with Seller until delivery of deed. In the event that premises shall be damaged by fire or other
242      casualty prior to time of closing, in an amount of not more than 10% of the total purchase price, Seller shall be obligated
243      to repair the same before the date herein provided for delivery of deed. In the event such damage cannot be repaired
244      within said time or if such damage shall exceed such sum, this contract shall be voidable at the option of Buyer. Should
245      Buyer elect to carry out this Contract despite such damage, Buyer shall be entitled to all of the insurance proceeds
246      resulting from such damage.

247 **XV. DEFAULT, REMEDIES AND ATTORNEY'S FEES.**
248    A.   **TIME IS OF THE ESSENCE** hereof, and any party who fails to tender any payment, or perform any other
249      condition hereof as herein provided, shall be in default of this Contract. In the event of default, the non-defaulting
250      party may elect to treat this Contract as breached and recover such damages as may be proper, or may treat this
251      Contract as being in full force and effect and require specific performance of the terms hereof. In lieu of the remedy
252      provided above to Seller if Buyer is the defaulting party, Seller may elect to terminate the Contract and recover such
253      damages as may be proper, or Seller may elect to retain all payments made hereunder as liquidated damages, such
254      amount, if elected by Seller, being agreed by the parties hereto to constitute compensation for the loss of opportunity
255      suffered by Seller due to such breach.

256    B.   In the event that any party shall become in default or breach of any of the terms of this Contract, such defaulting or
257      breaching party shall pay all reasonable attorney's fees, costs and other expenses which the non-breaching or
258      non-defaulting party may incur in enforcing this Contract with or without formal proceedings. This provision shall
259      not limit any other remedies to which the parties may otherwise be entitled.

260    C.   Seller and Buyer agree that in the event of any controversy regarding earnest money or other things of value held by
261      Broker and/or Closing Agent, unless Broker and/or Closing Agent receives written instructions from both Buyer and
262      Seller regarding disposition of the earnest money or things of value, Broker and/or Closing Agent, in its sole
263      discretion, may hold the earnest money or things of value or may interplead all parties and deposit the earnest money
264      deposit or things of value into a court of competent jurisdiction. Broker and/or Closing Agent shall be entitled to
265      recover its attorney's fees and costs from the non-prevailing party in the action in which the funds are interplead, but
266      if no such award or payment is made, Broker and/or Closing Agent shall recover its court costs and reasonable
267      attorney's fees from the interplead funds or things of value.

268 **XVI.  ADDITIONAL PROVISIONS.**
269     1.  The legal description of the property is:
270 Lot 2 of the Saddle Butte Ranch Subdivision, Teton County, Wyoming,
271 according to that plat recorded January 6, 1998 as Plat No. 920.
272
273     2.  This sale shall be contingent upon the Buyer receiving finance
274 approval within 21 days of an accepted offer.  If Buyer does not receive
275 finance approval within 21 days of an accepted offer, Buyer, at Buyer's
276 option, may void this contract and receive a full Earnest Money Deposit
277 refund or remove this contingency and proceed with the sale.  If Buyer
278 removes this contingency and proceeds with the sale, the Earnest Money
279 Deposit shall become non-refundable and paid to the Seller if Buyer fails
280 to close on the close date stated herein through no fault of the Seller.
281
282     3.  Referencing Paragraph VIII, Title, Sub-Paragraph D (regarding notice
283 and cure of any title defects) 30 days shall be changed to 10 days.
284
285     4.Should any performance date or deadline contained herein fall on a
286 weekend, state or national holiday, said date will be automatically
287 extended to the next business day. The time in which any act required
288 under this agreement is to be performed shall by computed by excluding
289 the date of execution and including the last day. The first day shall be
290 the day after the date of execution.
291
292     5.  Buyer understands that this is a short sale and is subject to Lender
293 approval.  Buyer further understands that property is being sold in "as
294 is" condition.
295
296
297
298
299
300
301 **XVII.  ADDENDA ATTACHED: (Check all that apply.)**
302     ☐ Lead-Based Paint Disclosure            ☒ Easements
303     ☐ Addendum for Additional Provisions    ☐ Covenants
304     ☒ Real Estate Brokerage Disclosure Form   ☐ 1031 Tax Deferred Exchange Notice
305     ☐ Consent Amendment & In-Company Transaction Disclosure   ☐ Evidence of Authority
306     ☐ Property Condition Disclosure         ☐ Other: _____
307     ☒ Covenants and Preliminary Title Commitment   ☐ Receipt Form – WAR Form 900-M
308 **XVIII. CONSENTS AND ACKNOWLEDGEMENTS.**
309     A. All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral
310        agreements or representations between Buyer, Seller or Brokers to modify the terms and conditions of this Contract.
311     B. Brokers are authorized to disclose information regarding this sale, and terms thereof, for comparable sold data and
312        statistics to any Multiple Listing Service, Board of REALTORS®, certified appraisers, or potential clients or
313        customers, but only after the closing of this transaction.
314     C. This Contract is executed in multiple copies and by their signatures hereon each party acknowledges receipt of a
315        signed copy at the time of signing. Signature pages transmitted by telecopier or electronic transmittal via scanned
316        pdf copy shall be deemed to be original signature pages with the same legal effect as manual signatures, with
317        original signature pages to follow.
318     D. _____Black Diamond Real Estate_____ (Broker Working with the Buyer) hereby
319        discloses that it is working with the Buyer as ☐ (Seller's Agent) ☐ (Seller's Subagent) ☒ (Buyer's Agent)
320        ☐ (Intermediary) ☐ (Customer) *(select one)* and will be compensated by ☒ (Seller) ☐ (Buyer) ☒ (for
321        _____Listing Brokerage_____ ) *(select all applicable).* Buyer and Seller have
322        consented to that arrangement. Buyer has received, read and acknowledged a Real Estate Brokerage Disclosure and
323        an executed copy of the Disclosure is attached hereto. Broker, working with Buyer hereby delivers to Broker
324        working with the Seller, a copy of the executed Real Estate Brokerage Disclosure.

325 **XIX. OFFER BY BUYER.** This offer shall expire on or before ___October 4, 2012___ , at ___5:00___ ☐ a.m.
326 ☒ p.m. Additionally, the undersigned BUYER reserves the right to withdraw this Offer until the original, a copy,
327 electronic transmission or facsimile of this Offer, duly accepted and signed by Seller, has been delivered in writing to
328 the Buyer or Broker working with Buyer prior to the expiration date and time above.
329 **THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND**
330 **CONDITIONS, CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.**
331 Buyer _~~Shannon Sue Eisenhardt~~_ (signature)                                      Date 28-09-12
332 **Shannon Sue Eisenhardt**
333
334 Buyer _~~James Ellis Eisenhardt~~_ (signature)                                      Date **28.**Sept.12
335 **James Ellis Eisenhardt**
336
337 **XX. DISCLOSURE BY BROKER WORKING WITH SELLER.**
338 Broker __Jackson Hole Real Estate Associates LLC__ (Brokerage Firm), hereby discloses that it
339 is working with the Seller as a  ☒ (Seller's Agent)  ☐ (Intermediary)  ☐ (Customer) or *(Select One)* and will be
340 compensated by ☒ (Seller) ☐ (or__//////////////////////////////////__ ) *(Select applicable)*.
341 Seller has consented to this arrangement. Seller has received, read and acknowledged a Real Estate Brokerage Disclosure
342 and an executed copy of the Disclosure is attached hereto. Broker working with Seller, hereby delivers to Broker
343 working with the Buyer, a copy of the executed Real Estate Brokerage Disclosure.
344 Listing Broker hereby acknowledges receipt of this contract to Buy and Sell Real Estate on
345 _____ , at _____ ☐ a.m. ☐ p.m.
346
347 Firm __Jackson Hole Real Estate Associates LLC__
348 Address _____
349 Phone _(307) 690-8611_____ By _Janine Bay Teske_____
350
351 THIS OFFER WAS RECEIVED by me as Seller on _____ at _____ ☐ a.m. ☐ p.m.
352 _____ _____ (Seller's Initials).
353
354 **XXI. ACCEPTANCE OF SELLER.**
355 **THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND**
356 **CONDITIONS. CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.**
357
358 **NOTICE TO SELLER: If you are making a counter-offer, do not sign this document.**
359
360 THE UNDERSIGNED SELLER (whether one or more) ACCEPTS the foregoing offer on _____
361 at _____ ☐ a.m. ☐ p.m.
362
363 Seller _____ Date _____
364 **Michael V. DeFelice**
365
366 Seller _____ Date _____
367
368
369 **XXII. REJECTION BY SELLER.**
370 THIS OFFER IS HEREBY REJECTED ON _____ , at_____ ☐ a.m. ☐ p.m.
371
372
373 Seller _____ Date _____
374
375
376 Seller _____ Date _____
377
378
379 If this Offer is rejected and the rejection is not signed by the Seller above, then his Offer was rejected by oral notification to
380 Broker on _____ and Seller (check one) _____ authorized rejection or _____ refused to execute
381 written rejection.



**SHORT SALE ADDENDUM TO CONTRACT TO BUY AND SELL REAL ESTATE**

THIS FORM HAS IMPORTANT LEGAL AND TAX CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL COUNSEL AND/OR TAX PROFESSIONALS BEFORE SIGNING.

In reference to that Contract to Buy and Sell Real Estate ("Contract") dated _____ **September 28, 2012** _____ between

**Shannon Sue Eisenhardt, James Ellis Eisenhardt**

as (Buyer), and

**Michael V. DeFelice**

as Seller(s) pertaining to the property ("Property") described as

**505 W. Saddle Butte Way, Jackson, WY 83001**

**Lot 2 Saddle Butte Ranch Subdivision. See Add Prov for complete Legal**

This Addendum shall control in the event of any conflict with the Contract. Except as modified, all other terms and provisions of the Contract shall remain the same.

The undersigned Buyer and Seller hereby agree to the following:

Buyer and Seller acknowledge that there is more debt owing against the Property than the purchase price. Therefore, the Contract to Buy and Sell Real Estate is contingent upon an agreement between the Seller and Creditor(s), acceptable to both, to sell the Property for less than the loan amount(s) ("SHORT SALE"). Before a Short Sale can occur, Buyer, Seller and Creditor(s) must consent to the terms of the sale. Buyer and Seller acknowledge that it may take weeks or months to obtain Creditor(s) approval of a short sale.

Short Sale Acceptance is when Seller receives one or more written statements, signed by each Creditor, that specify the terms and conditions of the Short Sale and the Creditor(s) agreement of such Short Sale. Seller shall submit to creditor(s) a copy of the Contract to Buy and Sell Real Estate, including this and other Addenda, and any other documentation required by the creditor(s) for Short Sale Acceptance within five *(5)* days after the Contract acceptance. Seller agrees to diligently work to obtain Short Sale Acceptance and will promptly provide the Creditor(s) with all additional documentation required, including an appraisal, at Seller's expense, if required.

Seller may terminate the Contract: (a) if Creditor(s) does not approve the Contract, or (b) if the terms and conditions from Creditor to obtain a release of lien are not acceptable to Seller, in Seller's sole discretion, and written notice is delivered to Buyer on or before three (3) calendar days after the Short Sale Acceptance Deadline set forth below. Buyer may terminate this Contract by written notice to Seller at any time before receipt of Short Sale Acceptance Notice from Seller. If terminated by Buyer or Seller pursuant to this clause, the earnest money deposit receipted in the Contract shall be returned to Buyer subject to the requirements of Section II of the Contract to Buy and Sell Real Estate then the Contract and all associated Addendums shall become null and void.

Buyer acknowledges that the rejection of a Short Sale by creditors or Seller may lead to termination of the Contract. Buyer also acknowledges that this Short Sale may result in delays in the Closing.

Buyer and Seller acknowledge and agree that any Short Sale Acceptance by Creditor is made on the condition that none of the terms of the sale shall differ in any material respect from the terms submitted to the Creditor on which the Short Sale Acceptance was based. Any material change will require that the Short Sale Proposal be re-submitted to the Creditor for approval, which could result in delays for approval or even denial of the Short Sale.

Notwithstanding anything to the contrary in this Addendum, the Contract is conditional upon the Seller receiving from each Creditor a Short Sale Acceptance that is acceptable to Seller.

Buyer and Seller acknowledge:

There are no promises or representations regarding: (a) whether Creditor will agree to a Short Sale, (b) the terms of any Short Sale Acceptance, or (c) when the Creditor will advise of its decision to agree to a Short Sale or provide the written terms and conditions of the Short Sale Acceptance.

Until Closing of the Short Sale, Short Sale Acceptance by the Creditor will not prevent, hinder or delay the Creditor from initiating or proceeding with any enforcement action, including but not limited to a foreclosure. In the event Seller loses ownership of the Property through foreclosure and redemption, the Contract to Buy and Sell Real Estate shall terminate.

A significant period of time may be required to determine if a Short Sale Acceptance will be granted. Therefore, Buyer should inform Buyer's lender of this fact for structuring Buyer's loan, including duration of "loan lock" and other loan terms. Additionally, Closing is normally required to be held shortly following the Short Sale Acceptance.

After a Short Sale Acceptance is given, Creditor will normally not agree to any additional changes to the terms of the Contract that differ from the Short Sale Acceptance, to have repairs performed or to reduce the amount it is willing to accept due to the condition of the Property or results of an inspection. Buyer may want to conduct an inspection of the Property before Seller submits its request for a Short Sale to Creditor. The Purchase Price should reflect the condition of the Property and results of such inspection.

Buyer and Seller must receive written notice of the Short Sale Acceptance on or before _____ **November 14, 2012** _____ or the Contract shall terminate

In the event that the short sale Agreement between Seller and Seller's creditors is cancelled, void, terminated or breached, Seller shall promptly notify Buyer of same and the Contract shall be deemed void due to the unfulfilled short sale contingency and Buyer shall be entitled to an immediate return of any Earnest Money subject to Paragraph II of the Contract to Buy and Sell Real Estate.

**OTHER TERMS AND CONDITIONS**

_____

_____

**3.   All third party fees that Buyer is expected to pay, if any,   shall be disclosed prior**

**to Buyer's final acceptance of the Short Sale Acceptance.** _____

_____

_____

_____

_____

_____

A.   This Addendum, upon its execution by both parties, is herewith made an integral part of the aforementioned Contract.

B.   This Addendum is executed in multiple copies and by their signature hereon the parties acknowledges receipt of a signed copy at the time of signing.

C.   The parties agree that the consideration set forth in the Contract referenced above and the mutual promises contained herein constitute good and sufficient consideration for the provisions of this Addendum and the transaction between parties.

D.   All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral agreements or representations between Buyer, Seller of their agents to modify the terms and conditions of this Contract.

THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL COUNSEL AND/OR A TAX PROFESSIONAL BEFORE SIGNING.

**SELLING BROKER**

By: _*Linda Walker*_ _____ Date 9/28/2012

Signature **Linda Walker**

Buyer _(signature)_ _____ Date 28-09-12

**Shannon Sue Eisenhardt**

Buyer _(signature)_ _____ Date 28·SEPT·12.

**James Ellis Eisenhardt**

**LISTING BROKER**

By: _____ Date _____

Signature **Janine Bay Teske**

Seller _____ Date _____

**Michael V. DeFelice**

Seller _____ Date _____



**COUNTER OFFER**

COUNTER OFFER # ____2____                    (1, 2, 3, etc.)

THIS COUNTER OFFER SUPERSEDES ALL PRIOR COUNTER OFFERS. THE CHANGES TO THE TERMS AND CONDITIONS LISTED BELOW ALONG WITH ANY ATTACHED CONTRACT TO BUY & SELL REAL ESTATE AND/OR ADDENDUMS ARE CONSIDERED A NEW OFFER AND ALL PREVIOUS OFFERS AND COUNTER OFFERS ARE NOT AVAILABLE FOR FUTURE ACCEPTANCE.

THIS IS A LEGALLY BINDING DOCUMENT. READ THE ENTIRE DOCUMENT INCLUDING ANY ATTACHMENTS. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.

To the extent the terms of this Counter Offer modifies or conflicts with any provisions of the Contract to Buy and Sell Real Estate and all prior Counter Offer (s), the terms in this Counter Offer shall control. All other terms of the attached Contract to Buy and Sell Real Estate and all prior Counter Offer (s) not modified by this Counter Offer shall remain the same.

This is a Counter Offer to the Contract to Buy and Sell Real Estate, dated ___September 28, 2012___ pertaining to:
ADDRESS:
505 W. Saddle Butte Way, Jackson, WY  83001
LEGAL DESCRIPTION:
Lot 2 Saddle Butte Ranch Subdivision. See Add Prov for complete Legal
BUYER:
Shannon Sue Eisenhardt, James Ellis Eisenhardt
SELLER:
Michael V. DeFelice

☐ This is a SELLER counter offer. The Seller reserves the right to continue to offer the Property described in the attached Contract to Buy and Sell Real Estate for sale. Seller may accept any other offer until the original, a copy or facsimile of this Counter Offer, duly accepted and signed by Buyer, has been delivered in writing to the Seller or Seller's Agent within the time frame specified herein.

☒ This is a BUYER counter offer. The undersigned BUYER reserves the right to withdraw this counter offer until the original, a copy or facsimile of this Counter Offer, duly accepted and signed by Seller, has been delivered in writing to the Buyer or Buyer's Agent within the time frame specified herein.

The parties accept all of the terms and conditions in the attached Contract to Buy and Sell Real Estate and all attached Counter Offers with the following changes:
1.  The purchase price shall be $535,000.00 (Five hundred thirty-five thousand dollars).
2.  Buyers 21 day finance approval contingency shall begin on October 17, 2012, the day after Seller's Lender gives written notice that this is an Accepted Offer.

All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral agreements or representations between Buyer, Seller and/or any Brokers which modify the terms and conditions of this Counter Offer and the attached Contract to Buy and Sell Real Estate. Buyer and Seller acknowledge the terms contained in Section II and Section III of the Contract to Buy and Sell Real Estate may change if the purchase price is changed as part of this Counter Offer. Upon its execution by both parties, this agreement is made an integral part of the aforementioned Contract to Buy and Sell Real Estate.

WAR Form 720-0810, Counter Offer
· 2010© Wyoming Association of REALTORS®

Black Diamond Real Estate PO Box 2297 Jackson, WY 83001
Phone: 307-690-6170          Fax: 307-733-4576          Linda Walker

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Page 1 of 2

James & Shanno

54 This Counteroffer shall expire on or before ___October 9, 2012___ at ___5:00___ ☐ A.M. ☒ P.M. Additionally,
55 the undersigned Buyer/Seller reserves the right to withdraw this Counteroffer until the original, a copy, electronic transmission
56 or facsimile of this Counteroffer, duly accepted and signed by Seller/Buyer, has been delivered in writing to the Buyer/Seller or
57 Broker working with Buyer/Seller prior to the expiration date and time above.
58

59 Buyer/Seller _____     _5·OCT·12_     _10:29 AM_
60 James Ellis Eisenhardt                              Date          Time
61
62 Buyer/Seller _____     _5-OCT-12_     _10:25Am_
63 Shannon Sue Eisenhardt                              Date          Time
64
65 This Counter Offer was received by me as Seller/Buyer on _____ at _____ ☐ a.m. ☐ p.m.
66
67                                                                    (Initials of Buyer/Seller)
68 Buyer or Seller Acceptance of Counter Offer
69
70 The undersigned Buyer/Seller accepts the foregoing Counter Offer on _10/9/12_ at _10_ ☒ a.m. ☐ p.m.
71
72 Buyer/Seller _____     _10/9/12_     _10_
73 Michael V. Perovich                                Date          Time
74
75 Buyer/Seller _____     _____     _____
76                                                    Date          Time
77
78 Buyer or Seller Rejects this Counter Offer
79
80 The Counter Offer is hereby rejected on _____ at _____ ☐ a.m. ☐ p.m.
81
82 Buyer/Seller _____     _____     _____
83                                                    Date          Time
84
85 Buyer/Seller _____     _____     _____
86                                                    Date          Time
87
88 If this Counteroffer is rejected and the rejection is not signed by the Buyer/Seller above, then this Counteroffer was rejected by
89 oral notification to Broker on _____ and Buyer/Seller (check one) ☐ authorized rejection or ☐ refused to
90 execute written rejection.

**COUNTER OFFER**

```
1
2    COUNTER OFFER # 1                        (1, 2, 3, etc.)
3    THIS COUNTER OFFER SUPERSEDES ALL PRIOR COUNTER OFFERS. THE CHANGES TO THE TERMS AND
4    CONDITIONS LISTED BELOW ALONG WITH ANY ATTACHED CONTRACT TO BUY & SELL REAL ESTATE
5    AND/OR ADDENDUMS ARE CONSIDERED A NEW OFFER AND ALL PREVIOUS OFFERS AND COUNTER
6    OFFERS ARE NOT AVAILABLE FOR FUTURE ACCEPTANCE.
7
8    THIS IS A LEGALLY BINDING DOCUMENT. READ THE ENTIRE DOCUMENT INCLUDING ANY
9    ATTACHMENTS. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL OR
10   OTHER COUNSEL BEFORE SIGNING.
11
12   To the extent the terms of this Counter Offer modifies or conflicts with any provisions of the Contract to Buy and Sell Real
13   Estate and all prior Counter Offer (s), the terms in this Counter Offer shall control. All other terms of the attached Contract to
14   Buy and Sell Real Estate and all prior Counter Offer (s) not modified by this Counter Offer shall remain the same.
15
16   This is a Counter Offer to the Contract to Buy and Sell Real Estate, dated    September 28, 2012    pertaining to:
17   ADDRESS:
18   505 Saddle Butte Way, Jackson,
19   LEGAL DESCRIPTION:
20   22-41-16-28-1-03-001
21   BUYER:
22   James Ellis Eisenhardt, Shannon Sue Eisenhardt
23   SELLER:
24   Michael Defelice
25
26   [X] This is a SELLER counter offer. The Seller reserves the right to continue to offer the Property described in the attached
27   Contract to Buy and Sell Real Estate for sale. Seller may accept any other offer until the original, a copy or facsimile of this
28   Counter Offer, duly accepted and signed by Buyer, has been delivered in writing to the Seller or Seller's Agent within the time
29   frame specified herein.
30
31   [ ] This is a BUYER counter offer. The undersigned BUYER reserves the right to withdraw this counter offer until the
32   original, a copy or facsimile of this Counter Offer, duly accepted and signed by Seller, has been delivered in writing to the
33   Buyer or Buyer's Agent within the time frame specified herein.
34
35   The parties accept all of the terms and conditions in the attached Contract to Buy and Sell Real Estate and all attached Counter
36   Offers with the following changes:
37   The Purchase Price shall be $540,000.
38
39   Seller shall have until   5:00 pm MST October 16, 2012 to obtain       written co
40   agreement/approval from Lender.
41
42
43
44
45
46
47   All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral agreements
48   or representations between Buyer, Seller and/or any Brokers which modify the terms and conditions of this Counter Offer and
49   the attached Contract to Buy and Sell Real Estate. Buyer and Seller acknowledge the terms contained in Section II and
50   Section III of the Contract to Buy and Sell Real Estate may change if the purchase price is changed as part of this
51   Counter Offer. Upon its execution by both parties, this agreement is made an integral part of the aforementioned Contract to
52   Buy and Sell Real Estate.
53
```

WAR Form 720-0810, Counter Offer
2010© Wyoming Association of REALTORS©

Jackson Hole Real Estate Assoc 455 (B) W. Broadway Jackson, WY 83001
Phone: (307)733-6060        Fax:              Janine Bay Teske

Page 1 of 2

Defelice Eisne

54 This Counteroffer shall expire on or before ___October 8, 2012___ at ___5:00___ ☐ A.M. ☒ P.M. Additionally,
55 the undersigned Buyer/Seller reserves the right to withdraw this Counteroffer until the original, a copy, electronic transmission
56 or facsimile of this Counteroffer, duly accepted and signed by Seller/Buyer, has been delivered in writing to the Buyer/Seller or
57 Broker working with Buyer/Seller prior to the expiration date and time above.
58
59 Buyer/Seller _____     10/4/12     10:55 am EDT
60              Michael V. DeFelice                    Date        Time
61
62 Buyer/Seller _____
63                                                     Date        Time
64
65 This Counter Offer was received by me as Seller/Buyer on _____ at _____ ☐ a.m. ☐ p.m.
66
67                                                                  (Initials of Buyer/Seller)
68 **Buyer or Seller Acceptance of Counter Offer**
69
70 The undersigned Buyer/Seller accepts the foregoing Counter Offer on _____ : __ at _____ ☐ a.m. ☐ p.m.
71
72 Buyer/Seller _____
73                                                     Date        Time
74
75 Buyer/Seller _____
76                                                     Date        Time
77
78 **Buyer or Seller Rejects this Counter Offer**
79
80 The Counter Offer is hereby rejected on _____ at _____ ☐ a.m. ☐ p.m.
81
82 Buyer/Seller _____
83                                                     Date        Time
84
85 Buyer/Seller _____
86                                                     Date        Time
87
88 If this Counteroffer is rejected and the rejection is not signed by the Buyer/Seller above, then this Counteroffer was rejected by
89 oral notification to Broker on _____ and Buyer/Seller (check one) ☐ authorized rejection or ☐ refused to
90 execute written rejection.

WAR Form 720-0810, Counter Offer
2010© Wyoming Association of REALTORS®

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Page 2 of 2

Defelice Eisne



**CONTRACT TO BUY AND SELL REAL ESTATE**
**(FARM & RANCH)**
**(VACANT LAND)**

Prepared: <u>September 28, 2012</u>
<u>Jackson</u>, Wyoming

1  **I.   OFFER TO PURCHASE** dated <u>September 28, 2012</u>. from
2  <u>Shannon Sue Eisenhardt, James Ellis Eisenhardt</u>
3  ("Buyer"), to
4  <u>Michael V. DeFelice</u>
5  ("Seller"). Subject to the provisions of this offer, if accepted by Seller, Buyer agrees to buy and Seller agrees to sell the
6  following described real estate situated in the town or city of <u>Jackson</u>, in the County of
7  <u>Teton</u>, Wyoming, commonly known as <u>505 W. Saddle Butte</u>
8  <u>Way, Jackson, WY 83001</u>
9  and more particularly described as:
10 <u>Lot 2 Saddle Butte Ranch Subdivision. See Add Prov for complete Legal</u>
11 with all improvements thereon, easements and other appurtenances and all fixtures of a permanent nature currently on the
12 premises except as hereinafter provided, in their present condition, ordinary wear and tear expected, and including all
13 personal property described herein (hereinafter "Property").

14 **II.  EARNEST MONEY.** Buyer delivers $ <u>5,000.00</u> in the form of <u>personal check or wire</u>
15 <u>transfer</u>
16 to Broker working with the Buyer, <u>Black Diamond Real Estate</u> (Selling Brokerage
17 Firm Name),
18 *(select one):*
19 ☐ herewith, which Broker working with the Buyer acknowledges having received, or
20 ☒ no later than <u>5 day</u> hours after mutual acceptance hereof (said funds to be delivered to Listing Brokerage Firm
21 or Closing Agent by the close of the next banking day from receipt of Buyer (if funds are sent directly to Closing Agent.
22 Broker working with Buyer shall send notice to Listing Brokerage Firm concurrent with such transfer)).
23 Listing Brokerage Firm, <u>Jackson Hole Real Estate Associates LLC</u> shall deposit such funds (in
24 its trust account) *or* (in an appropriate trust account with <u>Wyoming Title and Escrow</u> as Closing
25 Agent). The deposit by Listing Brokerage Firm shall be completed by the close of the next banking day following its
26 receipt from Broker working with the Buyer, or from Buyer, and shall retain such funds in such account. If the earnest
27 money deposit is not received as described in this section, this contract shall be void. Listing Brokerage Firm or Closing
28 Agent shall not disburse such deposit until funds have cleared the bank(s) and, if this offer has been accepted, until
29 closing or until the parties hereto have otherwise agreed in writing regarding disbursement of such funds.

30 **III. PURCHASE TERMS.** Buyer agrees to buy the above-described property upon the following terms and conditions and
31 for a purchase price of ($ <u>530,000.00</u> )
32 <u>Five Hundred Thirty Thousand</u>
33 Dollars payable as follows:
34 $ <u>5,000.00</u> earnest money deposit; and at least
35 $ <u>344,500.00</u> by obtaining a new loan (per Section IV A); and/or
36 $ //////////// note and mortgage to Seller (see Section XV Additional Provisions for Terms); and/or
37 $ //////////// (other) :
38 $ <u>180,500.00</u> (approximate) balance of purchase price to be paid in collected or immediately available
39 funds acceptable to the closing firm.

40 **IV.  LOAN TERMS.**
41 A.  If a new loan is to be obtained, describe and add special terms, if any: Loan Type/Terms
42 <u>balloon in 5 years</u>
43
44 Said loan to be amortized for a period of <u>30</u> years at an initial interest rate not to exceed <u>5.500</u> % per
45 annum resulting in initial ☒ (monthly) ☐ (annual) *(select one)* payment of principal and interest of approximately
46 $ <u>1,956.00</u>. If Buyer agrees to accept and can qualify for terms other than the above, the
47 approval of the Seller shall not be required, provided the Seller incurs no additional expense as a result thereof.

WAR Form 320-0411, Contract to Buy and Sell Real Estate (Farm & Ranch) (Vacant Land).
2011© Wyoming Association of REALTORS®

Black Diamond Real Estate PO Box 2297 Jackson, WY 83001
Phone: 307-690-6170          Fax: 307-733-4576          Linda Walker
                    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Page 1 of 7

James & Shannon

48 **V.    LOAN APPLICATION.** If a new loan is to be applied for by Buyer, Buyer agrees to:

49      A.    Complete and tender the loan application to lender within _____5_____ banking days following Seller's acceptance
50            of this offer. If applicable, Buyer also agrees to cooperate with lender and complete any required steps in
51            conjunction with a credit report and appraisal.

52      B.    Buyer shall provide a loan approval letter by the close of business on <u>**10 days from accept.**</u>  (date).
53            "Approval" means that a firm commitment has been made from a Wyoming licensed mortgage lender/broker or a
54            person or agency listed in W.S. § 40-23-105 and if necessary accepted by Buyer, for an amount no less than that
55            stated in Section III above. Furthermore, the letter must state that the loan has been reviewed and approved and is
56            unconditional subject only to appraisal and acceptable title as stated in Section VIII Title, and that the Buyer's cash
57            to close has been verified by lender.

58      C.    Complete and promptly tender to Lender any and all documents and other information required to process the
59            application;

60      D.    Not withdraw the assumption or loan application or intentionally cause any change in circumstances which would
61            prejudice such application; Accept the assumption or loan if approved by Lender at above-stated terms and
62            conditions.

63      E.    In the event that Buyer, after having complied with the requirements set forth in Section V, A through D above, fails
64            to qualify for such financing and provides Seller with a written letter of declination by Lender, this Contract shall be
65            voidable at the option of Buyer or Seller, by sending written notice to Seller within 5 days of Buyer's notice of
66            declination by Lender. If voided by Buyer or Seller pursuant to this clause, the earnest money deposit receipted for
67            above shall be returned to Buyer subject to the requirements of Section II above and this Contract shall terminate.

68 **VI.   CLOSING COSTS.**

69      A.    Buyer shall pay the following loan and closing costs in cash or certified funds at closing, or on the date specified by
70            lender:

71            1.   Loan origination fee, discount points, credit report, appraisal, inspections and/or certifications;
72            2.   Any other costs of securing financing;
73            3.   Any prepaid tax, leases/permits;
74            4.   Recording fees for warranty deed and mortgage;
75            5.   Fees for the title insurance policy as described in Section VIII B below.
76            6.   Other: <u>None</u>
77

78      B.    Seller shall pay the following closing costs in cash or certified funds at closing:
79            1.   Recording fee for any mortgage releases, deed preparation, statement of consideration and Owner's title
80                 insurance policy as stated in Section VIII B below;
81            2.   Other: <u>**Real Estate Sales commission**</u>
82

83      C.    Closing fee shall be paid by ☒ (Buyer) ☒ (Seller) *(select applicable)*
84           <u>**Split equally between Buyer and Seller**</u> .

85      D.    General taxes for the year of closing based on the most recent assessment shall be apportioned through date of
86            closing.

87      E.    Irrigation assessments will be paid as follows <u>**Not applicable**</u> .

88 **VII.  ITEMS INCLUDED IN PURCHASE PRICE.**

89      A.    Price shall include all fixtures currently on premises, including but not limited to, all lighting, heating and plumbing
90            fixtures, all outdoor plants, air conditioning, ventilating fixtures and evaporative coolers, built-in appliances,
91            permanently attached floor coverings, storm windows and doors, screens, garage door openers and controls,
92            smoke/fire detection devices, curtain and drapery rods, attached TV antennas, TV satellite dish and controls (if
93            owned by Seller), attached mirrors, awnings, water softeners (if owned by Seller), propane tanks (if owned by
94            Seller), heating stove(s) and fireplace inserts, gates, auto gates/cattle guards and irrigation/domestic water systems,
95            stock tanks *(delete items not included).* and
96           <u>**Vacant land- none of the above is included in the sale**</u>
97           PROVIDED, HOWEVER, that the following fixtures of a permanent nature are to be EXCLUDED from the sale:
98           <u>**Not applicable**</u>
99           Seller agrees to remove all such excluded fixtures in a workmanlike manner without causing damage to the
100          premises, on or before the date of possession or closing, whichever is sooner. Any such damages shall be repaired at
101          Seller's expense.

102    B.    The price shall also include the following personal property items currently on the premises: (Personal property
103          shall be transferred with a sufficient Bill of Sale): **Not applicable**
104
105
106          in the condition as stated in Section X below.
107    C.    To include the following mineral rights: **None known**
108
109    D.    To include the following lease, licenses, easements, agreements and permits (surface damage, grazing, water
110          discharge, oil and gas, wind etc.): **Conservation easement**
111
112    E.    To include the following water rights (ground, surface, reservoir, pipeline and stockwater): **None known**
113
114    F.    To include the following growing crops: **None**
115
116    G.    The price shall also include any propane or other heating liquid remaining in any tank on the premises on date of
117          closing.

118 **VIII. TITLE.**
119    A.    Title shall be conveyed to the following named Buyer(s):
120          **Shannon Sue Eisenhardt and James Ellis Eisenhardt**
121          as ☐ (Sole Owners), ☒ (Husband and Wife), ☐ (Joint Tenants with Rights of Survivorship), ☐ (Tenants in
122          Common), ☐ (LLC), ☐ (Partnership), ☐ (Corporation) ☐ (Trust) *(Buyer select one.)*
123    B.    Seller agrees to furnish, at Seller's expense, a current commitment for an Owner's title insurance policy in an amount
124          equal to the purchase price, showing merchantable title in Seller. Seller agrees to deliver the title insurance
125          commitment to Buyer no later than **5 days after accept.** , and deliver the policy to Buyer without
126          unreasonable delay after closing and pay the premium thereon at the time of closing. Buyer, within **5** days
127          of receipt of the title insurance commitment and exceptions, encroachments, covenants, and/or easements identified
128          therein shall identify and provide to the Seller, in writing, notice of any title defects which Buyer is requesting be
129          addressed before closing. Buyer shall pay for any Mortgagee's title policy and any endorsements required by Lender
130          or Buyer.
131    C.    Title shall be merchantable in Seller. Seller agrees to execute and deliver a general warranty deed, or
132          ///////////////////////////////////////////////////////
133          deed, including the release and waiver of all homestead rights, if any, and a good and sufficient bill of sale to Buyer
134          conveying said real and personal properties. Title shall be subject to general taxes for the year of closing, local
135          improvement districts, irrigation ditch right of ways, guaranteed revenues to utility companies, building and zoning
136          regulations, city, county and state subdivision and zoning laws, easements, restrictive covenants, and reservations of
137          record and the following additional encumbrances to include unrecorded easements which shall NOT be released or
138          discharged at closing: **None**
139
140
141    D.    Except as stated in Section VIII C above, if title is not merchantable or otherwise recordable and written notice of
142          such defects in title is given by Buyer to Seller or Listing Broker within the time herein provided for delivery of
143          deed and shall not be rendered merchantable within 30 days after such written notice, then this contract, at Buyer's
144          option, may be specifically enforced or may be declared void and of no effect, and each party hereto shall be
145          released from all obligations hereunder and the payments made hereunder shall be thereupon returned forthwith to
146          Buyer; PROVIDED, HOWEVER, that in lieu of correcting such defects, Seller may, within said 30 days, obtain a
147          commitment for Owner's title insurance policy in the amount of the purchase price reflecting title insurance
148          protection in regard to such defects, and Buyer may elect to accept the then existing title insurance in lieu of such
149          merchantable title, in which case Buyer shall be deemed to have waived such defect. Seller shall pay the full
150          premium for such Owner's title insurance policy.
151    E.    The Property being transferred in this transaction may consist of the Mineral Estate (if all or any portion is owned by
152          the Seller) and the Surface Estate. The "Mineral Estate" means all oil, gas, and other minerals in or under the
153          Property, any royalty under any existing or future lease covering any part of the Property, surface rights (including
154          rights of ingress and egress), production and drilling rights, lease payments and all related benefits. Unless
155          previously separated through a recorded reservation of the mineral rights, the Property being conveyed consists of
156          both estates. If the Mineral Estate is owned by Seller, the Seller will convey the Mineral Estate as part of this
157          transaction unless specifically reserved, in whole or in portion, as part of this Agreement. If the Seller is reserving

158        any portion of the Mineral Estate, such reservation must be included in the Warranty Deed. If the Mineral Estate has
159        been previously separated from the Surface Estate, third parties may have rights to enter and use the surface of the
160        property in the testing, exploration and production of the underlying minerals. The title insurance policy does not
161        provide information on whether the mineral estate or any portion thereof has been reserved and severed from the
162        surface estate. Buyer is advised to timely consult legal counsel with respect to such matters.

163    F.    Buyer acknowledges and agrees that Buyer has been advised to carefully review the title commitment and any other
164        rights (water, mineral, air) and all exceptions, encroachments, covenants, easements, and related matters described
165        therein or otherwise identified.
166        Other than the defects submitted to the Seller in writing pursuant to VIII B. above, or in the event no title issues are
167        raised in writing by Buyer, Buyer accepts the condition of title as satisfactory.

168 **IX.**    **CLOSING AND POSSESSION.**
169    A.    Closing shall occur on __on or bef Nov 14 2012__ , or as otherwise mutually agreed in writing between the
170        parties, at a time and place which shall be designated by Listing Broker. Seller, at Seller's option, may continue to
171        offer subject property for sale until closing. Seller understands, however, that any additional offer accepted may
172        subject Seller to remedies provided by law for breach of the original Contract.
173    B.    Possession shall be delivered to Buyer on __closing__ , __10:00__ ☒ a.m. ☐ p.m.
174        or as otherwise mutually agreed in writing between the parties. If Seller fails to deliver possession by the date herein
175        specified, Seller shall be subject to eviction by Buyer. This remedy is in addition to any other remedies Buyer may
176        have.
177    C.    Possession shall be subject to the following leases or tenancies: __None__
178
179      1.    Copies of all leases and/or tenants' written verifications of rental terms, security/damage deposits and status are
180        attached hereto and accepted by Buyer. Seller agrees to notify Buyer of any change in tenant status immediately.

181 **X.**    **CONDITION OF PROPERTY.**
182    A.    Seller represents that upon execution of this Contract:
183      1.    There are no known violations of applicable city, county and/or state subdivision, zoning, building and/or public
184        health codes, ordinances, laws, rules and regulations and any recorded covenants in force and effect as of that
185        date except: __None known__
186
187        **NOTE:** Whether a property meets the above codes, ordinances, laws, rules and regulations is a technical
188        question which may require special expertise. If the Buyer has concerns about these issues, the Buyer should
189        contact the applicable departments of the city, county, and/or state or retain a firm with specialized expertise to
190        investigate the issue.
191      2.    The property, and all fixtures, appurtenances and improvements thereon, shall be conveyed in their present
192        condition. ordinary wear and tear excepted, unless otherwise agreed in this Contract.
193      3.    Property Disclosure. *(Initial a or b).*
194        a. The condition of the property is as stated in the Property Condition Statement(s)/ Supplement(s):
195 *Initial Initial*        ☐ WAR Form 900F An accurate and complete copy of which is attached hereto and incorporated herein.
196        ☐ additional supplements *(Check appropriate boxes):*
197        b. A Property Disclosure is not available.
198 *Initial Initial*
199      4.    Buyer may, at Buyer's option and expense, inspect the property as provided in Section XI INSPECTIONS
200        below.
201    B.    Buyer acknowledges and agrees that, upon execution of this Contract:
202      1.    Buyer is not relying upon any representations of Seller or Seller's Agents or representatives as to any condition
203        which Buyer deems to be material to Buyer's decision to purchase this property; and
204      2.    Buyer has been advised by Broker working with the Buyer of the opportunity to seek legal, financial,
205        construction, air quality (such as mold) environmental (such as radon and lead-based paint) and/or professional
206        property inspection services regarding this purchase.
207      3.    SQUARE FOOTAGE/ACREAGE VERIFICATION: Buyer is aware that any reference to square footage or
208        acreage of the real property or improvements is approximate. If square footage or acreage is material to the
209        Buyer, it must be verified during the inspection period.

210 **XI.**    **INSPECTIONS.**
211    A.    Buyer may obtain, at no expense to Seller, electrical, mechanical, structural, air quality (such as mold), environmental
212        (such as lead-based paint, radon), and/or other inspections of the property by qualified professional inspectors and/or
213        engineers, and shall pay for any damage to Seller's property caused by such inspectors and/or engineers. Buyer, or

214     designee, shall have the right to make any inspections of the physical condition of the property at reasonable times,
215     upon at least 24 hours advance notice to Seller. Unless Seller receives written notice, signed by Buyer on or before
216     __10 days after accept.__,    __5:00__    ☐ a.m. ☒ p.m. (Objection Deadline) of any defect(s) the
217     property shall be deemed satisfactory to Buyer.
218   B.   If inspections disclose defects of the property before the objection deadline set out in XI A, the cost of repairs shall
219       be paid by agreement of the parties. If the parties are unable to agree on payment of additional costs, this contract
220       shall be voidable at the option of Buyer, upon written notice to Seller no later than __3 days after obj__,
221       __5:00__   ☐ a.m. ☒ p.m. (Resolution Deadline).
222   C.   If Buyer elects to void the contract in accordance with Section XI (B) above the earnest money deposit shall be
223       returned to Buyer pursuant to the requirements of Section II above.
224   D.   Waiver of Defects. Buyer acknowledges that he has had ample opportunity to inspect the property and has done so
225       to Buyer's satisfaction. Other than repairs or defects submitted to the Seller in writing pursuant to XI (A) or (B)
226       above, or in the event no repairs or inspections are required by Buyer, Buyer accepts the property in its entirety in
227       "as is, where is" condition without any implied or express warranty by Seller or by any Broker.

## XII. USDA GOVERNMENT PROGRAMS.
229     (Check One)
230   ☒ Seller does NOT participate in USDA Government Programs
231   ☐ Seller DOES participate in USDA Government Programs
232     All beneficial interest that the Seller has in the crops will be transferred to the buyer on the day of closing. Buyer agrees to
233     maintain any existing contracts established with the Farm Service Agency, Naturally Resource Conservation Service and
234     or cooperating agency. Conservation Reserve Program contracts will be assumed and maintained by the Buyer with all
235     payments prorated to the day of closing by the Farm Service Agency. On the day of closing both Buyer and Seller will
236     contact the Farm Service Agency and Natural Resource Conservation Service to update ownership records.

## XIII. INSURANCE.
238     Buyer hereby acknowledges that Buyer has been advised to investigate, research and obtain a written commitment for
239     adequate property and liability insurance prior to closing.

## XIV. RISK OF LOSS.
241     Risk of loss shall remain with Seller until delivery of deed. In the event that premises shall be damaged by fire or other
242     casualty prior to time of closing, in an amount of not more than 10% of the total purchase price, Seller shall be obligated
243     to repair the same before the date herein provided for delivery of deed. In the event such damage cannot be repaired
244     within said time or if such damage shall exceed such sum, this contract shall be voidable at the option of Buyer. Should
245     Buyer elect to carry out this Contract despite such damage, Buyer shall be entitled to all of the insurance proceeds
246     resulting from such damage.

## XV. DEFAULT, REMEDIES AND ATTORNEY'S FEES.
248   A.   TIME IS OF THE ESSENCE hereof, and any party who fails to tender any payment, or perform any other
249       condition hereof as herein provided, shall be in default of this Contract. In the event of default, the non-defaulting
250       party may elect to treat this Contract as breached and recover such damages as may be proper, or may treat this
251       Contract as being in full force and effect and require specific performance of the terms hereof. In lieu of the remedy
252       provided above to Seller if Buyer is the defaulting party, Seller may elect to terminate the Contract and recover such
253       damages as may be proper, or Seller may elect to retain all payments made hereunder as liquidated damages, such
254       amount, if elected by Seller, being agreed by the parties hereto to constitute compensation for the loss of opportunity
255       suffered by Seller due to such breach.
256   B.   In the event that any party shall become in default or breach of any of the terms of this Contract, such defaulting or
257       breaching party shall pay all reasonable attorney's fees, costs and other expenses which the non-breaching or
258       non-defaulting party may incur in enforcing this Contract with or without formal proceedings. This provision shall
259       not limit any other remedies to which the parties may otherwise be entitled.
260   C.   Seller and Buyer agree that in the event of any controversy regarding earnest money or other things of value held by
261       Broker and/or Closing Agent, unless Broker and/or Closing Agent receives written instructions from both Buyer and
262       Seller regarding disposition of the earnest money or things of value, Broker and/or Closing Agent, in its sole
263       discretion, may hold the earnest money or things of value or may interplead all parties and deposit the earnest money
264       deposit or things of value into a court of competent jurisdiction. Broker and/or Closing Agent shall be entitled to
265       recover its attorney's fees and costs from the non-prevailing party in the action in which the funds are interplead, but
266       if no such award or payment is made, Broker and/or Closing Agent shall recover its court costs and reasonable
267       attorney's fees from the interplead funds or things of value.

268 XVI.   ADDITIONAL PROVISIONS.
269        1.   The legal description of the property is:
270        Lot 2 of the Saddle Butte Ranch Subdivision, Teton County, Wyoming,
271        according to that plat recorded January 6, 1998 as Plat No. 920.
272
273        2.   This sale shall be contingent upon the Buyer receiving finance
274        approval within 21 days of an accepted offer.  If Buyer does not receive
275        finance approval within 21 days of an accepted offer, Buyer, at Buyer's
276        option, may void this contract and receive a full Earnest Money Deposit
277        refund or remove this contingency and proceed with the sale.  If Buyer
278        removes this contingency and proceeds with the sale, the Earnest Money
279        Deposit shall become non-refundable and paid to the Seller if Buyer fails
280        to close on the close date stated herein through no fault of the Seller.
281
282        3.   Referencing Paragraph VIII, Title, Sub-Paragraph D (regarding notice
283        and cure of any title defects) 30 days shall be changed to 10 days.
284
285        4.Should any performance date or deadline contained herein fall on a
286        weekend, state or national holiday, said date will be automatically
287        extended to the next business day.  The time in which any act required
288        under this agreement is to be performed shall by computed by excluding
289        the date of execution and including the last day.  The first day shall be
290        the day after the date of execution.
291
292        5.   Buyer understands that this is a short sale and is subject to Lender
293        approval.  Buyer further understands that property is being sold in "as
294        is" condition.
295
296
297
298
299
300
301 XVII.  ADDENDA ATTACHED: (Check all that apply.)
302        ☐ Lead-Based Paint Disclosure                            ☒ Easements
303        ☐ Addendum for Additional Provisions                     ☐ Covenants
304        ☒ Real Estate Brokerage Disclosure Form                  ☐ 1031 Tax Deferred Exchange Notice
305        ☐ Consent Amendment & In-Company Transaction Disclosure  ☐ Evidence of Authority
306        ☐ Property Condition Disclosure                          ☐ Other: _____
307        ☒ Covenants and Preliminary Title Commitment             ☐ Receipt Form – WAR Form 900-M
308 XVIII. CONSENTS AND ACKNOWLEDGEMENTS.
309        A. All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral
310           agreements or representations between Buyer, Seller or Brokers to modify the terms and conditions of this Contract.
311        B. Brokers are authorized to disclose information regarding this sale, and terms thereof, for comparable sold data and
312           statistics to any Multiple Listing Service, Board of REALTORS®, certified appraisers, or potential clients or
313           customers, but only after the closing of this transaction.
314        C. This Contract is executed in multiple copies and by their signatures hereon each party acknowledges receipt of a
315           signed copy at the time of signing. Signature pages transmitted by telecopier or electronic transmittal via scanned
316           pdf copy shall be deemed to be original signature pages with the same legal effect as manual signatures, with
317           original signature pages to follow.
318        D. _____Black Diamond Real Estate_____ (Broker Working with the Buyer) hereby
319           discloses that it is working with the Buyer as ☐ (Seller's Agent) ☐ (Seller's Subagent)  ☒ (Buyer's Agent)
320           ☐ (Intermediary)  ☐ (Customer) *(select one)* and will be compensated by ☒ (Seller) ☐ (Buyer) ☒ (or
321           _____Listing Brokerage_____ ) *(select all applicable)*. Buyer and Seller have
322           consented to that arrangement. Buyer has received, read and acknowledged a Real Estate Brokerage Disclosure and
323           an executed copy of the Disclosure is attached hereto. Broker, working with Buyer hereby delivers to Broker
324           working with the Seller, a copy of the executed Real Estate Brokerage Disclosure.

WAR Form 320-0411, Contract to Buy and Sell Real Estate (Farm & Ranch) (Vacant Land).
2011© Wyoming Association of REALTORS®

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Page 6 of 7

James & Shannon

325 XIX. OFFER BY BUYER. This offer shall expire on or before ___October 4, 2012___ , at ___5:00___ □ a.m.
326 ☒ p.m. Additionally, the undersigned BUYER reserves the right to withdraw this Offer until the original, a copy,
327 electronic transmission or facsimile of this Offer, duly accepted and signed by Seller, has been delivered in writing to
328 the Buyer or Broker working with Buyer prior to the expiration date and time above.
329 THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND
330 CONDITIONS, CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.
331 Buyer _____  Date _28-09-12_
332 Shannon Sue Eisenhardt
333
334 Buyer _James Ellis Eisenhardt_  Date _28-Sept-12_
335
336 XX. DISCLOSURE BY BROKER WORKING WITH SELLER.
337 _Jackson Hole Real Estate Associates LLC_ (Brokerage Firm), hereby discloses that it
338 is working with the Seller as a ☒ (Seller's Agent) □ (Intermediary) □ (Customer) or (Select One) and will be
339 compensated by ☒ (Seller's Agent) □ (or _____ ) (Select applicable.)
340 Seller has consented to this arrangement. Seller has received, read and acknowledged a Real Estate Brokerage Disclosure
341 and an executed copy of the Disclosure is attached hereto. Broker working with Seller, hereby delivers to Broker
342 working with the Buyer, a copy of the executed Real Estate Brokerage Disclosure.
343 Listing Broker hereby acknowledges receipt of this contract to Buy and Sell Real Estate on
344 _____ at ____ □ a.m. □ p.m.
345
346 Firm _Jackson Hole Real Estate Associates LLC_
347 Address _____
348 Phone _(307) 690-8611_
349 By _Janine Bay Teske_
350 THIS OFFER WAS RECEIVED by me as Seller on _10/1/2012_ at _4:42_ ☒ a.m. □ p.m.
351 _____ (Seller's Initials).
352
353 XXI. ACCEPTANCE OF SELLER. IF YOU DO NOT UNDERSTAND THE TERMS AND
354 THIS IS A LEGALLY BINDING CONTRACT. CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.
355
356 CONDITIONS, CONSULT LEGAL OR OTHER COUNSEL BEFORE SIGNING.
357 NOTICE TO SELLER: If you are making a counter-offer, do not sign this document.
358
359 THE UNDERSIGNED SELLER (whether one or more) ACCEPTS the foregoing offer on
360 _____ at ____ □ a.m. □ p.m.
361
362 Seller _Michael V. DeFelice_  Date _____
363
364
365 Seller _____  Date _____
366
367 XXII. REJECTION BY SELLER.
368
369 THIS OFFER IS HEREBY REJECTED ON _____ at ____ □ a.m. □ p.m.
370
371 Seller _____  Date _____
372
373 Seller _____  Date _____
374
375
376 Seller _____  Date _____
377
378 If this Offer is rejected and the rejection is not signed by the Seller above, then his Offer was rejected by oral notification to
379 _____ and Seller (check one) ___ authorized rejection or ___ refused to execute
380 Broker on _____
381 written rejection.

James & Shannon
Page 7 of 7



**SHORT SALE ADDENDUM TO CONTRACT TO BUY AND SELL REAL ESTATE**

**THIS FORM HAS IMPORTANT LEGAL AND TAX CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL COUNSEL AND/OR TAX PROFESSIONALS BEFORE SIGNING.**

In reference to that Contract to Buy and Sell Real Estate ("Contract") dated _____ **September 28, 2012** _____ between **Shannon Sue Eisenhardt, James Ellis Eisenhardt** _____ as (Buyer), and **Michael V. DeFelice** _____ as Seller(s) pertaining to the property ("Property") described as **505 W. Saddle Butte Way, Jackson, WY  83001** _____ **Lot 2 Saddle Butte Ranch Subdivision. See Add Prov for complete Legal** _____

This Addendum shall control in the event of any conflict with the Contract. Except as modified, all other terms and provisions of the Contract shall remain the same.

The undersigned Buyer and Seller hereby agree to the following:

Buyer and Seller acknowledge that there is more debt owing against the Property than the purchase price. Therefore, the Contract to Buy and Sell Real Estate is contingent upon an agreement between the Seller and Creditor(s), acceptable to both, to sell the Property for less than the loan amount(s) ("SHORT SALE"). Before a Short Sale can occur, Buyer, Seller and Creditor(s) must consent to the terms of the sale. Buyer and Seller acknowledge that it may take weeks or months to obtain Creditor(s) approval of a short sale.

Short Sale Acceptance is when Seller receives one or more written statements, signed by each Creditor, that specify the terms and conditions of the Short Sale and the Creditor(s) agreement of such Short Sale. Seller shall submit to creditor(s) a copy of the Contract to Buy and Sell Real Estate, including this and other Addenda, and any other documentation required by the creditor(s) for Short Sale Acceptance within five *(5)* days after the Contract acceptance. Seller agrees to diligently work to obtain Short Sale Acceptance and will promptly provide the Creditor(s) with all additional documentation required, including an appraisal, at Seller's expense, if required.

Seller may terminate the Contract: (a) if Creditor(s) does not approve the Contract, or (b) if the terms and conditions from Creditor to obtain a release of lien are not acceptable to Seller, in Seller's sole discretion, and written notice is delivered to Buyer on or before three (3) calendar days after the Short Sale Acceptance Deadline set forth below. Buyer may terminate this Contract by written notice to Seller at any time before receipt of Short Sale Acceptance Notice from Seller. If terminated by Buyer or Seller pursuant to this clause, the earnest money deposit receipted in the Contract shall be returned to Buyer subject to the requirements of Section II of the Contract to Buy and Sell Real Estate then the Contract and all associated Addendums shall become null and void.

Buyer acknowledges that the rejection of a Short Sale by creditors or Seller may lead to termination of the Contract. Buyer also acknowledges that this Short Sale may result in delays in the Closing.

Buyer and Seller acknowledge and agree that any Short Sale Acceptance by Creditor is made on the condition that none of the terms of the sale shall differ in any material respect from the terms submitted to the Creditor on which the Short Sale Acceptance was based. Any material change will require that the Short Sale Proposal be re-submitted to the Creditor for approval, which could result in delays for approval or even denial of the Short Sale.

Notwithstanding anything to the contrary in this Addendum, the Contract is conditional upon the Seller receiving from each Creditor a Short Sale Acceptance that is acceptable to Seller.

Buyer and Seller acknowledge:

There are no promises or representations regarding: (a) whether Creditor will agree to a Short Sale, (b) the terms of any Short Sale Acceptance, or (c) when the Creditor will advise of its decision to agree to a Short Sale or provide the written terms and conditions of the Short Sale Acceptance.

Until Closing of the Short Sale, Short Sale Acceptance by the Creditor will not prevent, hinder or delay the Creditor from initiating or proceeding with any enforcement action, including but not limited to a foreclosure. In the event Seller loses ownership of the Property through foreclosure and redemption, the Contract to Buy and Sell Real Estate shall terminate.

A significant period of time may be required to determine if a Short Sale Acceptance will be granted. Therefore, Buyer should inform Buyer's lender of this fact for structuring Buyer's loan, including duration of "loan lock" and other loan terms. Additionally, Closing is normally required to be held shortly following the Short Sale Acceptance.

After a Short Sale Acceptance is given, Creditor will normally not agree to any additional changes to the terms of the Contract that differ from the Short Sale Acceptance, to have repairs performed or to reduce the amount it is willing to accept due to the condition of the Property or results of an inspection. Buyer may want to conduct an inspection of the Property before Seller submits its request for a Short Sale to Creditor. The Purchase Price should reflect the condition of the Property and results of such inspection.

WAR Form 900J-0209, Short Sale Addendum to Buy and Sell Real Estate.
2009© Wyoming Association of REALTORS®

Black Diamond Real Estate PO Box 2297 Jackson, WY 83001
Phone: 307-690-6170          Fax: 307-733-4576          Linda Walker

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Page 1 of 2

James & Shanno

Buyer and Seller must receive written notice of the Short Sale Acceptance on or before _____ **November 14, 2012** _____ or the Contract shall terminate

In the event that the short sale Agreement between Seller and Seller's creditors is cancelled, void, terminated or breached, Seller shall promptly notify Buyer of same and the Contract shall be deemed void due to the unfulfilled short sale contingency and Buyer shall be entitled to an immediate return of any Earnest Money subject to Paragraph II of the Contract to Buy and Sell Real Estate.

OTHER TERMS AND CONDITIONS

_____

_____

**3.    All third party fees that Buyer is expected to pay, if any,  shall be disclosed prior to Buyer's final acceptance of the Short Sale Acceptance.** _____

_____

_____

_____

_____

_____

_____

A.   This Addendum, upon its execution by both parties, is herewith made an integral part of the aforementioned Contract.

B.   This Addendum is executed in multiple copies and by their signature hereon the parties acknowledges receipt of a signed copy at the time of signing.

C.   The parties agree that the consideration set forth in the Contract referenced above and the mutual promises contained herein constitute good and sufficient consideration for the provisions of this Addendum and the transaction between parties.

D.   All prior representations made in the negotiations of this sale have been incorporated herein, and there are no oral agreements or representations between Buyer, Seller of their agents to modify the terms and conditions of this Contract.

THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL COUNSEL AND/OR A TAX PROFESSIONAL BEFORE SIGNING.

SELLING BROKER

By: _____*Linda Walker*_____   Date 9/28/2012
Signature Linda Walker

Buyer _____*SNEisenhardt*_____   Date 28-09-12
Shannon Sue Eisenhardt

Buyer _____*J. E. E.*_____   Date 28·SEPT·12
James Ellis Eisenhardt

LISTING BROKER

By: _____   Date _____
Signature Janine Hay, Teske

Seller _____   Date 10/4/12
Michael V. DeFelice

Seller _____   Date _____

**ADDENDUM TO CONTRACT TO BUY AND SELL REAL ESTATE**

In reference to that Contract to Buy and Sell Real Estate dated _____ September 28, 2012 _____ , between

Shannon Sue Eisenhardt, James Ellis Eisenhardt

as Buyer(s) and

Michael V. DeFelice

as Seller(s) pertaining to the property described as

505 W. Saddle Butte Way, Jackson, WY 83001
Lot 2 Saddle Butte Ranch Subdivision. See Add Prov for complete Legal

the undersigned Buyer and Seller hereby agree to the following:

1.   Purchase terms:

| | |
|---|---|
| Purchase Price: | $535,000.00 |
| Earnest Money Deposit: | 5,000.00 |
| New Loan Amount: | 310,000.00 |
| Balance at Closing (approx.) | 220,000.00 |

2.   This sale shall be contingent upon the receipt of a Certificate of Redemption from NEPCO Fund II LLC delivered to Wyoming Title and Escrow prior to the release of Escrowed funds to payoff the Certificate of Sale held by NEPCO Fund II LLC.

3.   The Short Sale Addendum to Contract to Buy and Sell Real Estate dated September 28, 2012 is voided and shall be removed from this transaction since a Short Sale no longer exists.
4.   The Buyers Finance Approval Contingency shall be removed no later than October 26, 2012, 6:00 pm.

5.   The Seller's Title Commitment shall be delivered to the Buyers no later than October 26, 2012, 6:00 pm.
6.   Closing and Possession shall be November 2, 2012, 4:00 pm.

A.   This Addendum, upon its execution by both parties, is herewith made an integral part of the aforementioned contract.
B.   This Addendum is executed in multiple copies and by their signatures hereon, the Buyer and Seller acknowledge receipt of a signed copy at the time of signing.
C.   The parties agree that the consideration set forth in the Contract to Buy and Sell Real Estate referenced above and the mutual promises contained herein constitute good and sufficient consideration for the provisions of this Addendum and the transaction between the parties.
D.   All prior representations made in the negotiation of this sale have been incorporated herein, and there are no oral agreements or representations between Buyer, Seller to modify the terms and conditions of this Contract.
E.   This Addendum is effective and binding on the date of the last signature affixed to this Addendum.
F.   THIS IS A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE TERMS AND CONDITIONS, CONSULT LEGAL COUNSEL BEFORE SIGNING.

Buyer _____   Date 24-OCT-12
Shannon Sue Eisenhardt

Buyer _____   Date 23-OCT-12
James Ellis Eisenhardt

Seller _____   Date 24-Oct-12
Michael V. DeFelice

Seller _____   Date _____

WAR Form 900A-08010 Addendum to Contract to Buy and Sell Real Estate.
2010© Wyoming Association of REALTORS®

Page 1 of 1

Black Diamond Real Estate PO Box 2292 Jackson, WY 83001
Phone: 307-690-6170          Fax: 307-733-4576          Linda Walker
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

James & Shanon